1  CHAVEZ & GERTLER LLP
   JONATHAN E. GERTLER (Bar No. 111531)
2  DAN L. GILDOR (Bar No. 223027)
   42 Miller Avenue, Mill Valley, CA  94941
3  Tel:      (415) 381-5599
   Fax:      (415) 381-5572
4  E-Mail:   jon@chavezgertler.com
             dgildor@chavezgertler.com
5
   LAW OFFICE OF DANIEL B. SIEGEL
6  DANIEL B. SIEGEL (Bar No. 160742)
   2418 Woolsey Street
7  Berkeley, CA  94705
   Tel.      (510) 684-5580
8  Fax:      (510) 540-5840
   E-Mail:   siegeldb@pacbell.net
9
   Attorneys for Plaintiffs and Counter-Defendants,
10 Jerry Mitchell, Eddie Williams, Jr., Edward S. Medina,
   David Walters and the Proposed Plaintiff Class
11
12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                 SAN FRANCISCO DIVISION

15 JERRY MITCHELL, EDDIE WILLIAMS,      )  Case No: C 07-05847 PJH
   JR., EDWARD S. MEDINA, and DAVID     )
16 WALTERS, individually, and on behalf of all )  **PLAINTIFFS' MOTION TO REMAND**
   others similarly situated,           )  **AND REQUEST FOR FEES; MOTION**
17                                       )  **TO STRIKE OR DISMISS MIRANT**
                    Plaintiffs,          )  **CALIFORNIA LLC'S COUNTERCLAIM**
18                                       )
         v.                             )  Date:    February 22, 2008
19                                       )  Time:    9 a.m.
   MIRANT CALIFORNIA LLC, a Delaware    )  Place:   Courtroom 3
20 Corporation, and DOES 1 to 50,       )  Judge:   The Hon. Phyllis J. Hamilton
                                         )  Complaint Filed:  10/17/07
21                  Defendants.          )
   _____)  **E-FILED**
22 MIRANT CALIFORNIA, LLC, a Delaware   )
   Limited Liability Company,           )
23                                       )
                 Counter-Claimant,       )
24                                       )
         v.                             )
25                                       )
   JERRY MITCHELL, EDDIE WILLIAMS,      )
26 JR., EDWARD S. MEDINA, DAVID         )
   WALTERS and THE INTERNATIONAL        )
27 BROTHERHOOD OF ELECTRICAL            )
   WORKERS LOCAL 1245,                  )
28                                       )
                 Counter-Defendants.     )

1

**MOTION TO REMAND AND REQUEST FOR FEES, AND MOTION TO STRIKE OR DISMISS MIRANT CALIFORNIA LLC'S COUNTERCLAIM**

2

3      TO DEFENDANT MIRANT CALIFORNIA, LLC (HEREINAFTER "MIRANT" OR

4   "DEFENDANT") AND THEIR COUNSEL OF RECORD:

5      PLEASE TAKE NOTICE that on February 22, 2008 at 9 a.m., or as soon thereafter as the

6   matter may be heard in the Courtroom of the Honorable Phyllis J. Hamilton of the United States

7   District Court, Northern District of California, Plaintiffs Jerry Mitchell, Eddie Williams, Jr.,

8   Edward S. Medina, and David Walters ("Plaintiffs") will move the Court pursuant to 28 U.S.C.

9   section 1447(c) to remand the case to the San Francisco County Superior Court.  Plaintiffs will

10   further move to strike or dismiss Defendant's counterclaim for declaratory relief pursuant to

11   FRCP sections 12(b)(1) and 12(b)(6).  Lastly, Plaintiffs will move for their fees and costs

12   pursuant to 28 U.S.C. section 1447(c).

13      Plaintiffs request that the Court remand the case on the grounds that the District Court

14   lacks subject matter jurisdiction over the case as Plaintiffs have solely brought state law claims

15   so there is no federal question jurisdiction -- the sole ground upon which Defendant removed the

16   case.  Plaintiffs request that the Court strike or dismiss Defendant's counterclaim for declaratory

17   relief based on its redundancy, a lack of subject matter jurisdiction, and its failure to state a

18   claim.  Lastly, Plaintiffs request their fees and costs associated with the motion to remand based

19   on the fact that there is no objectively reasonable basis for Defendant having sought removal.

20   Plaintiffs' motions will be based on this notice, Plaintiffs' memorandum of points and authorities

21   in support of these motions, the accompanying exhibits and affidavits, all other papers on file in

22   this action, and such further argument or evidence as may be presented at the hearing.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

# TABLE OF CONTENTS

I. STATEMENT OF THE ISSUES TO BE DECIDED ........................................................... 1

II. INTRODUCTION ................................................................................................ 1

III. PROCEDURAL HISTORY AND STATEMENT OF FACTS ........................................... 2

IV. ARGUMENT ..................................................................................................... 4

A.    This Case Must Be Remanded Because There Is No Preemption in this Case Under Section 301 ........................................................................................................ 4

1.    Section 301 Preemption Does Not Extend to Suits Like This Based on Non-Negotiable State Rights ....................................................................................... 5

2.    Even If the CBA Terms Need To Be Consulted, the Court Would Not Need To Interpret the Straightforward Terms of the CBA So There Is No Preemption ................. 7

3.    The Cases Cited by Mirant in Its Notice of Removal Are Easily Distinguished ...... 9

4.    Mirant Cannot Manufacture Preemption by Raising a Defense That Would Require Possible "Interpretation" of the CBA .......................................................... 12

B.   The Court Should Award Plaintiffs Their Fees Associated with the Motion to Remand 13

C.   The Court Should Strike or Dismiss Mirant's Counterclaim ..................................... 15

1.    The Court Should Strike the Counterclaim As Redundant ...................................... 15

2.    The Court Should Dismiss the Counterclaim for Lack of Jurisdiction .................. 16

3.    The Court Should Dismiss the Counterclaim for Failure to State a Claim ............. 19

V. CONCLUSION ................................................................................................... 20

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>

3

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937) ............................................................ 19

4

Albion Pac. Prop. Res., LLC v. Seligman, 329 F. Supp. 2d 1163 (N.D. Cal.

5

    2004) ...................................................................................................................................... 14

6

Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985) ......................................................... 5, 17

7

Anderson v. Dir., Office of Workers Comp. Programs, 91 F.3d 1322 (9th Cir.

8

    1996) ...................................................................................................................................... 14

9

Associated Builders & Contractors v. Local 302 IBEW, 109 F.3d 1353 (9th

10

    Cir. 1997) ........................................................................................... 5, 7, 9, 11, 12, 17, 18

11

Atchley v. Heritage Cable Vision Associates, 101 F.3d 495 (7th Cir. 1996) .................. 10, 11

12

Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102 (9th Cir. 2000) ...... 5, 8, 12, 18

13

Blum v. Stenson, 465 U.S. 886 (1984) ............................................................................. 14, 15

14

Bonilla v. Starwood Hotels & Resorts Worldwide, Inc., 407 F. Supp. 2d 1107

15

    (C.D. Cal. 2005) .................................................................................................................. 6, 9

16

Caterpillar Inc. v. Williams, 482 U.S. 386 (1987) .................................................................... 5

17

Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949 (2005) ........................................... 6

18

City of Burlington v. Dague, 505 U.S. 557 (1992) ................................................................. 14

19

Conn. Hous. Fin. Auth. v. Eno Farms Ltd. P'ship, 2007 U.S. Dist. LEXIS

20

    41377 (D. Conn. 2007) ......................................................................................................... 14

21

Cousins Subs Sys. v. McKinney, 59 F. Supp. 2d 816 (E.D. Wis. 1999) ................................ 19

22

Cramer v. Consolidated Freightways Inc., 255 F.3d 683 (9th Cir. 2001) ......................... 12, 13

23

Eggar v. City of Livingston, 40 F.3d 312 (9th Cir. 1994) ...................................................... 18

24

Firestone v. Southern California Gas Co., 219 F.3d 1063 (9th Cir. 2000) ............................. 11

25

First Bank v. C & J Sapp Pub'g. Co., 1998 U.S. Dist. LEXIS 22105 (M.D. Fla.

26

    1998) ...................................................................................................................................... 14

27

28

1  Green Bay Packaging, Inc. v. Hoganson & Assoc., Inc., 362 F. Supp. 78 (N.D.

2     Ill. 1973) ............................................................................................................. 16

3  Hensley v. Eckerhart, 461 U.S. 424 (1983) ........................................................ 14

4  Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802 (9th Cir. 2001) ................... 18

5  Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831

6     (2002) ............................................................................................................... 16

7  Howard v. America Online, Inc., 208 F.3d 741 (9th Cir. 2000) ............................................ 17

8  Humble v. Boeing Company, 305 F.3d 1004 (9th Cir. 2002) .................................................. 9

9  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994) ................................ 16

10  Levy v. Skywalker Sound, 108 Cal. App. 4th 753 (2003) ...................................................... 10

11  Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988) ...................................... 7

12  Livadas v. Bradshaw, 512 U.S. 107,  (1994) .......................................................... 7, 10, 11, 13

13  Martin v. Franklin Capital Corp., 546 U.S. 132 (2005) ........................................................ 14

14  Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401 (9th Cir. 1991) ........................ 7

15  Moore v. Permanente Med. Group, 981 F.2d 443 (9th Cir. 1992) .......................................... 15

16  Patel v. Del Taco, Inc., 446 F.3d 996 (9th Cir. 2006) ............................................................ 14

17  Patton v. County of Kings, 857 F.2d 1379 (9th Cir. 1988) ...................................................... 14

18  Pettrey v. Enter. Title Agency, Inc., 2006 U.S. Dist. LEXIS 83957 (N.D. Ohio

19     2006) ................................................................................................................... 16

20  Ramirez v. Fox Television Stations, Inc., 998 F.2d 743 (9th Cir. 1993) .................................. 7

21  Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.,

22     102 Cal. App. 4th 765 (2002) ............................................................................... 6

23  Schilling v. Rogers, 363 U.S. 666 (1960) ............................................................................ 17

24  Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646 (9th Cir. 2002) ...................................... 19

25  Sprewell v. Golden State Warriors, 266 F.3d 979 (9th Cir. 2001) .......................................... 19

26  Steckman v. Hart Brewing, Inc., 143 F.3d 1293 (9th Cir. 1998) ............................................ 19

27  Textron Lycoming Reciprocating Engine Div. v. United Auto., 523 U.S. 653

28     (1998) .................................................................................................................. 17

1   <u>Tifft v. Commonwealth Edison</u>, 366 F.3d 513 (7th Cir. 2004)................................................. 10

2   <u>UFCW, Local 1564 v. Albertson's, Inc.</u>, 207 F.3d 1193 (10th Cir. 2000) ............................. 17

3   <u>United States v. Zanfei</u>, 353 F. Supp. 2d 962 (E.D. Ill. 2005)................................................. 16

4   <u>Valles v. Ivy Hill Corp.</u>, 410 F.3d 1071 (9th Cir. 2005) ........................................................ 5, 6

5   <u>Vera v. Saks & Co.</u>, 335 F.3d 109 (2nd Cir. 2002)................................................................... 11

6   <u>Yazdani v. Access ATM</u>, 474 F. Supp. 2d 134 (D.D.C. 2007)................................................. 14

7   <u>Zavala v. Scott Brothers Dairy, Inc.</u>, 143 Cal. App. 4th 585 (2006) ........................................ 6

8   **STATUTES**

9   28 U.S.C. § 1331 ......................................................................................................................... 4

10  28 U.S.C. § 1367 ....................................................................................................................... 18

11  28 U.S.C. § 1447 ....................................................................................................................... 13

12  28 U.S.C. § 2201 ....................................................................................................................... 17

13  29 U.S.C. § 185 .............................................................................................................. 5, 16, 17

14  **RULES**

15  Fed. R. Civ. Proc. Rule 12(b)(1) ......................................................................................... 16, 18

16  Fed. R. Civ. Proc. Rule 12(b)(6) ............................................................................................... 19

17  Fed. R. Civ. Proc. Rule 12(f) .................................................................................................... 16

18  **REGULATIONS**

19  Wage Order 1-2001, 8 Cal. Code Regs. § 11010........................................................................ 13

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND AND
REQUEST FOR FEES AND MOTION TO STRIKE OR DISMISS
DEFENDANT'S COUNTERCLAIM**

I. <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

Mirant has removed this case to federal court on the grounds of federal question jurisdiction. However, through this motion, Plaintiffs ask this Court to remand the case back to San Francisco County Superior Court as the case raises no federal question. Plaintiffs further ask for their fees and costs associated with the motion to remand as such an award is appropriate where there is no objectively reasonable basis for Defendant having sought removal. Further, Mirant has filed a counterclaim for declaratory relief against Plaintiffs and Local 1245 (the "Union"). Plaintiffs ask this Court to dismiss or strike this counterclaim as it is redundant of Plaintiffs' complaint, as the District Court lacks subject matter jurisdiction over the claim, and for failure to state a claim.

II. <u>INTRODUCTION</u>

This case is about Defendant's unlawful practice of denying statutorily mandated meal and rest periods to Plaintiffs and over 80 power plant operators at three of Defendant's power plants in California. In this connection, Plaintiffs based their claims entirely on violations of California law regarding minimum requirements for meal and rest periods. California requires "off duty" meal and rest periods in which employees have no work responsibilities. Yet Defendant unlawfully requires the operators to work "on duty" meal periods in which they remain at their work stations to monitor and respond to alarms while they eat quickly. Similarly, Defendant unlawfully requires the employees to remain at their work stations to monitor and respond to alarms during any supposed rest periods. These are blatant violations of California requirements. No federal law is involved.

Defendant, however, conjures up a federal question in its notice of removal from the mention in the complaint of a few select phrases from the collective bargaining agreement ("CBA") under which Plaintiffs labor. According to Defendant, to adjudicate Plaintiffs' state law claims, one phrase from the CBA – "shift operator" – requires interpretation such as to result

1    in the complete preemption of state court jurisdiction over Plaintiffs' claims under section 301 of

2    the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

3         While interpretation of a CBA can be grounds for federal preemption, no such

4    interpretation is required here.  Plaintiffs' claims are not based on the CBA, but instead on

5    evidence that the putative Class in fact works "on duty" meal and rest periods.  Even if the Court

6    did feel that the CBA should be consulted in the case, the few phrases pertaining to meal and rest

7    periods are straightforward and require no interpretation, so there can be no preemption.  As

8    there are no grounds for federal preemption, this case -- based solely on state law violations --

9    should be remanded and the Court should award Plaintiffs their fees and costs associated with

10   the remand pursuant to 28 U.S.C. section 1447(c).

11        Lastly, Defendant has filed a counterclaim in this action against Plaintiffs and the Union

12   that represents Plaintiffs (Local 1245) seeking a declaration of its rights with regard to the

13   legality of the meal and rest period provisions in the CBA that were reached on behalf of

14   Plaintiffs by the Union and Mirant.  Plaintiffs ask this Court to dismiss or strike this

15   counterclaim as redundant, because the District Court lacks subject matter jurisdiction over the

16   case, and for failure to state a claim.

17   **III.   PROCEDURAL HISTORY AND STATEMENT OF FACTS**

18        Plaintiffs filed their complaint on behalf of themselves and a putative Class of over 80

19   power plant operators at three plants operated by Defendant Mirant on October 17, 2007 in San

20   Francisco County Superior Court.  (Declaration of Jonathan Gertler in Support of Plaintiffs'

21   Motion to Remand, Request for Fees, and Motion to Dismiss Counterclaim, ¶ 2 [hereinafter

22   "Gertler Decl."].)  The complaint was served on October 19, 2007.  (<u>Id.</u> ¶ 3.)  On November 19,

23   2007, Mirant responded to the complaint by removing the case to this Court.  (<u>Id.</u> ¶ 4.)  Mirant

24   filed its answer to the lawsuit on November 28, 2007.  (<u>Id.</u>)  Mirant also filed a counterclaim for

25   declaratory relief on November 29, 2007 that brings Local 1245 (the "Union") as a party into the

26   lawsuit.  (<u>Id.</u>)  The counterclaim is also against the Class representatives.  Mirant agreed to

27   extend the deadline for Plaintiffs to respond to the counterclaim until January 11, 2008.  (<u>Id.</u> ¶ 5.)

28

1     Now Plaintiffs move to remand the case to San Francisco County Superior Court because

2 Plaintiffs' claims are based entirely on violations of California law regarding minimum

3 requirements for meal and rest periods.  The first cause of action asserts that Mirant has not

4 provided Plaintiffs and the putative Class with required thirty-minute "off duty" meal periods in

5 violation of California Labor Code sections 226.7(a), 512(a), and 516, and 8 Cal. Code Regs.

6 section 11010(11).  (Compl., ¶¶ 29-41 (attached to Gertler Decl. as Ex. 1).)  The second cause of

7 action asserts that Mirant has not provided Plaintiffs and the putative Class with required ten

8 minute "off duty" rest periods in violation of California Labor Code sections 226.7 and 516 and

9 8 Cal. Code Regs. section 11010(12).  (Id. ¶¶ 42-51.)  The third cause of action seeks recovery of

10 waiting time penalties pursuant to California Labor Code section 203.  (Id. ¶¶ 52-58.)  The fourth

11 cause of action alleges unlawful business practices pursuant to California Business and

12 Professions Code section 17200 et seq.  (Id. ¶¶ 59-69.)  Finally, the fifth cause of action is for

13 declaratory relief.  (Id. ¶¶ 70-72.)

14     Throughout all these causes of action, Plaintiffs never allege that Mirant has violated any

15 federal law or that the CBA has been breached or should be enforced or that otherwise the CBA

16 should be interpreted or found unlawful.  (Compl., ¶¶ 29-51.)  Rather the complaint simply

17 alleges that Plaintiffs and the putative Class "were required [by Mirant] to remain at their

18 stations, continue to monitor alarms and equipment, and otherwise continue most of their work

19 and responsibilities during any brief periods when they could eat some food."  (Id. ¶ 19.)

20 Similarly, the complaint alleges that "MIRANT has failed to provide Plaintiffs and the Class

21 with rest periods in which they were relieved of all duty for 10 minutes. . . .  Instead, plaintiffs

22 and the Class have taken virtually no breaks, let alone required breaks of 10 minutes at one time,

23 as they have been required to continue monitoring alarms and equipment at all times (other than

24 a few minutes to use the rest room)."  (Id. ¶ 23.)

25     While Plaintiffs' claims are in no way dependent on any language in the CBA, the

26 complaint does quote the few words in the CBA applicable to meal periods.  For instance, as

27 evidence of the fact that Mirant denies Plaintiffs the mandatory off-duty meal and rest periods,

28 the complaint cites to section 16.5 of the CBA, which states that "[t]ime to consume meals for

3

1    shift employees shall be considered as time worked" and "meals will be taken at the work

2    station." (Compl., ¶ 20.) Plaintiffs included such language in the complaint because it further

3    "demonstrates that the policy and practice of MIRANT has been to require plaintiffs and the

4    Class to work 'on duty' meal periods." (Id.) Similarly, Plaintiffs refer to section 16.7 of the

5    CBA concerning rest periods where the CBA states that an employee's rest periods are "to be

6    taken at his or her workstation" as this further "demonstrates that it has been the policy and

7    practice of MIRANT that the only rest periods to be taken by the Class are unlawful 'on duty'

8    breaks." (Id. ¶ 24.) As *evidence* of Mirant's pattern and practice, such references in no way

9    require judicial interpretation. Federal jurisdiction, therefore, does not lie on the face of

10   Plaintiffs' complaint.

11         Lastly, Mirant's counterclaim against Plaintiffs and the Union, which seeks a declaration

12   of its rights with regard to the legality of the meal and rest period provisions in the CBA reached

13   on behalf of Plaintiffs by Local 1245 and Mirant, is nothing but a veiled attempt to bootstrap

14   federal jurisdiction onto Plaintiffs' complaint. Such tactics should not be condoned by the Court

15   and the Court should either strike or dismiss the counterclaim.

16   **IV.   ARGUMENT**

17         **A.   This Case Must Be Remanded Because There Is No Preemption in
                  this Case Under Section 301**
18

19         A defendant may remove an action to federal court pursuant to 28 U.S.C. section 1441(b)

20   by asserting that the federal court has original jurisdiction under 28 U.S.C. section 1331. Such

21   federal jurisdiction arises if the action is a suit involving claims of a right arising under the laws

22   of the United States. 28 U.S.C. § 1331. A plaintiff may then move to remand the action back to

23   state court pursuant to 28 U.S.C. section 1447(c). A case shall be remanded "if at any time

24   before final judgment it appears that the district court lacks subject matter jurisdiction." 28

25   U.S.C. § 1331.

26   / / /

27   / / /

28   / / /

1    Mirant has asserted that a federal question exists here based on section 301 of the Labor

2    Management Relations Act ("section 301" or "LMRA"), 29 U.S.C. § 185(a).[1]  Under section

3    301, federal law exclusively governs suits for violation of contracts between an employer and a

4    labor organization representing employees in an industry affecting commerce.  Caterpillar Inc. v.

5    Williams, 482 U.S. 386, 394 (1987).  However, the LMRA does not preempt an employee's

6    independent, freestanding state rights.  Id. at 395.  It is only "[w]hen resolution of a state-law

7    claim is substantially dependent upon analysis of the terms of an agreement made between the

8    parties in a labor contract, that [such] claim must either be treated as a § 301 claim . . . or

9    dismissed as pre-empted by federal labor-contract law."  Allis-Chalmers Corp. v. Lueck, 471

10   U.S. 202, 220 (1985).  As no terms of the governing CBA need to be enforced or interpreted

11   here, there is no LMRA preemption as the basis for federal jurisdiction, and the case should be

12   remanded.

13         1.    Section 301 Preemption Does Not Extend to Suits Like This Based on
14               Non-Negotiable State Rights

15   Section 301 "does not permit parties to waive, in a collective bargaining agreement,

16   nonnegotiable state rights."  Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1111

17   (9th Cir. 2000).  "Were we to extend the § 301 complete preemption doctrine to allow for

18   preemption by virtue of such a waiver, 'parties would be able to immunize themselves from suit

19   under state-laws of general applicability by simply including their unlawful behavior in a labor

20   contract.'''  Id. (citing Associated Builders & Contractors v. Local 302 IBEW, 109 F.3d 1353,

21   1357 (9th Cir. 1997)).

22   Here, California's Industrial Welfare Commission ("IWC") has "guaranteed work-free

23   meal periods to manufacturing workers in California, including those covered by collective

24   bargaining agreements pursuant to its authority under § 1173 of the Labor Code."  Valles v. Ivy

25   Hill Corp., 410 F.3d 1071, 1077 (9th Cir. 2005).  These meal period provisions "address some of

26   the most basic demands of an employee's health and welfare."  Id. at 1081.  Wage Order 1-

27   _____

28   [1] Mirant has not asserted any other basis for removal, such as diversity jurisdiction.

1  2001,[2] the applicable wage order here, "left no doubt that it applied to workers covered by

2  collective bargaining agreements," making meal periods nonnegotiable.  Id. at 1078; see also

3  Bonilla v. Starwood Hotels & Resorts Worldwide, Inc., 407 F. Supp. 2d 1107, 1112 (C.D. Cal.

4  2005) (California statutory meal period claims "cannot be bargained away").  Similarly,

5  California's rest period requirement is a state-mandated minimum labor standard applicable to

6  workers covered by a CBA.  Zavala v. Scott Brothers Dairy, Inc., 143 Cal. App. 4th 585, 591

7  (2006); Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949, 954 (2005); see also Road

8  Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc., 102 Cal. App. 4th 765,

9  774, 779 (2002) (there is a private right to bring state minimum wage claim notwithstanding a

10  CBA setting wages).

11       As Plaintiffs' meal and rest period claims are based on nonnegotiable state rights, the

12  CBA need not be interpreted -- let alone enforced.  See Valles, 410 F.3d at 1078.  Accordingly,

13  there is no federal preemption.  Id. at 1082.  As the Valles court found:

14       The rule that a state claim is preempted if it is necessary to construe the collective
         bargaining agreement has no relevance to the present case.  We need not, indeed
15       may not, construe that Ivy Hill collective bargaining agreement in order to
         consider whether a waiver exists because any provision of the collective
16       bargaining agreement purporting to waive the right to meal periods would be of
         no force or effect: The right in question is plainly nonnegotiable . . . .  Thus the
17       construction of the collective bargaining agreement is simply not involved.

18  410 F.3d at 1082.  Here, the situation is analogous, with a CBA that is tangentially mentioned in

19  Plaintiffs' complaint being irrelevant to the question of whether Plaintiffs' claims brought to

20  enforce nonnegotiable state-law rights are preempted.  There is, then, no section 301 preemption

21  conferring federal jurisdiction to this Court and the case, therefore, must be remanded.  See id.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  _____

28  [2] Wage Order 1-2001, 8 Cal. Code Regs. § 11010, is attached to the Gertler Decl. as Exhibit 4.

1

2

2.    Even If the CBA Terms Need To Be Consulted, the Court Would Not
Need To Interpret the Straightforward Terms of the CBA So There Is No
Preemption

3

4

5

6

7

8

States may provide substantive rights to workers that apply without regard to a CBA, and a state court suit seeking to vindicate these rights is preempted only if it "requires the interpretation of the collective bargaining agreement." Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 413 (1988). "As long as the state-law claim can be resolved without interpreting the agreement itself, the claim is independent of the agreement for § 301 pre-emption purposes." Id. at 409-10.

9

10

11

12

13

14

15

16

17

18

The United States Supreme Court has held that, in order to preserve the role of states in legislating labor standards, nonnegotiable state rights may not be completely preempted even if their resolution requires some interpretation of a collective bargaining agreement. Livadas v. Bradshaw, 512 U.S. 107, 124 n.17 (1994). Here, no interpretation is required at all. The Supreme Court has distinguished between claims that require interpretation or construction of a labor agreement and those that require a court simply to "look at" the agreement. Id. at 123-26. "Interpret" is defined narrowly, so it means something more than "consider," "refer to," or "apply." See Associated Builders, 109 F.3d at 1357; Ramirez v. Fox Television Stations, Inc., 998 F.2d 743, 748-49 (9th Cir. 1993); Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1409-10 (9th Cir. 1991).

19

20

21

22

23

24

25

26

27

The sole basis of Mirant's preemption argument is that "Plaintiffs' claims directly reference and require substantial interpretation of a disputed term of a collective bargaining agreement ("CBA") between Mirant and the Union." (Notice of Removal, ¶ 7.) Yet, since the CBA says virtually nothing about meal periods or rest periods, Mirant can cite to but one short phrase, "shift employee," as supposedly needing interpretation as to whether it applies to the Class Members. (Id.) The CBA states unequivocally that the meal periods of "shift employees" are "considered as time worked," consistent with Plaintiffs' claims that the Class Members are not getting required "off duty" meal periods. (CBA, § 16.5 (attached as Ex. 3 to Gertler Decl.).) Mirant's assertion that the meaning of the term "shift employees" is ambiguous is disingenuous

28

1   both because it is utterly obvious that it is the Class Members who are "shift employees" and

2   because Mirant admits as much in paragraph 13 of its counterclaim.  There, Mirant quotes

3   section 16.5 of the CBA regarding "shift employees" and then discusses it in terms of the

4   employees who work 12 hour shifts.  (Countercl., ¶ 13 (attached as Ex. 2 to Gertler Decl.).)

5   Mirant recognizes that the only employees working 12 hour shifts are the Class Members.  (See

6   id.)  Most significantly, the term "shift employees" is straightforwardly defined in section 16.5 of

7   the CBA as an "employee [who] works a job that is staffed with a rotating twenty-four (24) hour

8   per day shift, on a seven (7) day a week basis, including holidays."  (CBA, § 16.5.)  Mirant is

9   well aware that only the Class Members work the 12 hour shifts covering all 24 hours for 7 days

10  a week, so there is no question the phrase applies to all Class Members.  (Countercl., ¶ 13.)

11          In Balcorta, supra, CBA language much more extensive and complicated than here did

12  not result in state law claims being preempted.  208 F.3d at 1109.  In that case, the plaintiff

13  alleged that the employer had violated section 201.5 of the California Labor Code by not paying

14  him within 24 hours of his discharge from eleven "calls" he worked for the employer.  Id. at

15  1104.  The CBA had a lengthy section detailing complicated procedures relating to such "calls"

16  that contained "a hefty dose of industry jargon," but their meaning was "neither uncertain nor

17  ambiguous."  Id. at 1109.  The terms were found to be "straightforward."  Id.  While the court

18  found that it might be required to read and apply these provisions, no interpretation of the

19  provisions would be necessary.  Id.  Here, the Court would similarly not have to interpret any

20  CBA provision because those provisions regarding meal and rest periods are even more

21  "straightforward" than the ones in Balcorta -- the CBA simply states that the meal periods of

22  "shift employees" are "time worked" and that rest periods must be taken at the work station.  No

23  interpretation is necessary particularly given that these provisions are not the basis of Plaintiffs'

24  claim but are simply further evidence of a policy, practice and factual reality that the Class

25  Members do not get "off duty" meal and rest periods.  (CBA § 16.5.)

26          This case, then, is like Associated Builders, supra, in which no interpretation of a

27  collective bargaining agreement was needed and therefore no preemption arose where there was

28  "no question relating to what the parties agreed . . . nor what legal consequences were intended

8

to flow from the agreements," and the plaintiffs did not allege any breach of the agreements at issue.  109 F.3d at 1357.  In that case, "[t]he only controversy concern[ed] the legality of the agreements under state law."  Id.  The facts here are similar in that there is no actual dispute over any terms in the CBA.  Contrary to Mirant's assertion, Plaintiffs never make any assertion in the complaint regarding the lawfulness of any clauses in the CBA, nor do they allege that the CBA needs to be enforced.  (See Notice of Removal, ¶¶ 19, 20.)  But even if Plaintiffs claimed the CBA's meal period and rest period sections were unlawful, Associated Builders held that claiming a CBA provision is unlawful does not create a need to interpret the CBA:

> The only controversy concerns the legality of the agreements under state law.  Thus, because there is no need to "interpret" the job targeting agreements in order to resolve ABC's state-law claims, § 301 does not preempt the claims.

Associated Builders, 109 F.3d at 1357; see also Humble v. Boeing Company, 305 F.3d 1004, 1010 (9th Cir. 2002) (no preemption in a reasonable accommodation of disability claim where related CBA clauses were "only potentially relevant to the state law claims" and, even if relevant, the "mere need to refer to a CBA" does not rise to the level of interpretation); Bonilla, 407 F. Supp. 2d at 1113 (no preemption of meal and rest period claims based on state law where plaintiffs were "not seeking to enforce the meal break provisions of the CBA but rely only on independent state statutes").  As in all these cases, Plaintiffs here are not seeking to enforce any CBA provisions and are relying on state statutes.  It is evident, therefore, that Plaintiffs' claims are not preempted under section 301.  Therefore, this case must be remanded.[3]

> 3.    The Cases Cited by Mirant in Its Notice of Removal Are Easily Distinguished

Mirant cites to numerous cases in its Notice of Removal wherein state law claims were found to be preempted under Section 301.  These cases, though, are unavailing to Mirant because

---

[3] While the CBA might need to be referenced for damages calculations, this is not considered interpretation of the CBA necessitating preemption under section 301.  Bonilla, 407 F. Supp. 2d at 1113.

1    they are all easily distinguished. For instance, in <u>Levy v. Skywalker Sound</u>, the employee sought

2    enforcement of employer-union side agreements that modified a collective bargaining

3    agreement. As such an action plainly falls within the plain text of section 301, the employees

4    state law claim was preempted. 108 Cal. App. 4th 753, 766 (2003). Here, by contrast, Plaintiffs

5    do not seek enforcement of any CBA or side agreement. They seek to enforce their

6    nonnegotiable state law rights.

7        Likewise, <u>Tifft v. Commonwealth Edison</u> is also easily distinguishable. In that case, the

8    court found that claims were subject to preemption because the employees had no rights under a

9    state law that were independent of a union-employer agreement. 366 F.3d 513, 519 (7th Cir.

10   2004). The state law required that the employees negotiate regarding lay-offs and demotions

11   after a merger, and if no agreement was reached, lay-offs or demotions could not then take place

12   for 30 months after the merger. <u>Id.</u> Since negotiations did take place and an agreement was

13   reached, the 30 month state law rights did not exist for the employees. <u>Id.</u> Instead, these rights

14   (which the court found would have been rights they could enforce without preemption) were no

15   longer at issue, and the court was left to do a "substantial examination" of the agreement,

16   resulting in preemption. <u>Id.</u> These facts are a far cry from the present case where the state meal

17   period and rest period rights violations remain as the sole basis of Plaintiffs' claims, without

18   need to even refer to the CBA, or to even consider whether or not Mirant is complying with

19   terms of the CBA.

20       <u>Atchley v. Heritage Cable Vision Associates</u> is also inapposite. There the plaintiffs

21   sought enforcement of a state law right to payment within 10 days from when it was due under

22   the CBA. 101 F.3d 495, 497-98 (7th Cir. 1996). The court found that these claims were

23   preempted because it was "unclear without interpretation of the explicit and implied terms of the

24   CBA [how] to determine when the parties agreed that such payment was to be made." <u>Id.</u> at 500-

25   01. The <u>Atchley</u> court distinguished the <u>Livadas</u> case, <u>supra</u>, 512 U.S. at 123-26, where no

26   preemption was found when employees sought enforcement of a similar state right to prompt

27   payment because there the CBA only needed to be referenced and not interpreted as there was no

28   dispute that payments were due a certain number of days after termination. <u>Id.</u> at 500-501. In

10

1    Atchley, the payments were due 10 days after the date on which increases and bonuses should

2    have been paid under the CBA, and when these acts were to take place was unclear and needed

3    interpretation.  Id.  The facts here -- where the CBA can either be ignored or quickly referenced -

4    - are far more similar to Livadas than to Atchley.  See Livadas, 512 U.S. at 123-26; Atchley, 101

5    F.3d at 500-01.

6        Mirant's other cases are just as inapposite.  In Vera v. Saks & Co., the plaintiff alleged

7    that a provision of the CBA, which spelled out how wage deductions would be made related to

8    customer returns that could not be linked back to a particular employee's commissions, violated

9    a state statute limiting when wage deductions could occur.  335 F.3d 109, 113 (2nd Cir. 2002).

10   The court found that this direct challenge to the legality of the CBA provision required

11   substantial interpretation of the CBA resulting in preemption.  Id. at 116.  In contrast, here,

12   Plaintiffs have made no allegation as to the legality of any CBA provision and no interpretation

13   of any CBA provision is necessary.  Cf. id.  Further, the Ninth Circuit has held that challenging

14   the lawfulness under state law of a CBA clause does not create a need to interpret the CBA.

15   Associated Builders, supra, 109 F.3d at 1357.  Accordingly, Vera is plainly inapposite, as is

16   Firestone v. Southern California Gas Co.  In that case, the court found that state law claims were

17   preempted because resolution of the essential dispute between the parties required interpretation

18   of a "complex" pay and overtime pay provision in the CBA.  219 F.3d 1063, 1064 (9th Cir.

19   2000).  The parties strongly disagreed over whether the "regular rate" of pay for the employees

20   was based on their standard rate per hour or on the standard rate divided by the total number of

21   hours worked.  Id. at 1066.  Here, there is no such dispute over any CBA terms, let alone any

22   complex terms requiring interpretation.  Plaintiffs have been denied their nonnegotiable,

23   statutorily mandated meal and rest periods.  As there is no need to interpret any CBA terms to

24   adjudicate these claims, there is no section 301 preemption such as to confer jurisdiction upon

25   this Court.  The case, therefore, must be remanded.

26   / / /

27   / / /

28   / / /

1

          4.    <u>Mirant Cannot Manufacture Preemption by Raising a Defense That Would</u>
<u>Require Possible "Interpretation" of the CBA</u>

2

3        Mirant attempts to manufacture preemption by raising a defense based on the purported

4  necessity of denying Plaintiffs their off-duty meal periods.  According to Mirant, adjudicating

5  this defense will require substantial interpretation of the CBA.  (Notice of Removal, ¶ 21.)  A

6  defense raised by a defendant, though, is irrelevant to the preemption analysis.  <u>Cramer v.</u>

7  <u>Consolidated Freightways Inc.</u>, 255 F.3d 683, 691 (9th Cir. 2001).  A plaintiff's claim is the

8  touchstone for whether or not there is preemption, so the need to interpret a CBA must inhere in

9  the nature of the plaintiff's claim.  <u>Id.</u>  If a claim is based on state law, section 301 preemption is

10  not mandated when a defendant refers to the CBA in mounting its defense.  <u>Id.</u>; <u>accord</u>,

11  <u>Associated Builders</u>, <u>supra</u>, 109 F.3d at 1356.  The court in <u>Balcorta</u>, <u>supra</u>, held:

12

13
14
15
16
17

> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  This rule makes a plaintiff the master of his complaint: it allows him to avoid federal jurisdiction by relying exclusively on state law.  Thus, it is "settled law that a case may not be removed to federal court on the basis of a federal defense, including a defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."

18  208 F.3d at 1106 (internal citations omitted).  Mirant's assertions in its defense must therefore be

19  ignored in deciding whether the case should be remanded.  <u>See</u> <u>id.</u>

20        Even if preemption could be based on a defense, though, Mirant's necessity defense

21  would not require preemption.  A necessity defense for the provision of "on duty" meal periods

22  exists when all of the following objective requirements are met: a) the nature of the work

23  prevents the employee from being relieved of all duty,[4] b) the employee and employer agree in

24

25  [4] The specific factors considered under this first requirement include the type of work, the

26  availability of other employees to provide relief to an employee during a meal period, the
potential consequences to the employer if the employee is relieved of all duty, the ability of the

27  employer to anticipate and mitigate these consequences such as by scheduling the work in a
manner that would allow the employee to take an off-duty meal break, and whether the work

28  product or process will be destroyed or damaged by relieving the employee of all duty.  DLSE

1   writing to an on-the-job meal period, c) the employee is paid for the meal period, and d) the

2   written agreement states that the employee may revoke the agreement, in writing, at any time.

3   Wage Order 1-2001(11)(A), 8 Cal. Code Regs. § 11010(11)(A).  Mirant asserts that the first

4   three requirements for "on duty" meal periods are met, and says nothing about the fourth (likely

5   because no such written statement of a right to revoke exists in the CBA or elsewhere).  (Notice

6   of Removal, ¶ 21.)  Notwithstanding Mirant's assertions, each of these objective requirements

7   can easily be assessed without reference to, let alone interpretation of, the CBA.  At most, the

8   Court would simply have to look to the CBA to see whether it contains the necessary

9   agreements.  For the other elements, the CBA is not even relevant.  No preemption, therefore,

10  arises.[5]  See Livadas, 512 U.S. at 123-26.  It therefore is evident that even if Mirant's necessity

11  defense could be considered in this Court's analysis, such a defense would not preempt

12  Plaintiffs' claims.

13          In all, then, the Court should remand this action because federal jurisdiction does not lie

14  on the face of Plaintiffs' complaint and Mirant can do nothing to alter that.

15          **B.      The Court Should Award Plaintiffs Their Fees Associated with the
                      Motion to Remand**

16

17          28 U.S.C. section 1447(c) provides that upon remand, the Court "may require payment of

18  just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[6]

19  28 U.S.C. § 1447(c).  Such an award is appropriate where there is no objectively reasonable basis

20  for Defendant having sought removal.  Martin v. Franklin Capital Corp., 546 U.S. 132, 141

21

22  Opinion Letter of September 4, 2002 (attached as Ex. 5 to the Gertler Decl.).  Such a defense is
    not available to defend against denying "off duty" rest periods.

23  [5] The same results even if Mirant asserts that Plaintiffs have waived their claims to off-duty meal

24  and rest periods because Plaintiffs' union has bargained away the state law rights to such periods.
    While such waiver must be evidenced through clear and unmistakable language in the CBA

25  waiving the covered employees' state rights for a court even to consider whether it could be
    given effect, Cramer, 255 F.3d at 692, a court may simply "look to" the CBA to determine

26  whether it contains the necessary language without triggering section 301 preemption.  Id.

27  [6] Counsel for Plaintiffs and Mirant met and conferred by telephone pursuant to Local Rule 54-6
    on January 9, 2008 regarding the fees sought but were unable to resolve the dispute.  (Siegel

28  Decl., ¶ 4.)

1    (2005); Patel v. Del Taco, Inc., 446 F.3d 996, 1000 (9th Cir. 2006) (affirming award of fees

2    where there was "no objectively reasonable basis for removal").  Here, as demonstrated above,

3    there is in fact no objectively reasonable basis for removal.  Accordingly, an award of fees is

4    appropriate.  Patel, 446 F.3d at 1000; Conn. Hous. Fin. Auth. v. Eno Farms Ltd. P'ship, 2007

5    U.S. Dist. LEXIS 41377, at *13 (D. Conn. 2007) (awarding fees "because the removed action

6    clearly lacked any federal question and none of the bases given by the Cooperative for removal

7    had any basis in law"); First Bank v. C & J Sapp Pub'g. Co., 1998 U.S. Dist. LEXIS 22105, *6

8    (M.D. Fla. 1998).

9        In calculating the amount to award Plaintiffs, the Court should "multiply[] the number of

10   hours reasonably expended on the litigation times a reasonable hourly rate."[7]  Blum v. Stenson,

11   465 U.S. 886, 888 (1984); see Albion Pac. Prop. Res., LLC v. Seligman, 329 F. Supp. 2d 1163,

12   1166 (N.D. Cal. 2004) (employing such method to calculate fees in remanding case to state

13   court).  In the present case, as set forth in the Declaration of Daniel S. Siegel (hereinafter "Siegel

14   Decl."), Plaintiffs thoroughly researched the grounds for removal under Section 301 to evaluate

15   whether removal was proper.  Plaintiffs thereafter drafted this motion to remand upon concluding

16   that removal of this case was objectively unreasonable.  The total amount of time incurred so far

17   95.1 hours is eminently reasonable in the present context,[8] particularly as Plaintiffs have

18   exercised good-faith billing judgment to exclude any excessive, redundant, or otherwise

19   unnecessary hours.  See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also Gertler Decl.,

20

21

22

23

24   [7] There is a strong presumption that this "lodestar" figure represents a reasonable fee to which
     counsel is entitled.  Patton v. County of Kings, 857 F.2d 1379, 1382 (9th Cir. 1988).

25   [8] The number of hours includes time spent researching and drafting this fee request.  Such time is
     wholly compensable under Section 1447(c)'s fee shifting provision.  See City of Burlington v.
26   Dague, 505 U.S. 557, 562 (1992) (construction of fee shifting provisions should apply uniformly
     to all such provisions); accord Anderson v. Dir., Office of Workers Comp. Programs, 91 F.3d
27   1322, 1325 (9th Cir. 1996); Yazdani v. Access ATM, 474 F. Supp. 2d 134, 137-38 (D.D.C.
     2007) (awarding "fees on fees" under Section 1447(c)).

28
                                        14

1    ¶¶ 10-11; Siegel Decl., ¶¶ 5-6.  Furthermore, the hourly rates requested for Mr. Siegel, Mr.

2    Gertler, and Mr. Gildor -- $495, $595, and $385 respectively, are reasonable as well.[9]

3          Accordingly, the Court should award Plaintiffs $45,468.50, plus any additional fees

4    incurred in preparing its reply and appearing before the Court on this motion, to compensate for

5    their time in seeking to remand this case.  See Moore v. Permanente Med. Group, 981 F.2d 443,

6    447 (9th Cir. 1992) (fee award under 28 U.S.C. § 1447(c) "is simply reimbursement to plaintiffs

7    of wholly unnecessary litigation costs the defendant inflicted").

8          **C.    The Court Should Strike or Dismiss Mirant's Counterclaim**

9          Defendant Mirant has filed a counterclaim in this action against Plaintiffs seeking a

10   declaration of its rights with regard to the legality of the meal and rest period provisions in the

11   CBA reached on behalf of Plaintiffs by Local 1245 and Mirant.  The Court should strike or

12   dismiss this counterclaim as set forth below.

13               1.    The Court Should Strike the Counterclaim As Redundant

14         As an initial matter, the Court should strike Mirant's counterclaim because it consists

15   solely of a declaratory relief cause of action that is the converse of Plaintiffs' own declaratory

16   relief cause of action.  Plaintiffs, in their complaint, request the Court to declare their rights to

17   off-duty meal and rest periods under California law notwithstanding the CBA.  Mirant, in its

18   counterclaim, requests the Court to declare its duties and obligations as Plaintiffs' employer

19   regarding those exact same meal and rest periods only with respect to the CBA.  The only real

20   difference is that while Plaintiffs request the Court to declare the law in their favor, Mirant

21   wishes the Court to declare the law in its favor.  As such, Mirant's counterclaim does nothing

22   more than merely restate and rehash the same factual and legal grounds set out in Plaintiffs' own

23   complaint -- in both instances, a court will have to declare what California law requires.  The

24   only difference between Plaintiffs' declaratory relief cause of action and Mirant's is one of

25   _____

26   [9] In the present case, Plaintiffs' counsel have set their rates according to those prevailing in the
     Bay Area for counsel of comparable skill, experience, and reputation.  (Gertler Decl., ¶ 13;
27   Siegel Decl., ¶ 8.)  Such rates are presumptively reasonable.  Blum, 465 U.S. at 895.

28

1    perspective. (Compare Compl., ¶¶ 71-72, with Countercl., ¶¶ 21-22.) The Court, therefore,

2    should strike the counterclaim as it plainly adds nothing, is entirely redundant, and constitutes a

3    bald-faced attempt to bootstrap federal jurisdiction onto Plaintiffs' state law claims. Pettrey v.

4    Enter. Title Agency, Inc., 2006 U.S. Dist. LEXIS 83957, at *9 (N.D. Ohio 2006) ("courts should

5    dismiss or strike a redundant counterclaim when 'it is clear that there is a complete identity of

6    factual and legal issues between the complaint and the counterclaim'"); United States v. Zanfei,

7    353 F. Supp. 2d 962, 965 (E.D. Ill. 2005); Green Bay Packaging, Inc. v. Hoganson & Assoc.,

8    Inc., 362 F. Supp. 78, 82 (N.D. Ill. 1973); see also Fed. R. Civ. Proc. Rule 12(f).

9                    2.    The Court Should Dismiss the Counterclaim for Lack of Jurisdiction

10        Mirant's counterclaim is also defective also in that it does not assert any proper

11   jurisdictional ground. In this connection, Mirant pleads two bases for the court's jurisdiction:

12   original federal question jurisdiction under LRMA section 301, 29 U.S.C. § 185(a), and

13   supplemental jurisdiction pursuant to 28 U.S.C. section 1367(a). (Countercl., ¶¶ 1-2.) As

14   demonstrated below, however, neither of these bases is supported in the present case. The Court

15   must therefore dismiss the counterclaim for lack of jurisdiction. Fed. R. Civ. Proc. Rule

16   12(b)(1); Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (federal

17   courts are presumptively without jurisdiction over civil cases and the burden of establishing

18   jurisdiction rests upon the party asserting jurisdiction).

19        First, Mirant has failed to satisfy its burden of establishing this Court's jurisdiction over

20   the counterclaim because Mirant has not alleged anywhere in the counterclaim that this Court has

21   jurisdiction over *Plaintiffs' complaint*. Such jurisdiction is a prerequisite for this Court to

22   exercise any jurisdiction over the counterclaim, original or not. Holmes Group, Inc. v. Vornado

23   Air Circulation Sys., Inc., 535 U.S. 826, 831 (2002) (counterclaim alone cannot serve as the

24   basis for federal jurisdiction). Mirant has not alleged such jurisdiction, nor can it, given that, as

25   discussed above, this Court does not have jurisdiction over Plaintiffs' complaint. (See supra, pp.

26   6-14.) Accordingly, this Court does not have jurisdiction over Mirant's counterclaim and it must

27   therefore be dismissed.

28

1       Second, even if the Court could have original jurisdiction over Mirant's counterclaim

2   without also having jurisdiction over Plaintiffs' complaint, the LRMA does not confer original

3   federal question jurisdiction over Mirant's counterclaim for declaratory relief as Mirant asserts.

4   The LRMA only extends such jurisdiction to "[s]uits for violation of contracts between an

5   employer and a labor organization" or for suits "between any such labor organizations."[10] 29

6   U.S.C. § 185(a).  Mirant's counterclaim involves neither of these—it solely seeks a declaration

7   of whether the CBA is legal under state law.  This Court's jurisdiction, therefore, is not

8   implicated.  Textron Lycoming Reciprocating Engine Div. v. United Auto., 523 U.S. 653, 658

9   (1998) (no federal jurisdiction over declaratory action that does not involve actual breach of a

10  collective bargaining agreement); accord UFCW, Local 1564 v. Albertson's, Inc., 207 F.3d

11  1193, 1196-97 (10th Cir. 2000) ("federal jurisdiction does not exist by virtue of the fact that this

12  case implicates a declaratory judgment suit challenging the validity of a federally regulated

13  collective bargaining agreement").

14      The same outcome holds even under Allis-Chalmers Corp. v. Lueck, 471 U.S. 202

15  (1985), in which the Supreme Court extended jurisdiction under the LRMA to include cases

16  requiring "interpretation" of collective bargaining agreements.  That is because Mirant's alleged

17  "controversy" only concerns the CBA's legality under state law.  (See Countercl., ¶ 22 ("Mirant

18  disagrees and asserts that the agreements are valid and comply with California law.").)

19  Resolving that legality does not require a court to "interpret" any collective bargaining

20  agreement particularly where that legality can be determined -- as here -- on the face of the

21  agreement.  Associated Builders, 109 F.3d at 1357; see also supra, pp. 7-10.  As the Ninth

22  Circuit explained in Associated Builders, federal jurisdiction is mandated only when "state laws

23  purport[] to determine questions relating to what the parties to a labor agreement agreed, and

24  what legal consequences were intended to flow from breaches of that agreement."  109 F.3d at

25

26  [10] The Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent basis for jurisdiction.
    Schilling v. Rogers, 363 U.S. 666, 677 (1960); Howard v. America Online, Inc., 208 F.3d 741,
27  754 (9th Cir. 2000) ("A request for declaratory judgment does not provide an independent basis
28  for federal jurisdiction.").

1   1357 (internal quotation omitted).  Questions involving a CBA's facial legality under state law,

2   therefore, do not fall within a federal court's subject matter jurisdiction.  Id.  Here, the

3   "controversy" asserted by Mirant only concerns the facial legality of the CBA under state law.

4   (Countercl., ¶ 22.)  Accordingly, the Court's original jurisdiction over Mirant's counterclaim

5   under LRMA section 301 is not implicated.  Associated Builders, 109 F.3d at 1357; see also

6   Balcorta, 208 F.3d at 1109-10 (fact that a court "may be required to read and apply" the CBA's

7   provisions to determine their legality does not require "interpretation").

8          Lastly, this Court cannot exercise any supplemental jurisdiction over Mirant's

9   counterclaim because such an exercise requires that the Court first have original jurisdiction over

10  something else.  28 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d

11  802, 805 (9th Cir. 2001) ("where there is no underlying original federal subject matter

12  jurisdiction, the court has no authority to adjudicate supplemental claims under § 1367").  As just

13  demonstrated, however, this Court does not have original jurisdiction over Mirant's

14  counterclaim.  Moreover, as demonstrated supra at pp. 6-14, the Court also does not have

15  original jurisdiction over Plaintiffs' complaint, which wholly encompasses state law claims.

16  Therefore, the Court has no original jurisdiction upon which to base an exercise of supplemental

17  jurisdiction.  With no original jurisdiction and no supplemental jurisdiction, Mirant's

18  counterclaim must be dismissed for lack of jurisdiction.[11]  Fed. R. Civ. Proc. Rule 12(b)(1).

19

20

21

22

---

23  [11] Another jurisdictional defect in Mirant's counterclaim is that it has failed to allege sufficient
    facts to establish standing to bring the counterclaim.  Specifically, Mirant has failed to allege any
24  concrete and particularized injury-in-fact that is actual or imminent , not conjectural or
    hypothetical, and that is fairly traceable to the alleged "controversy."  Eggar v. City of
25  Livingston, 40 F.3d 312, 316-17 (9th Cir. 1994) (complainant must establish real and immediate
    danger of sustaining direct injury in order to obtain declaratory relief).  Here, all that Mirant
26  alleges is that there is a disagreement between the parties.  Nowhere does it allege any injury --
    such as an economic loss -- that can be traced to the disagreement.  As Mirant has failed to allege
27  any consequences of the alleged disagreement, Mirant has failed to sufficiently allege its
    standing such that the Court would have any jurisdiction over the counterclaim.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

            3.       <u>The Court Should Dismiss the Counterclaim for Failure to State a Claim</u>

Finally, Mirant's counterclaim should be dismissed because it fails to state a claim.  <u>See</u> Fed. R. Civ. Proc. Rule 12(b)(6).  Under the Declaratory Judgment Act, to allege a cause of action for declaratory relief, Mirant must allege that there is an actual controversy.  <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 239-40 (1937); <u>Scott v. Pasadena Unified Sch. Dist.</u>, 306 F.3d 646, 658 (9th Cir. 2002).  In the present case, Mirant has done exactly that -- *allege* a substantial controversy.  (Countercl., ¶¶ 21-22.)  These *allegations*, though, have no actual basis in fact.  Plaintiffs have never said anything about the legality of the CBA under state law.

Ordinarily, the Court must take all of Mirant's allegations of material fact in the counterclaim as true.  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).  That is not the case, however, where the allegations are contradicted by documents referred to in the counterclaim.  <u>Id.</u>; <u>Steckman v. Hart Brewing, Inc.</u>, 143 F.3d 1293, 1295-96 (9th Cir. 1998).  Here, Mirant has incorporated Plaintiffs' complaint as the basis for the alleged "controversy" over the validity of the collective bargaining agreement.  (Countercl., ¶ 22 ("In their complaint, Plaintiffs allege that Section 16.5 and 16.7 of the CBA . . . violate California Law.").)  A review of that complaint, however, demonstrates that Plaintiffs never allege that the CBA violates California law.  Indeed, Plaintiffs do not express any opinion regarding the CBA in the complaint.  All that Plaintiffs allege is that Mirant's *practices* are unlawful regardless of their genesis.  (Compl., ¶¶ 37 ("Defendants failed to provide Plaintiffs and the Class with meal periods"), 48 ("Defendants failed to provide Plaintiffs and the Class with rest periods").)  Consequently, there is no basis in fact for Mirant's allegation of an actual controversy regarding the validity of the CBA.  Mirant's claim for declaratory relief, therefore, must be dismissed.  <u>Cousins Subs Sys. v. McKinney</u>, 59 F. Supp. 2d 816, 822 (E.D. Wis. 1999) (dismissing counterclaim where allegations are directly contradicted by documents referenced therein).

For all the foregoing reasons, then, the Court should strike or dismiss Mirant's counterclaim.

/ / /

/ / /

19

1

## V.   <u>CONCLUSION</u>

2      For reasons known only to itself, Mirant has attempted to drag this Court into its fight

3   with Plaintiffs by whatever means possible, first by removing the case on objectively

4   unreasonable grounds and then attempting to backstop the removal by interjecting a duplicative

5   and unnecessary counterclaim all in the hopes of creating an aura of federal jurisdiction where

6   none exists.  This case belongs in the San Francisco County Superior Court and nothing Mirant

7   does can change that.  Accordingly, the Court should grant Plaintiffs' motion to remand and

8   award Plaintiffs their fees and costs associated with the remand.  Additionally, the Court should

9   dismiss Mirant's counterclaim.

10

11   Dated:  January 11, 2008            CHAVEZ & GERTLER LLP

12                                       LAW OFFICES OF DANIEL B. SIEGEL

13

14                                       By _____/s/_____
                                            JONATHAN E. GERTLER
15                                          Attorneys for Plaintiffs and
                                            Counter-Defendants
16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' M. TO REMAND AND TO DISMISS MIRANT'S COUNTERCLAIM            Case No. C 07-05847 PJH