1  CHAVEZ & GERTLER LLP
   JONATHAN E. GERTLER (Bar No. 111531)
2  DAN L. GILDOR (Bar No. 223027)
   42 Miller Avenue, Mill Valley, CA 94941
3  Tel:      (415) 381-5599
   Fax:      (415) 381-5572
4  E-Mail:   jon@chavezgertler.com
             dgildor@chavezgertler.com
5
   LAW OFFICE OF DANIEL B. SIEGEL
6  DANIEL B. SIEGEL (Bar No. 160742)
   2418 Woolsey Street
7  Berkeley, CA 94705
   Tel.      (510) 684-5580
8  Fax:      (510) 540-5840
   E-Mail:   siegeldb@pacbell.net
9
   Attorneys for Plaintiffs and Counter-Defendants,
10 Jerry Mitchell, Eddie Williams, Jr., Edward S. Medina,
   David Walters and the Proposed Plaintiff Class
11
12                 UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15 JERRY MITCHELL, EDDIE WILLIAMS,      ) Case No: C 07-05847 PJH
   JR., EDWARD S. MEDINA, and DAVID     )
16 WALTERS, individually, and on behalf of all ) **DECLARATION OF JONATHAN E.**
   others similarly situated,            ) **GERTLER IN SUPPORT OF**
17                                        ) **PLAINTIFFS' MOTION TO REMAND,**
                  Plaintiffs,             ) **REQUEST FOR FEES, AND MOTION TO**
18                                        ) **DISMISS COUNTERCLAIM**
          v.                              )
19                                        ) Date:     February 22, 2008
   MIRANT CALIFORNIA LLC, a Delaware     ) Time:     9 a.m.
20 Corporation, and DOES 1 to 50,        ) Place:    Courtroom 3
                                          ) Judge:    The Hon. Phyllis J. Hamilton
21                Defendants.             ) Complaint Filed: 10/17/07
   _____)
22 MIRANT CALIFORNIA, LLC, a Delaware    ) **E-FILED**
   Limited Liability Company,            )
23                                        )
                  Counter-Claimant,       )
24                                        )
          v.                              )
25                                        )
   JERRY MITCHELL, EDDIE WILLIAMS,       )
26 JR., EDWARD S. MEDINA, DAVID          )
   WALTERS and THE INTERNATIONAL         )
27 BROTHERHOOD OF ELECTRICAL             )
   WORKERS LOCAL 1245,                   )
28                                        )
                  Counter-Defendants.     )
   _____)

1    I, Jonathan E. Gertler, hereby declare:

2    1.    I am a founding partner in the law firm of Chavez & Gertler LLP and a member

3    of the California State Bar duly licensed to practice before all courts of the State of California.  I

4    am admitted to practice in the United States District Court for the Northern District of

5    California.  My firm serves as lead counsel for Plaintiffs.  I have personal knowledge of the

6    matters set forth herein, and if called to testify, I could and would testify truthfully to them.  I

7    make this declaration in support of Plaintiffs' motion to remand and request for fees, and

8    motion to strike or dismiss Mirant California LLC's counterclaim.

9    2.    Plaintiffs filed their complaint on behalf of themselves and a putative Class of

10    over 80 power plant operators at three plants operated by Defendant Mirant California LLC's

11    ("Mirant') on October 17, 2007 in San Francisco County Superior Court.  A true and correct

12    copy of the complaint is attached as Exhibit 1.

13    3.    The complaint was served on October 19, 2007.  The first cause of action asserts

14    that Mirant has not provided Plaintiffs and the putative Class with required thirty-minute "off

15    duty" meal periods in violation of California Labor Code sections 226.7(a), 512(a), and 516,

16    and 8 Cal. Code Regs. section 11010(11).  (Compl., ¶¶ 29-41.)  The second cause of action

17    asserts that Mirant has not provided Plaintiffs and the putative Class with required ten minute

18    "off duty" rest periods in violation of California Labor Code sections 226.7 and 516 and 8 Cal.

19    Code Regs. section 11010(12).  (Id. ¶¶ 42-51.)  The third cause of action seeks recovery of

20    waiting time penalties pursuant to California Labor Code section 203.  (Id. ¶¶ 52-58.)  The

21    fourth cause of action alleges unlawful business practices pursuant to California Business and

22    Professions Code section 17200 et seq.  (Id. ¶¶ 59-69.)  Finally, the fifth cause of action is for

23    declaratory relief.  (Id. ¶¶ 70-72.)  Throughout all these causes of action, Plaintiffs never allege

24    that Mirant has violated any federal law or that the CBA has been breached or should be

25    enforced or that otherwise the CBA should be interpreted or found unlawful.  (Id. ¶¶ 29-51.)

26    4.    On November 19, 2007, Mirant responded to the complaint by removing the case

27    to this Court.  Mirant filed its answer to the lawsuit on November 28, 2007.  Mirant also filed a

28    counterclaim for declaratory relief ("counterclaim") on November 29, 2007 which brings Local

1

1   1245 (the "Union") as a party into the lawsuit.  The counterclaim is also against the Class

2   representatives.  A true and correct copy of the counterclaim is attached as Exhibit 2.

3          5.      Mirant agreed to extend the deadline for Plaintiffs to respond to the counterclaim

4   until January 11, 2008 and a stipulation to this effect was filed on December 17, 2008.

5          6.      While Plaintiffs' claims are no way dependent on any language in the collective

6   bargaining agreement bargaining agreement ("CBA") under which Plaintiffs' labor, the

7   complaint does quote the few words in the CBA applicable to meal periods.  For instance, as

8   evidence of the fact that Mirant denies Plaintiffs the mandatory off-duty meal and rest periods,

9   the complaint cites to section 16.5 of the CBA, which states that "[t]ime to consume meals for

10  shift employees shall be considered as time worked" and "meals will be taken at the work

11  station."  (Compl., ¶ 20.)  Plaintiffs included such language because it further "demonstrates

12  that the policy and practice of MIRANT has been to require plaintiffs and the Class to work 'on

13  duty' meal periods."  (Id. ¶ 20.)  Similarly, Plaintiffs refer to section 16.7 of the CBA

14  concerning rest periods where the CBA states that an employee's rest periods are "to be taken at

15  his or her workstation" as this further "demonstrates that it has been the policy and practice of

16  MIRANT that the only rest periods to be taken by the Class are unlawful 'on duty' breaks."  (Id.

17  ¶ 24.)  A true and correct copy of the Collective Bargaining Agreement Between Mirant

18  California, LLC and International Brotherhood of Electrical Workers Local 1245 dated

19  November 1, 2005 is attached as Exhibit 3.

20         7.      A true and correct copy of Industrial Welfare Commission Order No. 1-2001

21  Regulating Wages, Hours and Working Conditions in the Manufacturing Industry, effective July

22  1, 2002 (8 Cal. Code Regs. § 11010(11)(A)) is attached as Exhibit 4.

23         8.      A true and correct copy of the Department of Labor Standards Enforcement

24  Opinion Letter of September 4, 2002, available at http://www.dir.ca.gov/dlse/opinions/

25  2002-09-04.pdf, is attached as Exhibit 5.

26         9.      My firm has incurred a total of $5,621.00 to date in attorneys' fees in association

27  with Plaintiffs' motion to remand and request for fees.  These fees do not include time incurred

28  related to the motion to strike or dismiss Mirant California LLC's counterclaim.

10.    Attached hereto as Exhibit 6 is a complete printout, from the "TimeSlips" billing program, of all of the time records for my firm associated with Plaintiffs' motion to remand and their request for fees.  These records include all entries for work performed in association with Plaintiffs' motion to remand and their request for fees through January 10, 2008.  The attached time records contain detailed entries, recorded to the tenth of an hour, for all time spent by the attorneys in my firm who performed work in this matter.  The records were recorded contemporaneously and entered into the "TimeSlips" billing program, from which the detailed report attached as Exhibit 6 was printed.  The final page of Exhibit 6 contains a total of the number of hours billed, and the applicable billing rate, for each attorney who billed time in the matter.

11.    In preparing the fee request, I reviewed the attached time records.  In an exercise of billing judgment, I deleted certain categories of time, including all work performed by legal assistants and all hours billed by attorneys who did only a small amount of work in the case.  I also made some reductions in the amount of time billed for certain work products, including all of my time, for which I will make a fee application upon prevailing in this case, should that occur.  However, I have expended in excess of four hours on this matter to date, and therefore am omitting in excess of $2,300 of my own time on this fee claim.

12.    The hourly billing rates reflected in the time records attached hereto as Exhibit 6 are the 2008 rates for attorneys in my firm.

13.    My firm periodically establishes hourly rates for all billable personnel.  The firm sets the rates based on our regular and on-going monitoring of prevailing market rates in the Bay Area for attorneys of comparable skill, experience, and qualifications.  In doing so, my firm periodically consults with experts on attorneys' fees issues, including Richard Pearl, author of California Attorney Fee Awards published by Continuing Education of the Bar.  My firm also obtains information concerning market rates from other attorneys in the area who perform comparable litigation, including the prosecution or defense of complex and/or class action litigation, from conversations with attorneys who are involved in fee litigation, from reviewing fee applications that are submitted in other cases (which report the billing rates of attorneys

1    practicing in other firms), and from information that occasionally appears in the local press. My

2    firm sets our billing rates with the specific intent that they be consistent with prevailing market

3    rates in the private sector in the Bay Area for attorneys of comparable skills, qualifications and

4    experience. Our current rates are consistent with Bay Area market rates.

5        14.    In order to demonstrate the reasonableness of our billing rates, I briefly

6    summarize in the paragraphs that follow the background and experience of each attorney who

7    billed time in this case, including my own experience and qualifications.

8        15.    I have been personally involved in representing Plaintiffs in the capacity of a

9    supervising and senior partner. The other attorney in my firm that has been involved with this

10   case is Dan Gildor.

11       16.    I am a 1983 graduate of the University of California, Hastings College of Law.

12   While at Hastings, I held an externship at the California Court of Appeal, First District, and was

13   employed for a year as a law clerk with the well-known San Francisco plaintiffs' firm of

14   Walkup, Downing, Shelby, Bastian, Melodian, Kelly & O'Reilly. After graduating from

15   Hastings, I joined the Law Offices of R. Jay Engel, subsequently Engel & Gertler, and was a

16   plaintiff's trial lawyer there until 1993. I subsequently opened my own law firm, and then

17   entered into partnership with Mark Chavez in our current firm of Chavez & Gertler LLP in Mill

18   Valley, California.

19       17.    I am a member in good standing of the California State Bar, and the Bar of the

20   United States District Court for the Northern and Central Districts of California. I have been

21   admitted to appear before United States District Courts in Hawaii and New York. I have

22   handled appellate matters including <u>Willits v. Superior Court</u>, 20 Cal. App. 4th 90 (1993); and

23   <u>Lamberton v. Rhodes-Jamieson Company</u>, 199 Cal. App. 3d 748 (1988).

24       18.    In recent years, my practice at Chavez & Gertler LLP has focused on the

25   representation of workers in wage-hour class actions. I am lead counsel in wage-hour class

26   actions against Sun MicroSystems, Terminix International, Duke Energy, and other corporations

27   at this time. I also represent consumers in consumer class actions and unfair business practices

28   litigation.

19.    In the 24 years that I have been practicing law, I have had substantial trial experience.  I obtained a verdict in excess of $1 million in my first jury trial in 1984.  I have tried three cases in the last five years, each time obtaining multimillion dollar verdicts in the face of pre-trial settlement offers of $400,000 to $500,000.  I have been involved in well over a hundred consumer and employee class actions.

20.    Over a period of 10 years, I was a leading attorney nationally representing nurses and physicians infected with the HIV and Hepatitis C viruses through accidental needlesticks, prosecuting novel design defect and negligence cases against the manufacturers of blood collection equipment and health organizations.  In 1998, the case of <u>Dayton v. Becton Dickinson,</u> San Francisco Superior Court Case No. 986510, in which I served as lead counsel, prompted publicity and legislative investigation which resulted in the passage of a Health & Safety Code provision that mandates the use of safer needle products in California health care facilities.

21.    I am past president and current president of the Consumer Attorneys of Marin [County] and an officer of the Board of Directors of the San Francisco Trial Lawyers Association.  I am on the Board of Directors of Legal Aid of Marin and Bay Area Legal Aid.  I was on the Board of Governors of the Consumer Attorneys of California from 2001-2004.  I was a faculty member of the Hastings College of Law Annual College of Advocacy, have lectured at the University of San Francisco Law School, and have been a frequent lecturer on class action and trial practice issues, including class action seminars in March and November of 2007.  I am A-V rated by Martindale Hubbell.  In April, 2006, I was honored by the San Francisco Trial Lawyers Association as their "Trial Lawyer of the Year."

22.    My firm's customary rate for my time is $595.00 per hour, which is well within the prevailing range for attorneys of my credentials and experience.

23.    <u>Dan L. Gildor</u>.  Mr. Gildor is an associate at my firm and was primarily responsible for drafting the request for fees and generally supporting the motion for remand.

24.    Mr. Gildor graduated from the University of California at Berkeley School of Law (Boalt Hall), Order of the Coif, in 2002.  Mr. Gildor has more than four years of

1    experience as a litigator at both trial court and appellate levels.  He has participated in various

2    cases that resulted in published opinions including <u>Burbank v. State Water Resources Control</u>

3    <u>Board</u>, 35 Cal. 4th 613 (2005) and <u>Building Industry Assn. of San Diego County v. State Water</u>

4    <u>Resources Control Bd.</u>, 124 Cal. App. 4th 866 (2004).  He has also been published twice on

5    environmental law matters in the Ecology Law Quarterly.  Before joining my firm, Mr. Gildor

6    was a staff attorney at a number of public interest environmental organizations such as the

7    Natural Resources Defense Council, the Save Our Springs Alliance, and the Environmental Law

8    Foundation.  He was admitted to the California bar in December 2002 and is a member in good

9    standing of the bars for the United States District Courts for the Northern and Central Districts

10   of California.  He has also been allowed to appear *pro hac vice* in the United States District

11   Court for the Central District of Texas.  Mr. Gildor's legal experience includes clerking for the

12   United States Department of Justice, Earthjustice, and the law firms of Pillsbury Winthrop, and

13   Shute, Mihaly and Weinberger LLP.  After law school, Mr. Gildor clerked for the Honorable

14   Barbara J. Rothstein in the United States District Court Judge for the Western District of

15   Washington.  Mr. Gildor has a Masters from Stanford University and a Bachelor of Science

16   degree from MIT.

17        25.    My firm's customary rate for Mr. Gildor's time is $385.00 per hour, which is

18   well within the prevailing range for attorneys of his credentials and experience.

19

20        I declare under penalty of perjury under the laws of the United States of America that the

21   foregoing is true and correct.  Executed this 11th day of January, 2008 at Mill Valley, California.

22

23                                        /s/

24                                  Jonathan E. Gertler

25

26

27

28

DECLARATION OF JONATHAN E. GERTLER IN SUPPORT OF PLAINTIFFS' MOTIONS        Case No. C 07-05847 PJH

# EXHIBIT 1

1  CHAVEZ & GERTLER LLP
   JONATHAN E. GERTLER (Bar No. 111531)
2  42 Miller Avenue, Mill Valley, CA  94941
   Tel:  (415) 381-5599 Fax:   (415) 381-5572
3

4  LAW OFFICE OF DANIEL B. SIEGEL
   DANIEL B. SIEGEL (State Bar No. 160742)
5  2418 Woolsey Street
   Berkeley, CA  94705
6  Telephone:  (510) 684-5580
   Facsimile:   (510) 540-5840
7

8  Attorneys for Plaintiffs Jerry Mitchell,
   Eddie Williams, Jr., Edward S. Medina,
9  David Walters and the Proposed Plaintiff Class

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                     COUNTY OF SAN FRANCISCO

12                       UNLIMITED JURISDICTION

13

14  JERRY MITCHELL, EDDIE WILLIAMS,      )  Case No:
    JR., EDWARD S. MEDINA, and DAVID     )
15  WALTERS, individually, and on behalf of )  **CLASS ACTION**
    all others similarly situated,       )
16                                        )  **COMPLAINT FOR FAILURE TO**
                                          )  **PROVIDE REQUIRED MEAL**
17              Plaintiffs,               )  **PERIODS (Ca.Lab.C. §§ 226.7, 512);**
                                          )  **FAILURE TO PROVIDE REQUIRED**
18         vs.                            )  **REST PERIODS (Ca.Lab.C. § 226.7);**
                                          )  **RECOVERY OF WAITING TIME**
19                                        )  **PENALTIES (Ca.Lab.C. § 203);UNFAIR**
    MIRANT CALIFORNIA LLC, a Delaware    )  **AND UNLAWFUL BUSINESS**
20  Corporation, and DOES 1 to 50,       )  **PRACTICES (Cal. Bus. & Profs. C.**
                                          )  **§17200); AND DECLARATORY RELIEF**
21              Defendants               )
                                          )  **DEMAND FOR JURY TRIAL**
22                                        )
                                          )
23  _____ )

24

25

26

27

28
                                    COMPLAINT FOR FAILURE TO PROVIDE
                                    REQUIRED MEAL & BREAK PERIODS, ETC.

1    Plaintiffs  JERRY MITCHELL, EDDIE WILLIAMS, JR., EDWARD S. MEDINA

2    and DAVID WALTERS ("Plaintiffs"), individually and on behalf of all others similarly

3    situated, hereby complain against Defendant MIRANT CALIFORNIA LLC ("MIRANT" or

4    "Defendant") and Does 1 through 50, inclusive, (collectively, "Defendants") and, on

5    information and belief, allege as follows:

6    **PRELIMINARY STATEMENT**

7    1.    This class action seeks to remedy Defendant MIRANT's violations of

8    California Labor Code and California Industrial Welfare Commission Order ("Wage

9    Order") provisions requiring "off duty" meal periods and rest periods.  MIRANT, who has

10   employed Plaintiffs as operators at the Potrero, Contra Costa, and Pittsburg Power Plants,

11   regularly and systematically has required, encouraged, and/or permitted Plaintiffs and members

12   of the Class to work "on duty" meal periods and rest periods, in violation of the California Labor

13   Code and applicable Wage Orders.  Plaintiffs seek declaratory and injunctive relief,

14   restitution, compensatory damages, penalties, interest, and attorneys' fees, costs and

15   expenses.

16   **JURISDICTION AND VENUE**

17   2.    The Court has jurisdiction over Plaintiffs' claims because the acts and

18   omissions complained of occurred at workplaces owned and operated by MIRANT in

19   California, and each of the Plaintiffs is a resident of California.

20   3.    Venue is proper in San Francisco County in that while defendant MIRANT

21   does business in the State of California, Defendant MIRANT has not designated with the

22   California Secretary of State a principal place of business within the State of California

23   pursuant to Corporations Code § 2105(a)(3).  Accordingly, Defendant MIRANT may be sued

24   in any county in the State of California, including the County of San Francisco.  Venue also

25   is proper in San Francisco County in that Defendant MIRANT committed some of the

26   wrongful acts alleged herein at the Potrero Power Plant in San Francisco, which Defendant

27   MIRANT owns and operates.

28   4.    The San Francisco County Superior Court also has jurisdiction because the

1

1  individual claims of the members of the class herein are under the seventy five thousand

2  dollar ($75,000) jurisdictional threshold for Federal Court.  Furthermore, there is no federal

3  question at issue.  Finally, the aggregate amount in controversy is less than five million

4  dollars ($5,000,000.00).

5                                        **PARTIES**

6        5.     Plaintiff JERRY MITCHELL is an individual over the age of eighteen (18) and

7  at all relevant times, was a resident of the State of California.  Plaintiff MITCHELL has

8  been a power plant operator at the Pittsburg Power Plant in Pittsburg, California since on or

9  about August 2001.  Throughout the class period, Plaintiff MITCHELL has been classified

10  by MIRANT as a Power Plant Technician IV.

11        6.     Plaintiff EDDIE WILLIAMS, JR. is an individual over the age of eighteen (18)

12  and at all relevant times, was a resident of the State of California.  Plaintiff WILLIAMS has

13  been a power plant operator at the Contra Costa Power Plant, located in Antioch,

14  California, since on or about July 2001.  Throughout the class period, Plaintiff WILLIAMS

15  has held the job classification of Power Plant Technician IV.

16        7.     Plaintiff EDWARD S. MEDINA is an individual over the age of eighteen (18)

17  and at all relevant times, was a resident of the State of California.  Plaintiff MEDINA has

18  been a power plant operator at the Contra Costa Power Plant, located in Antioch,

19  California, for the past 35 years.  Throughout the class period, Plaintiff MEDINA has held

20  the job classification of Power Plant Technician IV.

21        8.     Plaintiff DAVID WALTERS is an individual over the age of eighteen (18)

22  and at all relevant times, was a resident of the State of California.  Plaintiff WALTERS has

23  been a power plant operator at the Potrero Power Plant, located in San Francisco,

24  California, since 1984.  Throughout the class period, Plaintiff WALTERS has held the job

25  classification of Power Plant Technician IV.

26        9.     Defendant MIRANT is a corporation organized under Delaware law and

27  licensed or registered to conduct business in the State of California.  MIRANT has owned

28  and/or operated the Potrero, Contra Costa, and Pittsburg Power Plants since on or about 1999.

1     10.     Plaintiffs do not know the true names and capacities of Defendants sued herein

2   as DOES 1-50 and therefore sue these Defendants by such fictitious names.  Plaintiffs will

3   amend this Complaint to allege their true names and capacities when ascertained.

4   Plaintiffs are informed and believe and on that basis alleges that each of these fictitiously

5   named Defendants is responsible in some manner for the occurrences alleged herein, and

6   thereby proximately caused Plaintiffs' injuries alleged herein.

7     11.     Plaintiffs are informed and believe and on that basis allege that at all relevant

8   times each of the Defendants was the agent or employee of each of the remaining Defendants,

9   and in doing the things herein alleged was acting within the course and scope of such

10  agency or employment, and that Defendants authorized, ratified, and approved, expressly or

11  impliedly, all of the conduct herein alleged.

12                          **CLASS AND COLLECTIVE ACTION ALLEGATIONS**

13    12.     Plaintiffs bring this action for violations of California's Wage and Hour Law

14  as a class action, pursuant to Code of Civil Procedure § 382 and Business & Professions

15  Code § 17200, on behalf of themselves and all others similarly situated who were or are

16  classified as Power Plant Technicians, excluding maintenance employees, at the Potrero,

17  Contra Costa, and Pittsburg Power Plants, at any time during the period from four years

18  preceding the filing of this complaint and continuing into the present time, and who were

19  denied statutorily mandated "off duty" meal periods and rest periods during that period.

20  The Power Plant Technicians at the three power plants have the following levels: Level 1,

21  Level 2, Level 3 and Level 4, with Level 4 the most senior.

22    13.     Common questions of law and fact exist as to members of the Class that

23  include, but are not limited to, the following:

24            (a)     Whether MIRANT has required, encouraged, and/or permitted

25      members of the Class to work "on duty" meal periods when "off duty" meal periods

26      were required by the State of California;

27            (b)     Whether MIRANT has required, encouraged, and/or permitted

28      members of the Class to work "on duty" rest periods when "off duty" rest periods

3

1   were required by the State of California;

2           (c)     Whether MIRANT has failed to pay all earned wages owed for the

3   failure to provide required meal periods and rest periods at the time of termination

4   of employment; and

5           (d)     Whether MIRANT has engaged in unfair competition proscribed by

6   Business & Professions Code § 17200 by engaging in the conduct described

7   hereinabove as to members of the Class.

8           (e)     Whether MIRANT should be enjoined from continuing to deprive

9   members of the Class of legally required meal periods and rest periods.

10          14.     Plaintiffs' claims are typical of the claims of the Class that Plaintiffs seek to

11  represent.  Plaintiffs and members of the Class have been denied "off duty" meal periods

12  and rest periods required by California law.  Plaintiffs and members of the Class have not

13  been paid all earned wages owed as a result of the denial of "off duty" meal periods and rest

14  periods.

15          15.     The potential quantity of members of the Class is so numerous that

16  joinder of all members would be unfeasible and impractical. The disposition of their claims

17  through this class action will benefit both the parties and the Court.  The exact number

18  of members is unknown to Plaintiffs at this time; however, at any given time, each of the

19  three power plants operated by Defendants employed at least 56 Power Plant Technicians,

20  excluding maintenance employees, and it is estimated that the class size includes over 80

21  individuals who are geographically dispersed among two counties.  The number and

22  identity of the proposed Class members are readily ascertainable through inspection of

23  Defendants' records.

24          16.     Plaintiffs will fairly and adequately represent and protect the interests of the

25  members of the Class.  Plaintiffs have retained and are represented by counsel competent and

26  experienced in complex class action litigation, including Wage and Hour class actions.

27          17.     The nature of this action and the nature of laws available to Plaintiffs

28  make use of the class action format the superior and appropriate procedure to afford relief for

4

1  the wrongs alleged herein.

2              **FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

3        18.    MIRANT has failed to provide Plaintiffs and the Class with statutorily

4  mandated meal periods under Labor Code §§ 226.7(a) and 512(a), and Wage Order No. 1-

5  2001 (8 Cal. Code Regs § 11010(11)).

6        19.    During the four years preceding the filing of this complaint, and continuing

7  into the present time, Plaintiffs and the Class usually worked 12 hour shifts and were

8  therefore entitled to two thirty minute "off duty" meal periods each shift.  However,

9  MIRANT has required, encouraged and/or permitted Plaintiffs and members of the Class

10  to work "on duty" meal periods, in which they have been required to remain at their

11  stations, continue to monitor alarms and equipment, and otherwise continue most of their

12  work and responsibilities during any brief periods when they could eat some food.  These

13  "on duty" meal periods have been much shorter than the required 30 minutes.  The Class

14  has not been permitted to leave the worksite, let alone their work stations, during any meal

15  periods.

16        20.    During the four years preceding the filing of this complaint, and continuing

17  into the present time, Plaintiffs and the Class have worked subject to a collective

18  bargaining agreement dated November 1, 2000 ("November 1, 2000 CBA") and a

19  subsequent collective bargaining agreement dated November 1, 2005 ("November 1, 2005

20  CBA").  Both the November 1, 2000 CBA and November 1, 2005 CBA state in section

21  16.5 that "[t]ime to consume meals for shift employees shall be considered as time

22  worked" and "[m]eals will be taken at the work station or as directed by the Supervisor."

23  It is well established that a CBA cannot waive statutorily mandated minimum rights of

24  employees, including the required meal periods required under California law.  The CBA

25  demonstrates that the policy and practice of MIRANT has been to require Plaintiffs and

26  the Class to work "on duty" meal periods.

27        21.    The Class consists of all levels of Power Plant Technicians at the Potrero,

28  Contra Costa, and Pittsburg Power Plants, excluding maintenance employees, who since

                                    5

1    four years preceding the filing of this complaint, have been denied required "off duty"

2    meal periods and rest periods by MIRANT.

3        22.    MIRANT failed, and continues to fail, to provide Plaintiffs and the Class

4    with statutorily mandated rest periods under Labor Code § 226.7 and Wage Order No. 1-

5    2001 (8 Cal. Code Regs § 11010(12)(A)).

6        23.    During the four years preceding the filing of this complaint, Plaintiffs and

7    the Class usually have worked shifts of 12 hours or longer, and were therefore entitled to

8    three "off duty" rest periods per shift.  MIRANT has failed to provide Plaintiffs and the

9    Class with rest periods in which they were relieved of all duty for 10 minutes.  Instead,

10   Plaintiffs and the Class have taken virtually no breaks, let alone required breaks of 10

11   minutes at one time, as they have been required to continue monitoring alarms and

12   equipment at all times (other than a few minutes to use the rest room).  No break room has

13   been provided for use by Plaintiffs and the Class.

14       24.    Both the November 1, 2000 CBA and November 1, 2005 CBA state in

15   section 16.7 that an employee's rest periods are "to be taken at his or her workstation . . .

16   ."  This demonstrates that it has been the policy and practice of MIRANT that the only

17   rest periods to be taken by the Class are unlawful "on duty" breaks.

18       25.    Plaintiffs and members of the Class are non-exempt employees under the

19   laws of the State of California.

20       26.    MIRANT has failed to pay all earned wages owed to Plaintiffs and members

21   of the Class for the missed meal periods and rest periods under Labor Code § 226.7(b) and

22   Section 11(D) and 12(B) of Wage Order 1-2001 (8 Cal. Code Regs. §§ 11010(11)(D),

23   11010(12)(B)).  Plaintiffs and the Class were and are entitled to an hour of pay at their

24   regular rate for each day with a meal period violation as well as an additional hour of pay at

25   their regular rate for each day with a rest period violation.  Plaintiffs and the Class have not

26   received any such payments from MIRANT.  MIRANT has willfully failed to pay these

27   wages owed to Plaintiffs at the time of termination of employment, in violation of Labor

28   Code §§ 201, 202, and 203.

27.    Members of the Class who are no longer employed by MIRANT are entitled to penalties pursuant to California Labor Code § 203, in the amount of each person's daily wage multiplied by thirty (30) days.

28.    The practices of MIRANT in failing to provide required "off duty" meal periods and rest periods, and failing to pay all earned wages at the time of termination of employment, are substantially similar for all Plaintiffs and the Class, if not identical.

### FIRST CAUSE OF ACTION
### FAILURE TO PROVIDE REQUIRED MEAL PERIODS
**(California Labor Code §§ 226.7(a), 512(a), 516; 8 Cal. Code Regs. § 11010(11))**

29.    Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein.

30.    California Labor Code section 516 authorizes California's Industrial Welfare Commission to "adopt or amend working condition orders with respect to break periods, meal periods, and days of rest for any workers in California consistent with the health and welfare of those workers."  California Labor Code section 226.7(a) states that "no employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

31.    California Labor Code section 512(a) states that:

> an employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.  An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employee only if the first meal period was not waived.

California Labor Code section 512(a).

32.    The IWC has issued various Wage Orders pursuant to Labor Code section 516 and other Labor Code sections.  These include Wage Order No. 1-2001, which regulates the "Manufacturing Industry," which includes the production of commodities such as electricity.  8 Cal. Code Regs. § 11010.

7

1      33.    Section 11 of Wage Order 1-2001 (8 Cal. Code Regs. § 11010(11))

2   establishes the meal period requirements:

     (A) No employer shall employ any person for a work period of more than five (5)
3           hours without a meal period of not less than 30 minutes . . .

     (B) An employer may not employ an employee for a work period of more than ten
4           (10) hours per day without providing the employee with a second meal period

5           of not less than 30 minutes . . .

     (C) Unless the employee is relieved of all duty during a 30 minute meal period,
6           the meal period shall be considered an "on duty" meal period and counted as
        time worked . . . .

7

8      34.    In an opinion letter dated September 4, 2002, the Division of Labor

9   Standards Enforcement ("DLSE") stated that the meal period must be an off-duty meal

10  period, during which time the employee: 1) is not required to work, 2) is not suffered or

11  permitted to work, 3) is not subject to the control of the employer so as to be free to leave

12  the employer's premises and attend to his/her own personal affairs, 4) for a minimum of

13  thirty minutes.  If any of these requirements are not met, the meal period is treated as

14  "hours worked."

15     35.    Section 11(D) of the Wage Order (8 Cal. Code Regs. § 11010(11)(D))

16  provides that "[i]f an employer fails to provide an employee a meal period in accordance

17  with the applicable provisions of this order, the employer shall pay the employee one (1)

18  hour of pay at the employee's regular rate of compensation for each workday that the meal

19  period is not provided."

20     36.    California Labor Code section 226.7(b) states that "[I]f an employer fails to

21  provide an employee a meal period or rest period in accordance with an applicable order of

22  the Industrial Welfare Commission, the employer shall pay the employee one additional

23  hour of pay at the employee's regular rate of compensation for each work day that the meal

24  or rest period is not provided."

25     37.    During the three years preceding the filing of this complaint, and

26  continuing into the present time, Plaintiffs and the Class almost always have worked shifts

27  of 12 hours or longer.  Plaintiffs and the Class have been entitled to two "off duty" meal

28  periods of 30 minutes each per shift.  However, MIRANT has failed to provide Plaintiffs

1    and the Class with meal periods in which they were relieved of all duty for 30 minutes.

2    Instead, Plaintiffs and the Class have had to eat in far less than thirty minutes, while

3    working at their stations, monitoring and responding to equipment alarms.  Further, the

4    November 1, 2000 CBA and November 1, 2005 CBA state that it has been the policy and

5    procedure of MIRANT that Plaintiffs and the Class eat "at the work station" and that such

6    time was "time worked."  Plaintiffs and the Class have therefore unlawfully been denied

7    their statutorily mandated "off duty" thirty minute meal periods.

8        38.    Under Wage Order 1-2001, section 11(B) at 8 Cal. Code Regs. §

9    11010(11)(D), and Labor Code section 226.7(b), Plaintiffs and the Class are entitled to one

10    hour of pay at their regular rate for each of their workdays during the past 3 years, as they

11    were always denied their "off duty" 30 minute meal periods, and it has been established by

12    the California Supreme Court that this payment is compensation and not a penalty.

13        39.    As a proximate result of the conduct of MIRANT, Plaintiffs and members of the

14    Class have suffered damages, including an hour of pay for each workday not paid, in an

15    amount to be proven at trial.

16        40.    Plaintiffs and members of the Class request interest on all payments owed for

17    missed meal periods, pursuant to Labor Code section 218.6.

18        41.    Plaintiffs request an award of attorneys' fees, costs, and expenses, pursuant to

19    Labor Code § 218.5 or 1194.

20        WHEREFORE, Plaintiffs pray for relief as set forth below.

21
                    **SECOND CAUSE OF ACTION**
                    **FAILURE TO PROVIDE REQUIRED REST PERIODS**
22              **(Labor Code §§ 226.7, 516,  8 Cal. Code Regs. § 11010(12))**

23        42.    Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth

24    herein.

25        43.    California Labor Code section 516 authorizes California's Industrial Welfare

26    Commission to "adopt or amend working condition orders with respect to break periods,

27    meal periods, and days of rest for any workers in California consistent with the health and

28    welfare of those workers."  California Labor Code section 226.7(a) states that "no employer

1    shall require any employee to work during any meal or rest period mandated by an

2    applicable order of the Industrial Welfare Commission."

3        44.    The IWC has issued various Wage Orders pursuant to Labor Code section

4    516 and other Labor Code sections.  These include Wage Order No. 1-2001, which

5    regulates the "Manufacturing Industry," which includes the production of commodities

6    such as electricity.  8 Cal. Code Regs. § 11010.

7        45.    Section 12(A) of the Wage Order (8 Cal. Code Regs. § 11010(12)(A)) sets

8    the rest period requirement:

> Every employer shall authorize and permit all employees to take rest periods,
> which insofar as practicable shall be in the middle of each work period.  The
> authorized rest period time shall be based on the total hours worked daily at the
> rate of ten (10) minutes net rest time per four (4) hours or major fraction
> thereof. . .

12       46.    The Wage Order (8 Cal. Code Regs. § 11010(12)(B)) requires that "if an

13   employer fails to provide an employee a rest period in accordance with the applicable

14   provisions of this order, the employer shall pay the employee one (1) hour of pay at the

15   employee's regular rate of compensation for each work day that the rest period is not

16   provided."

17       47.    California Labor Code section 226.7(b) states that "If an employer fails to

18   provide an employee a meal period or rest period in accordance with an applicable order of

19   the Industrial Welfare Commission, the employer shall pay the employee one additional

20   hour of pay at the employee's regular rate of compensation for each work day that the meal

21   or rest period is not provided."

22       48.    During the three years preceding the filing of this complaint, and continuing

23   into the present time, Plaintiffs and the Class have almost always have worked shifts of 12

24   hours or longer.  Plaintiffs and the Class have therefore been entitled to three "off duty" rest

25   periods of 10 minutes each per shift.  MIRANT has failed to provide Plaintiffs and the

26   Class with rest periods in which they are relieved of all duty for 10 minutes.  Instead,

27   Plaintiffs and the Class have taken virtually no "off duty" breaks, let alone breaks of 10

28   minutes at one time, as they have been required to continue monitoring and responding to

1   alarms and equipment at all times.  The November 1, 2000 CBA and November 1, 2005

2   CBA states that it was the policy and procedure of MIRANT that Plaintiffs and the Class

3   take any break "at his or her workstation."  Plaintiffs and the Class have therefore been

4   unlawfully denied their statutorily mandated "off duty" 10 minute rest periods.

5       49.    As a proximate result of the conduct of MIRANT, Plaintiffs and said members

6   of the Class have suffered damages, including an hour of pay for each workday not paid, in

7   an amount to be proven at trial.

8       50.    Plaintiffs and said members of the Class are entitled to interest on all payments

9   owed for missed meal periods, pursuant to Labor Code section 218.6.

10      51.    Plaintiffs request an award of attorneys' fees, costs, and expenses, pursuant to

11   California Labor Code § 218.5.

12      WHEREFORE, Plaintiffs pray for relief as set forth below.

**THIRD CAUSE OF ACTION**
**RECOVERY OF WAITING TIME PENALTIES**
(California Labor Code §§ 203)

15      52.    Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth

16   herein.

17      53.    California Labor Code § 203 provides that if an employer willfully fails to

18   pay, without abatement or reduction, in accordance with California Labor Code §§ 201,

19   201.5, 202 and 205.5, any wages of an employee who is discharged or who resigns,

20   the wages of the employee shall continue as a penalty from the due date thereof at the same

21   rate until paid up to a maximum of thirty (30) days.

22      54.    MIRANT has had a consistent and uniform policy, practice and procedure of

23   willfully failing to pay the earned and unpaid wages of its employees owed for missed

24   meal periods and rest periods at the termination of their employment, in violation of

25   California Labor Code §§ 201 and 202.

26      55.    Certain members of the Class are no longer still employed by MIRANT, in

27   that they were either discharged from or quit MIRANT's employ.

28      56.    MIRANT has willfully failed to pay said members of the Class a sum certain

11

1    for earned wages, at the time of their termination or within seventy-two (72) hours of their

2    resignation, and failed to pay those sums for thirty (30) days thereafter.

3    57.    MIRANT has willfully failed to pay said members of the Class who left the

4    employ of MIRANT, in that MIRANT knew wages were due, but nevertheless failed to

5    pay them.

6    58.    Members of the Class who have left the employ of MIRANT are entitled to

7    penalties pursuant to California Labor Code § 203, in the amount of each person's daily

8    wage multiplied by thirty (30) days.

9    WHEREFORE, Plaintiffs pray for relief as set forth below.

**FOURTH CAUSE OF ACTION**
10   <u>**UNFAIR COMPETITION – UNFAIR AND UNLAWFUL BUSINESS PRACTICES**</u>
11   **(California Business & Professions Code § 17200)**

12   59.    Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth

13   herein.

14   60.    The Unfair Competition Law ("UCL"), California Business & Professions

15   Code § 17200, et <u>seq.</u>, defines unfair competition to include, <u>inter</u> <u>alia</u>, any unfair or

16   unlawful business act or practice.  The UCL provides that a Court may enjoin acts of unfair

17   competition, and order restitution to affected members of the public.

18   61.    During the four years preceding the filing of this complaint, MIRANT has

19   engaged in unlawful business practices and acts proscribed by California Business and

20   Professions Code § 17200, et <u>seq.</u>, including the practices alleged herein.

21   62.    Those unlawful practices and acts include:

22   (a)    MIRANT has failed to provide Plaintiffs and the Class with meal

23   periods in which they were relieved of all duty for 30 minutes, in violation of

24   California Labor Code §§ 226.7 and 516 and applicable Wage Orders, including

25   without limitation Wage Order 1-2001(11)(A); and

26   (b)    MIRANT has failed to provide Plaintiffs and the Class with rest

27   periods in which they were relieved of all duty for 10 minutes, in violation of Labor

28   Code §§ 226.7 and 516 and applicable Wage Orders, including without limitation

1    Wage Order 1-2001(12)(A).

2    63.    The business acts and practices of MIRANT as hereinabove alleged were

3    unlawful because, for the reasons set forth above, said acts and practices violate explicit

4    provisions of the California Labor Code and/or Wage Orders, including without limitation

5    Wage Order 1-2001.  MIRANT has obtained a significant competitive advantage, and engaged

6    in unfair competition, through their acts and practices of obtaining employee labor

7    without providing statutorily mandated 30 minute "off duty" meal periods and 10

8    minute rest periods.

9    64.    Plaintiffs and members of the Class are entitled to restitution in the amounts

10    of all earned wages unpaid by MIRANT.

11    65.    The unlawful business acts and practices of MIRANT described herein

12    present a continuing threat to members of the general public in that MIRANT is currently

13    engaging in such acts and practices, and will persist and continue to do so unless and until

14    an injunction is issued by this Court.  On behalf of all others similarly situated, Plaintiffs

15    request that such injunction be issued.

16    66.    On behalf of all others similarly situated, Plaintiffs further request that the

17    Court issue an interim order requiring MIRANT to advise all class members of their rights

18    pursuant to the California Labor Code and Wage Orders.

19    67.    On behalf of all others similarly situated, Plaintiffs further request a

20    declaration as to the respective rights, remedies, and obligations of the parties, and

21    establishment of a post-judgment reference proceeding to identify, locate and fully

22    reimburse all affected employees all monies due to them.

23    68.    On behalf of all others similarly situated, Plaintiffs further request that the

24    Court enforce the penalty provision of Labor Code § 203, pursuant to Business and

25    Professions Code § 17202, which provides: "Notwithstanding Section 3369 of the Civil Code,

26    specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a

27    case of unfair competition."

28    69.    Plaintiffs request an award of attorneys fees, costs and expenses pursuant to

13

1    Code of Civil Procedure § 1021.5 and as otherwise permitted by statute.

2         WHEREFORE, Plaintiffs pray for relief as set forth below.

3                          **FIFTH CAUSE OF ACTION**
                          **DECLARATORY RELIEF**
4

5         70.    Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth

6    herein.

7         71.    An actual controversy has arisen between Plaintiffs and members of the Class,

8    on the one hand, and MIRANT, on the other hand, as to their respective rights, remedies and

9    obligations.  Specifically, Plaintiffs contend and Defendants deny, that:

10             (a)    MIRANT has failed to provide Plaintiffs and the Class with meal

11        periods in which they were relieved of all duty for 30 minutes, in violation of

12        California Labor Code §§ 226.7 and 512(a) and applicable Wage Orders, including

13        without limitation Wage Order 1-2001; and

14             (b)    MIRANT has failed to provide Plaintiffs and the Class with rest

15        periods in which they were relieved of all duty for 10 minutes, in violation of Labor

16        Code §§ 226.7 and applicable Wage Orders, including without limitation Wage

17        Order 1-2001.

18             (c)    Plaintiffs further allege that members of the Class are entitled to

19        recover earned wages and penalties as hereinabove alleged.

20        72.    Accordingly, Plaintiffs seek a declaration as to the respective rights, remedies,

21    and obligations of the parties.

22        WHEREFORE, Plaintiffs pray for relief as set forth below.

23                          **PRAYER FOR RELIEF**

24        WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class,

25    respectfully pray for relief as follows:

26        1.    For an order certifying this case as a class action, and appointing Plaintiffs as

27    the representatives of the Class;

28        2.    For an order finding and declaring that MIRANT's acts and

---

14

1    practices as challenged herein are unlawful and unfair;

2       3.    For an order finding and declaring that MIRANT's acts and

3    practices in failing to pay earned wages when due were willful, and penalties

4    shall be awarded against MIRANT pursuant to Labor Code § 203;

5       4.    For an order preliminarily and permanently enjoining MIRANT

6    from engaging in the practices challenged herein;

7       5.    For an order requiring MIRANT to advise all members of the Class of

8    their rights pursuant to the California Labor Code, Wage Orders, and Business &

9    Professions Code;

10       6.    For restitution of all earned wages earned and unpaid;

11       7.    For compensatory damages in amounts to be determined at trial;

12       8.    For a declaration as to the respective rights, remedies, and

13    obligations of the parties, and establishment of a post-judgment reference proceeding to

14    identify, locate and fully reimburse all affected employees all monies due to them;

15       9.    For an award of all civil penalties provided by law;

16       10.    For prejudgment interest to the extent permitted by law;

17       11.    For an award of attorneys' fees, costs and expenses incurred in

18    the prosecution of this action; and

19       12.    For such other and further relief as the Court may deem proper.

20

21    Dated:  October 17, 2007        CHAVEZ & GERTLER LLP

22                    LAW OFFICE OF DANIEL B. SIEGEL

23

24

25    By:  _____

26            Jonathan E. Gertler

27    Attorneys of record for Plaintiffs
      JERRY MITCHELL, EDDIE WILLIAMS, JR.,
      EDWARD S. MEDINA, and DAVID WALTERS

28

# EXHIBIT 2

MARGARET HART EDWARDS, Bar No. 65699
PHILIP L. ROSS, Bar No. 90042
KIMBERLY L. OWENS, Bar No. 233185
LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
Telephone:    415.433.1940
Facsimile:    415.399.8490
E-Mail:        mhedwards@littler.com;
              plross@littler.com;
              kowens@littler.com

Attorneys for Defendant and Counter-Claimant
MIRANT CALIFORNIA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JERRY MITCHELL, EDDIE WILLIAMS, JR., EDWARD S. MEDINA, and DAVID WALTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIRANT CALIFORNIA, LLC, a Delaware Corp., and Does 1 to 50,<br><br>Defendants. | Case No.  C 07-05847 PJH<br><br>**DEFENDANT MIRANT CALIFORNIA, LLC'S COUNTERCLAIM FOR DECLARATORY RELIEF** |
| MIRANT CALIFORNIA, LLC, a Delaware Limited Liability Company,<br><br>Counter-Claimant,<br><br>v.<br><br>JERRY MITCHELL, EDDIE WILLIAMS, JR., EDWARD S. MEDINA, DAVID WALTERS and THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 1245,<br><br>Counter-Defendants. | |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF.'S COUNTERCLAIM FOR DECLARATORY RELIEF                    Case No. C 07-05847 PJH

Defendant and Counter-Claimant MIRANT CALIFORNIA, LLC ("Mirant"), a Delaware Limited Liability Company, hereby counterclaims as follows:

## JURISDICTION

1.     This Court has supplemental jurisdiction of this counterclaim under 28 U.S.C. Section 1367(a) because it arises out of the same transaction or occurrence that is the subject matter of Plaintiffs and Counter-Defendants Jerry Mitchell, Eddie Williams, Jr., Edward S. Medina and David Walters' Complaint.

2.     This Court has original jurisdiction of this counterclaim under Section 301(a) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. Section 185(a), because this counterclaim seeks interpretation of the collective bargaining agreement ("CBA") between Mirant and Counter-Defendant the International Brotherhood of Electrical Workers Local 1245 ("IBEW Local 1245") and requests a declaratory judgment as to rights and obligations under the CBA.

## VENUE

3.     Venue is proper in the Northern District of California because a substantial part of the events or omissions giving rise to the counterclaim occurred in this District.

## INTRA-DISTRICT ASSIGNMENT

4.     This action has been assigned to the San Francisco Division of the United States District Court for the Northern District of California. Assignment of this action to the San Francisco Division is proper under Civil Local Rule 3-2 because a substantial part of the events or omissions giving rise to the claims occurred in San Francisco County. Civil L.R. 3-2(e).

## PARTIES

5.     Defendant and Counter-Claimant Mirant is, and at all relevant times was, a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware and licensed to do business in the State of California. Mirant owns and operates power plants in San Francisco, California (the "Potrero Power Plant"), Antioch, California (the "Contra Costa Power Plant") and Pittsburg, California (the "Pittsburg Power Plant"). Mirant has been and is engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), 2(7) and

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

1.

DEF.'S COUNTERCLAIM FOR DECLARATORY RELIEF     Case No. C 07-05847 PJH

301(a) of the LMRA.  29 U.S.C. §§ 152(2), (6), (7); 185(a).  At all relevant times, Mirant has been, and is, engaged in the production and sale of electricity.

6.     Plaintiffs and Counter-Defendants Jerry Mitchell, Eddie Williams, Jr., Edward S. Medina and David Walters (collectively referred to as "Plaintiffs") are employed by Mirant as Power Plant Technicians at the Potrero Power Plant, the Contra Costa Power Plant or the Pittsburg Power Plant.  In their Complaint, Plaintiffs state that they are residents of California.

7.     Third party Counter-Defendant IBEW Local 1245 is, and at all relevant times was, a labor organization in which certain employees of Mirant participate and which exists for the purpose of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work.  IBEW Local 1245 is a labor organization within the meaning of Sections 2(5) and 301(a) of the LMRA.  29 U.S.C. §§ 152(5), 185(a).  IBEW Local 1245 is the exclusive bargaining representative of a bargaining unit of Mirant employees, which is comprised of all Power Plant Technicians employed at Mirant's Contra Costa, Pittsburg and Potrero Hill Power Plants.  IBEW Local 1245 maintains an office and place of business at 30 Orange Tree Circle, Vacaville, California.

## JOINDER OF THIRD PARTY CROSS-DEFENDANT

8.     Joinder of Cross-Defendant IBEW Local 1245 is proper under Federal Rule of Civil Procedure 13(h) because the presence of IBEW Local 1245 will facilitate determination of this counterclaim.  IBEW Local 1245 is subject to service of process and subject to personal jurisdiction in California.

9.     IBEW Local 1245 is a necessary and indispensable party under Federal Rule of Civil Procedure 19(a) because it is "materially interested in the subject matter of the case" and "needed for just adjudication."  In their Complaint, Plaintiffs seek declaratory and injunctive relief that would render a portion of the CBA invalid.  All parties to a contract are indispensable in an action to rescind any contractual provision.

10.    In the alternative, IBEW Local 1245 is subject to permissive joinder under Federal Rule of Civil Procedure 20(a) because the declaratory relief sought here arises out of the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

2.

DEF.'S COUNTERCLAIM FOR DECLARATORY RELIEF          Case No. C 07-05847 PJH

1  same transaction, occurrence or series of transactions or occurrences as the Complaint and there is at

2  least one common question of law or fact common to all parties joined.

3  ## FACTUAL ALLEGATIONS

4  11.    Plaintiffs have filed a Complaint against Mirant alleging that Mirant has

5  violated California law regarding rest and meal periods.

6  12.    At all relevant times, Mirant and Cross-Defendant IBEW Local 1245 have

7  been parties to a series of collective bargaining agreements that have governed Plaintiffs'

8  employment.

9  13.    The current collective bargaining agreement ("CBA") between Mirant and

10  IBEW Local 1245 became effective on January 1, 2006 and remains in effect until October 31, 2008.

11  This agreement states in Section 16.5:

12
13  > A Shift employee works a job that is staffed with a rotating twenty-
>   four (24) hour per day shift, on a seven (7) day a week basis, including
>   holidays.    Time to consume meals for shift employees shall be
14  > considered as time worked.  Meals will be taken at the work station or
>   as directed by the Supervisor.
15

16  In addition, Mirant and IBEW Local 1245 have agreed, as reflected by longstanding practice, that

17  employees working 12 hour shifts waive their second meal periods, so that the hours of their

18  workday end one-half hour sooner.

19  14.    The current CBA also contains an agreement regarding rest periods in

20  Section 16.7, which provides: "Each employee shall be allowed a ten-minute paid break to be taken

21  at his or her workstation in each half of a workday that equals four or more hours."

22  15.    IBEW Local 1245 voluntarily consented to and encouraged the inclusion of

23  the above provisions in the CBA.  IBEW Local 1245 represented that it had the authority to enter

24  and did enter these agreements regarding meal and rest periods on behalf of the employees in the

25  bargaining unit, including Plaintiffs.  However, IBEW Local 1245 now asserts that these provisions

26  violate California law and encouraged Plaintiffs to initiate this lawsuit.

27  16.    In their Complaint, Plaintiffs allege that a CBA cannot waive meal periods

28  and assert that Section 16.5 of the CBA demonstrates that the policy and practice of Mirant has been

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

3.

DEF.'S COUNTERCLAIM FOR DECLARATORY RELIEF            Case No. C 07-05847 PJH

1  to require Plaintiffs and the Class to work "on duty" meal periods in violation of California law.

2  Plaintiffs also allege that Section 16.7 of the CBA states that it was the policy and procedure of

3  Mirant that Plaintiffs take any break at their "workstation" and, on that basis, allege that they have

4  been denied off duty rest periods as required by California law.

5         17.    Mirant asserts that Section 16.5 of the CBA is a valid agreement that complies

6  with California law.  In Section 16.5 of the CBA, Local 1245 has executed a written agreement for

7  "an on-the-job paid meal period" that is permissible under and complies with California law.  A

8  CBA may lawfully require on duty meal periods if (1) the nature of the work prevents an employee

9  from being relieved of all duty; and (2) the CBA contains a written agreement for "an on-the-job

10  paid meal period." IWC Wage Order 1, Section 11(C).  A union may act on behalf of its members in

11  entering on duty meal period agreements or other agreements that are permitted under the California

12  Labor Code.  The nature of the work of Power Plant Technicians at times prevents them from being

13  relieved of all duty.  IBEW Local 1245 has entered a written agreement, on behalf of Plaintiffs and

14  other Power Plant Technicians, that allows on-duty paid meal periods.  Mirant further asserts that

15  IBEW Local 1245 has agreed, for the benefit of its members, to waive the second meal periods for

16  shift employees who work at least ten and not more than twelve hours per day, and that such

17  agreement is expressly permitted by California law.

18         18.    Mirant also asserts that Section 16.7 of the CBA is a valid agreement that

19  complies with California law.  No provision of the California Labor Code or any applicable Wage

20  Order prohibits rest periods from being taken at a workstation as Mirant and IBEW Local 1245 have

21  agreed.

22        **FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF**

23        **(Declaratory Relief under 28 U.S.C. § 2201(a))**

24         19.    Mirant re-alleges and incorporates by reference each of the allegations in

25  Paragraphs 1 through 18 of this Counterclaim as if set forth fully herein.

26         20.    In a case of actual controversy, any court of the Unites States is authorized by

27  28 U.S.C. Section 2201(a) to "declare the rights and other legal relations of any interested party

28  seeking such declaration, whether or not further relief is or could be sought."

4.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEF.'S COUNTERCLAIM FOR DECLARATORY RELIEF**       **Case No. C 07-05847 PJH**

21.     An actual controversy has arisen between Plaintiffs and IBEW Local 1245, on the one hand, and Mirant, on the other hand.  The parties dispute the validity of a contract and dispute the meaning of terms of a contract.  Declaratory relief is also required to determine Mirant's rights and obligations with respect to the claims asserted by Plaintiffs in their Complaint.

22.     In their Complaint, Plaintiffs allege that Sections 16.5 and 16.7 of the CBA and the agreement regarding waiver of second meal periods between Mirant and IBEW Local 1245 violate California law.  Plaintiffs seek remedies from Mirant for the alleged violations.  Although it voluntarily entered into these agreements, IBEW Local 1245 also now contends that the agreements are unlawful.  Mirant disagrees and asserts that the agreements are valid and comply with California law.  The parties dispute the interpretation of these provisions and thus require an interpretation of the CBA and other agreements between the parties, and a determination as to their respective rights and obligations with respect thereto.

23.     This matter is within the Court's jurisdiction under 28 U.S.C. Section 1367(a) and 29 U.S.C. Section 185(a).

24.     Mirant therefore requests declaratory relief stating that Sections 16.5 and 16.7 of the CBA and the agreement regarding waiver of second meal periods were and are enforceable and not inconsistent with or in violation of any California statute or administrative regulation.

## **PRAYER FOR RELIEF**

WHEREFORE, Counter-Claimant Mirant prays for judgment and relief as follows:

1.     For an order declaring that Sections 16.5 and 16.7 of the CBA and the agreement regarding waiver of second meal periods were and are enforceable and not inconsistent with or in violation of any California statute or administrative regulation;

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

5.

DEF.'S COUNTERCLAIM FOR DECLARATORY RELIEF          Case No. C 07-05847 PJH

2.   For reasonable attorneys' fees and costs of suit herein; and

3.   For such further or other relief as the Court deems just and proper.

Dated: November 28, 2007

/s/
MARGARET HART EDWARDS
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
MIRANT CALIFORNIA, LLC

Firmwide:83713909.3 049353.1000

DEF.'S COUNTERCLAIM FOR DECLARATORY RELIEF                    Case No. C 07-05847 PJH

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

# EXHIBIT 3

# COLLECTIVE BARGAINING AGREEMENT
# BETWEEN
# MIRANT CALIFORNIA, LLC



# AND
# INTERNATIONAL BROTHERHOOD OF
# ELECTRIC WORKERS, AFL-CIO
# LOCAL 1245



## November 1, 2005 thru October 31, 2008

# TABLE OF CONTENTS

| Article | Subject | Page |
|---|---|---|
|  | Preamble | 3 |
| 1 | General Purpose of Agreement | 3 |
| 2 | Union Security | 3 |
| 3 | Dues Check Off | 4 |
| 4 | Union Recognition and Work Jurisdiction | 4 |
| 5 | Union Stewards | 5 |
| 6 | Union Representatives and Access | 5 |
| 7 | Notices Between the Union and the Company | 6 |
| 8 | Probationary Employees/Length of Service | 6 |
| 9 | Temporary Employment | 7 |
| 10 | Seniority/Longevity of Service/Layoffs | 8 |
| 11 | Management Rights | 8 |
| 12 | Compensation and Payroll | 9 |
| 13 | Retirement Income and Group Welfare Benefits and Coverage's | 10 |
| 14 | Vacation, Holidays and Paid Leave | 11 |
| 15 | Inter-Plant Transfers | 11 |
| 16 | Hours of Work | 11 |
| 17 | Overtime | 13 |
| 18 | Report Allowance | 14 |
| 19 | Safety | 15 |
| 20 | No Strike – No Lockout | 15 |
| 21 | Grievance and Arbitration Procedure | 16 |
| 22 | No Discrimination | 18 |
| 23 | Savings Clause | 20 |
| 24 | Duration of Agreement | 20 |
| Appendix A | Summary of Benefits | 21 |
| Appendix B | Vacation, Holidays, Sick Leave, Med/Personal Leaves, Personal Time Off, Funeral Leave and Jury Duty | 24 |
| Appendix C | Wage Schedule | 32 |

## PREAMBLE

This Agreement is effective the 1st day of January, 2006 by and between MIRANT CALIFORNIA, LLC located in Pittsburg, California, hereinafter referred to as the "Company" and LOCAL UNION NO. 1245 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, hereinafter referred to as the "Union."

WITNESSETH:

WHEREAS, it is the intent of the parties to set forth herein their Agreement covering rates of pay, wages, hours of employment and other conditions of employment; to promote efficiency, safety and productivity of employees and to provide for prompt and fair settlement of grievances;

NOW, THEREFORE, the parties do agree as follows:

## ARTICLE 1
## GENERAL PURPOSE OF AGREEMENT

1.1     The parties acknowledge that the California energy market is now deregulated, and one of the objectives of this Agreement is competitive operation in this new market. The general purpose of this Agreement is to set forth the hours of work, rates of pay, and conditions to be observed by the Company, Union, and employees and to provide orderly and harmonious procedures between the Company, Union, and employees. It is the further purpose of the Agreement to prevent interruption of work and to promote the efficient operation of business.

1.2     Any reference to gender contained within the provisions of this Agreement is inadvertent and is in no way intended by the parties, and should not be so construed, as making applicable such provisions to any one gender.

## ARTICLE 2
## UNION SECURITY

2.1     Every employee covered by this Agreement shall, not later than thirty (30) calendars days after the commencement of employment, as a condition of employment, tender to the Union: (a) an amount of money equal to the initiation fee uniformly charged by the Union to all employees who become members of the Union, unless the employee has, at any previous time, tendered such an amount of money to the Union; and (b) an amount of money equal to the monthly dues uniformly charged by the Union to all employees who are members of the Union. Thereafter, such employee shall tender to the Union an amount of money equal to the monthly dues uniformly charged by the Union to all employees who are members of the Union.

2.2     Upon request by Union, and no more often than monthly, Company shall provide Union a list of employees in the bargaining unit.

2.3     Any bargaining unit employee who is temporarily placed in a non-bargaining unit classification shall continue to be subject to the provisions of Section 2.1 above, for the duration of such temporary assignment.  If any employee is temporarily assigned to a supervisory position, he shall not be discriminated against by the Union for performing as the Employer's representative, with the exception of payment of dues, for the duration of the temporary assignment.

2.4     Union recognizes its obligation to inform bargaining unit members of the rights and obligations with respect to union membership. The Company will allow the Union to meet with all new hires, up to thirty minutes paid time, to satisfy this provision.

## ARTICLE 3
## DUES CHECK-OFF

3.1     Company shall deduct from wages and pay over to the proper officers of Union membership dues of any employee as provided for in Section 2.1 above who individually and voluntarily authorizes such deductions in writing.

3.2     The Union shall indemnify the Company and hold it harmless against any and all suits, demands, and liability that may arise out of, or by reason of, any action that shall be taken by the Company for purposes of complying with the foregoing provisions of this Article 3 or in reliance on any authorization or list which shall be furnished to the Company by the Union under any of such provisions.

3.3     If the federal or state government rules that the check off authorization form, or right to terminate the same, as contained in this Agreement, violates federal or state law, then the same shall be considered deleted and the appropriate form and/or authorization shall be substituted in its place.

## ARTICLE 4
## UNION RECOGNITION AND WORK JURISDICTION

4.1     This Agreement shall cover the bargaining unit of Power Plant Technicians employed at the Company's Contra Costa, Pittsburg and Potrero Power Plants (collectively referred to as "the Plants"), and shall exclude all other employees.

4.2     The Company recognizes the Union as the sole bargaining agent for the bargaining unit defined in this Article 4.

4.3    This Agreement shall be binding upon the successors and assigns of the parties hereto and no provisions, terms, or obligations herein contained shall be affected, modified, altered or changed in any respect whatsoever by the consolidation, merger, sale, transfers, or assignments of either party hereto, or by any change geographical or otherwise, in location or place of business of either party hereto.  In the event the Company sells or transfers any location, this Agreement shall remain in full force and effect and be binding upon the purchaser or transferee and the Company agrees it will include in the purchase agreement that this Agreement is so binding.

## ARTICLE 5
## UNION STEWARDS

5.1    For the purpose of representation within a facility, the Union shall be entitled to select a reasonable and adequate number of stewards, who shall restrict their activities to the handling of grievances and other legitimate Union business, and who shall be allowed a reasonable amount of time for this purpose.

5.2    Each steward shall be a regular full-time member of the bargaining unit and shall perform the work assigned by the Company.

5.3    Stewards shall not be recognized by the Company until the Union has notified the Company's Human Resources department in writing of the selection.

5.4    Stewards shall not conduct Union business during their regular working hours without obtaining prior approval from a supervisor.

## ARTICLE 6
## UNION REPRESENTATIVES AND ACCESS

6.1    A written list of the Union Business Representatives assigned to service this Agreement shall be furnished to the Company immediately after their designation and the Union shall notify the Company of any changes in the list which occur from time to time.

6.2    Duly authorized Business Representatives of the Union shall be permitted at reasonable times to enter the Plants covered by this Agreement for the purpose of transacting Union business and observing conditions under which employees are employed.

6.3    The Business Representative will coordinate visits with the Plant Manager/O&M Manager or his designee upon entering a facility, and the Business Representative may not unduly interfere with the employees' work at any time.

6.4    Company may make reasonable designation of controlled-access areas.

6.5    All Union business postings will be limited to Company-provided Union bulletin boards.

## ARTICLE 7
## NOTICES BETWEEN THE UNION AND THE COMPANY

7.1    Notices hereunder shall be deemed to have been adequately given if served by certified mail upon the persons named below at the addresses indicated unless otherwise notified in writing.

Notice to the Union shall be addressed to:
IBEW - LOCAL #1245
Attn:  Business Manager/Financial Secretary
P. O Box 2547, 95696 (US Mail)
30 Orange Tree Circle, 95687 (FedEx)
Vacaville, CA

Notice to the Company shall be addressed to:
MIRANT CALIFORNIA, LLC
Attn:  Human Resources Manager
P. O. Box 192 (US Mail)
696 W. 10th Street (FedEx)
Pittsburg, CA  94565

7.2    Either party may, in its sole discretion, designate in writing any new persons to receive said notices during the life of this Agreement.

## ARTICLE 8
## PROBATIONARY EMPLOYEES/LENGTH OF SERVICE

8.1    All employees covered by this Agreement are deemed probationary from their date of hire through their first 180 continuous calendar days of employment, and during such time may be terminated with or without just cause.

8.2    An employee's length of service shall begin on the employee's first date actually worked including service granted to "Transition Employees" as defined in the Memorandum of Understanding, dated November 1, 2000.  Should two employees begin work on the same day the following process shall be used for determining the employee with the greatest service:  by the last four (4) digits of the employees' social security number, with the lowest number determining the higher seniority

8.3    Employees who leave in good standing and are rehired at a later date will be considered a new hire.  "Good standing" means that the employee was not terminated for cause.  Any employee terminated for cause is not eligible for rehire at any Company facility.

8.4    Probationary employees are not eligible for certain benefits including holiday pay, vacation, bereavement/funeral pay and personal time off.

## ARTICLE 9
## TEMPORARY EMPLOYMENT

9.1    The Company will provide the Union hiring hall forty-eight (48) hours advance notice of the need to hire a temporary employee for a work schedule in excess of five (5) work days.  All temporary employees will be "at will".

9.2    When notifying the Union of the need for a temporary employee, the Company may:,

> (A)    Call employees by name.
> (B)    Send a letter to the Union specifically requesting that the Union not send a particular individual in response to the referral without payment of any type, for a twelve month period.

9.3    The Union will have up to forty-eight (48) hours to refer applicants for employment to the Company.

9.4    The Company retains the right to reject any applicant.  Should an applicant be rejected, the applicant will receive four (4) hours' pay at the Minimum Rate set forth in Article 12.

9.5    If the Company rejects all referred applicants or if the Union cannot refer a qualified applicant, the Company may hire an applicant from any source.

9.6    Temporary employees hired under this Article shall be paid no less than the Minimum Rate.

9.7    Should the Company desire to employ an individual on a temporary basis for five (5) consecutive work days or less, the Company need not use the aforementioned hiring hall process contained in this Article, but shall instead be allowed to direct hire.

## ARTICLE 10
## SENIORITY/LONGEVITY OF SERVICE/LAYOFFS

10.1   For purposes of layoff, transfers, and position changes within the bargaining unit, the Company shall select employees on the basis of skills, operational needs and length of service.  "Service" means continuous service in the Company's employ and shall include service recognized in Article 8.2, and service shall not be interrupted by authorized time off of one (1) year or less.  Unauthorized time off which results in discipline may not be counted for service credit.  A termination from employment, voluntary or involuntary, eliminates all service.  Notwithstanding the above, former employees who are rehired by the Company within twelve (12) months of their last active date of employment shall have their service bridged.

10.2   Employees shall have the right to be recalled for up to twelve (12 ) months after a layoff.  Recalled employees shall be rehired in the reverse order of layoff, provided such employees are qualified for the vacant positions.

## ARTICLE 11
## MANAGEMENT RIGHTS

11.1   The Company shall at all times, subject to the provisions of this Agreement and the law, retain the sole right to manage its business and direct the working force, including the rights to decide the number and location of plants, the equipment incidental to operation, the products to be manufactured, the method of manufacture, and the scheduling of production; to determine whether and to what extent the work required in its business shall be performed by employees covered by this Agreement; the right to lease or to sublease; the right to expand, sell, subcontract, move, establish new operations, transfer and/or terminate all or part of its operations; the right to establish and/or change hours of work including number of hours worked and/or work schedules; the right to select, hire and layoff employees and/or to determine the size , content, and composition of the required jobs within the Plants, including the right to set job requirements and judge performance; to cross-train employees; to reassign job tasks between employees; to transfer employees and/or work between departments and to eliminate or create new jobs; to determine the levels of productivity, quality and efficiency; the right to discipline, suspend or discharge employees with just cause; the right to change or introduce any new or improved methods, materials, equipment or facilities; the right to promote; the right to determine the methods, techniques and types of work or service to be performed, not performed, or work or service to be subcontracted; and the right to make and enforce reasonable rules and regulations as the Company may consider necessary for the operation of its business.  Any right not given to the Union in this Agreement shall remain the sole and exclusive right of the Company.  The exercise of management rights in this Article is not subject to Grievance and Arbitration under Article 21.

11.2    The management right involving the right to determine whether and to what extent the work required in its business shall be performed by the employees covered by this Agreement is not intended to reduce the size of the bargaining unit. Except where the bargaining unit size would be reduced or an employee would suffer a loss in regularly scheduled work hours, management and staff may be used to perform bargaining unit work when necessary to maintain operations, conduct training, provide temporary relief, address temporary staffing shortages, or perform quality inspections or testing.

11.3    The Company may from time to time establish reasonable rules and regulations relating to the maintenance of performance, order, safety, Company issued equipment, attendance and discipline among its employees, together with disciplinary penalties for their enforcement.  Such rules shall be posted on the Company bulletin board seven (7) days prior to implementation.  Such rules and regulations and any changes established shall be within the sole right of the Company to implement, but they will be reviewed with the Union before posting.

## ARTICLE 12
## COMPENSATION AND PAYROLL

12.1    As of the ratification of this contract and the agreed-to date between the parties, employees will be brought to the target wage rate of their assigned level or a minimum of a 2% base wage increase.  It is understood that some employees' base wage rate may exceed the target wage rates and they will, therefore, receive 2% base wage increase(s) on March 1 of 2007 and 2008 until their base wage meets target.  Employees at target wage rates will receive a 3% base wage increase on March 1 of 2007 and 2008. The wage rates and escalation table are those set forth in Appendix C.

12.2    Definition of a Lead union position is:  Leads will be selected by management and can be a regular assignment or temporarily assigned to employees working outages or other projects.  The Company can assign or unassign employees to the lead position at their discretion.  Employees can choose to end their Lead assignment and return to their normal craft classification and pay rate.  Leads can direct other bargaining unit employees in assigning work and technical direction.  Leads will perform bargaining unit work.  If a Lead employee returns to their craft level position, they will be placed at their 2005 wage rate unless that wage rate has progressed to a higher level pursuant to Appendix C.

12.3    There shall be no deductions from employees' pay covered by this Agreement except as provided in this Agreement or as required to:  (1) repay outstanding loans made to an employee; (2) pay for medical premiums: (3) pay for charitable contributions designated by the employee; (4) pay for other deductions authorized by the employee and agreed to by the Company, or those deductions authorized in the manner prescribed by law (e.g., garnishments); and (5) to pay restitution in the event of theft or unauthorized conversion of Company property.

12.4    Wages shall be paid at biweekly intervals on Fridays for a two weeks' payroll period ending no more than ten (10) days prior to the pay date, provided if the regular pay date falls on a holiday payment shall be made on the preceding workday.

12.5    Paid leave under Article 14 shall be at the straight time rate, and shall not include overtime or holiday premiums or shift differentials.

12.6    Regular, full-time employees assigned to a rotating shift will be paid a one dollar ($1.00) hourly premium for all hours worked.  These premiums will be included in the base rate of pay for overtime calculations.  Nonshift  employees assigned to work a temporary shift outside their normal work hours for more than 5 consecutive days will also be entitled to the $1.00 hour shift premium.

12.7    The Company reserves the right to award extra pay to any individual bargaining unit employee, or groups of employees, based on performance.    This monetary or non-monetary award, subject to applicable taxes, is not to be considered part of any of the Company's annual incentive pay program.

12.8   In the event of a layoff, the current Company severance plan that is in effect at the time the layoff will occur, will be the plan offered to bargaining unit employees. The Company will develop a process for selecting employees for layoff and administering the severance procedure.


## ARTICLE 13
## RETIREMENT INCOME AND
## GROUP WELFARE BENEFITS AND COVERAGES

13.1    The retirement income and group welfare benefit plans which have been negotiated as part of the Agreement will remain in effect for the life of the Agreement, unless changed by mutual agreement.  Except as set forth in Article 8.4, eligibility for and the operation of such plans will be governed by the plan documents.

13.2    The Company will provide benefit plans in which employees shall share the cost of certain benefits (e.g., medical/dental coverage).  A summary of the coverage's and the cost-sharing for such coverage's is set forth in Appendix A.  To the extent provided by law, Company will provide that employee costs will come from pretax income.

13.3    The Company may change carriers or administrators for any benefits covered by this Article in its sole discretion, provided that the Company provides comparable benefits.  "Comparable benefits" does not include the exact same access to particular medical providers or facilities, or investment options.  The Company will provide the Union both reasonable advance notice of any such change, and the opportunity to meet and confer prior to making any such change.

## ARTICLE 14
## VACATION, HOLIDAYS AND PAID LEAVE

14.1     When paid or unpaid leave is sought and provided for Vacation, Holidays, Sick Leave, Funeral Leave, Jury and Witness Duty, Military Duty and Personal and Medical Leave, and Kin Care Leave such leave will be provided and governed in accordance with the applicable leave procedure set forth in Appendix B. Based on operating requirements, all leave requests may be subject to management approval.

14.2     Unless otherwise addressed in the Agreement, the employees will be afforded and subject to all other Company Policies and Procedures and benefits provided to other non-exempt Company employees, and which will remain in effect for the term of this Agreement.

## ARTICLE 15
## INTER-PLANT TRANSFERS

15.1     The Company may temporarily transfer or reschedule employees from one plant to the other to meet immediate operational needs or for outages.  In such an event, the employee will be reimbursed for reasonable and actual board and lodging, or actual travel time and mileage, which exceeds their normal commute travel time and mileage for each day the employee commutes to the temporary location.  Mileage shall be paid at the allowable IRS rate.  The Company will make reasonable efforts to accommodate the employee's preference without compromising employee safety.

15.2     Subject to operational needs, employees covered by this Agreement will receive priority consideration for transfers to regular full-time or part-time vacant positions to any facility covered by this Agreement which is not their originating place of work.  Employees will be selected for transfers as provided in Article 10.  Employees can apply for job opportunities by submitting their request using Mirant's job posting system found on the Company's website.

## ARTICLE 16
## HOURS OF WORK

16.1     The work week shall be seven (7) consecutive calendar days beginning at 6:00 a.m. on Monday and ending at 5:59 a.m. on the following Monday.  The work day shall be any period of 24 consecutive hours beginning with the starting time of the employees' scheduled work period.

16.2     Except in cases where the Company adopts an alternative work schedule as noted below in this Article and in Article 16.4, the regular working hours will be 40 hours per week, eight (8) hours per day, not including a meal period of one-half (1/2) hour.  Unless otherwise altered by the Company per the terms of this Agreement, non-shift employees shall work eight (8) hours per day, Monday through Friday, between the

hours of 6:00 a.m. and 6:00 p.m.  While it is the intent of the Company to maintain a normal schedule of weekly employment, this statement shall not be considered a guarantee of any minimum hours of work, or as a limitation of the number of hours which the Company may reasonably require an employee to work if the conditions necessitate additional hours of work, or any guarantee as to a specific schedule of work.

16.3    The Company may, in addition to the schedule noted above, schedule work shifts, in the following configurations:

    (A)    Ten (10) hours per shift for four (4) days within a workweek.

    (B)    Twelve (12) hour shifts for three (3) days within a work week, followed by twelve (12) hour shifts for four (4) days within the next workweek.

    (C )    Nine (9) hours per shift for four (4) days and one day at eight (8) hours per day within a work week, followed by nine (9) hours per shift for four (4) days within a workweek.

Unless an employee is a Shift Employee as defined in Section 16.5 below, work time shall not include meal periods of one-half (1/2) hour.  This section shall not be construed as a guarantee of hours of work per day or per week, or a guarantee of days of work per week.  The Company will provide at least two (2) week's notice of any change in work schedule, except in situations of operational emergencies.

16.4    Nothing contained herein shall be construed as preventing the restructuring of the normal work day or work week as deemed reasonable to provide service in the event of work stoppage, failure of utilities to provide electricity, water, or gas for reasons beyond the Company's control failure of the sewer, or interruptions of work caused by acts of God or any other reasons beyond the control of the Company.

16.5    A Shift employee works a job that is staffed with a rotating twenty-four (24) hour per day shift, on a seven (7) day a week basis, including holidays.  Time to consume meals for shift employees shall be considered as time worked.  Meals will be taken at the work station or as directed by the Supervisor.

16.6    Absent circumstances as set forth in Section 16.4, the Company shall not require an employee to work more than 16 hours without an 8 hour rest period, provided relief is available.

16.7    Each employee shall be allowed a ten-minute paid break to be taken at his or her workstation in each half of a workday that equals four or more hours.  Under no circumstance will rest periods become cumulative from day to day.

# ARTICLE 17
# OVERTIME

This section shall not be construed as a guarantee of hours of work per day or per week, or a guarantee of days of work per week.

17.1    Overtime is defined as (a) any time worked outside of one's regular schedule, or (b) any time worked on a paid holiday.

17.2    Overtime rates shall be paid under the following conditions:

(A)    All overtime will be paid at one and one-half times the regular hourly rate of pay with the following exceptions:
- Twice the regular hourly rate of pay will be paid after working 12 consecutive hours.
- Twice the regular hourly rate of pay for all hours worked on a second and fourth day of overtime assigned during the same work week.
- All training assigned outside of regular work hours will be paid at the one and one-half times the hourly rate of pay. Under no circumstances will double time be paid for training.

(B)    Nothing in Article 17 shall prevent the Company from exercising a Home Early Day when operating conditions allow pursuant to the 12-hour shift schedule.

17.3    The Company shall have the right to assign overtime to qualified employees, but will make a good faith attempt to distribute overtime equitably. When operational needs require, employees shall be available to work overtime if requested to do so. If overtime is an extension of the normal work day or occurs during a lunch period, it will normally be assigned to the employee who is doing the particular job at the particular work station needed for overtime operation. All overtime scheduling must have prior approval by the appropriate supervisor.

17.4    No pyramiding of overtime and/or premium pay will be permitted, i.e., there shall not be payment of more than one overtime or premium rate for the same hours of overtime.

17.5    For the purpose of computing overtime pay, only time spent working shall be considered as hours worked. Travel time in connection with overtime work shall be paid at the overtime rate. Vacation, sick leave, funeral, floating holiday and jury duty are considered as time worked.

17.6    Lost time due to general leave, personal business, unexcused absence and lateness shall not be considered as hours worked.  Hours worked on a Company recognized holiday shall be paid in accordance with this Article, in addition to the holiday received.

17.7    All overtime must be authorized by the employee's supervisor or management prior to working overtime hours except in the case of an emergency at which time the overtime may be authorized by the employee's supervisor after the emergency.

17.8    The Company shall furnish an appropriate meal or reimbursement when an employee is working overtime and is prevented from observing the normal meal practice. The meal or reimbursement is due every 5 hours during an overtime period except when the overtime is prearranged for a non-workday where the employee will provide the first meal (typically lunch).  The first meal is due 5 hours following the end of the employee's lunch period or ¼ hour past the end of a 12-hour shift.  Time to consume such meal shall be considered as time worked, and in no event shall exceed one-half hour.  In the event the employee foregoes the meal, the employee will be reimbursed $13.00 and one-half hour pay at the overtime rate for such missed meal.

## ARTICLE 18
## REPORTING ALLOWANCE

18.1    Reporting allowance is time for which an employee is paid, but during which no work is performed.  It is "allowed" as provided in this Article.

18.2    An employee who is scheduled or called out to work, and who reports for work on time, shall be paid not less than two (2) hours at the applicable rate unless the employee has been directed by the Company before the end of the employee's previously scheduled shift or one (1) hour before the beginning of the employee's next scheduled shift not to appear for work.  The Company will contact the employee at the employee's telephone number of record most recently placed on file with the Company.  If there is no work in the occupation for which the employee reported, he may be assigned to other work.

18.3    In the event that work cannot be provided due to work stoppage, failure of utilities to provide electricity, water, or gas for reasons beyond the Company's control, failure of the sewer system, or interruptions of work caused by acts of God or any other reason beyond the control of the Company, the provisions of this Article do not apply.

18.4    When the Company deems it necessary, employees may be provided with electronic pagers in order to be available for operational contingencies or emergencies and for regular call-out obligations.

## ARTICLE 19
## SAFETY

19.1    All employees shall comply with all safety rules and regulations established by the Company.  The Company will issue reasonable safety rules and regulations.

19.2    If an employee has justifiable reason to believe that his safety and health are in danger due to an alleged unsafe conditions, or equipment or unsafe work habits of others, he shall inform his supervisor immediately.  The supervisor shall be responsible for determining what action or equipment, if any, is necessary to make the job safe or the job shall be shut down.  If unsure about the safety criteria the supervisor may involve others in the assessment before rendering the decision.

19.3    The Company and Union will establish a Joint Safety Committee which will meet at least twice each year to discuss safety concerns, new regulations, and accidents. Any recommendation from this Committee will be advisory in nature.

## ARTICLE 20
## NO STRIKE - NO LOCKOUT

20.1    During the term of this Agreement, the Union, its agents, representatives, employees and persons acting in concert with it agree that they shall not incite, encourage, condone or participate in any strike, walkout, slowdown, sit down, stay-in, boycott, sympathy strike, sick-out, picketing, or other work stoppage, handbilling where handbilling may interfere with current or future operations, or any other type of similar interference with respect to the Plants; and it is expressly agreed that any such action is a violation of this Agreement.  Upon receipt of a written notice of a violation to the Union, the Union and its officers shall take immediate action and will use their best efforts to notify any Union officers, members, representatives or employees, or persons acting in concert with them, either individually or collectively, to cease and desist from any violation immediately and to return to work.  Nothing in this Agreement shall be construed to limit or restrict the right to any of the parties to this Agreement to pursue any and all remedies available under law in the event of a violation of this provision. Any employees inciting, encouraging, or participating in any strike, walkout, slowdown, sit down, stay-in, boycott, sympathy strike, sick-out, picketing, or other work stoppage, handbilling, where handbilling may interfere with current or future operations, or any other type of similar interference with respect to the Plants, or other activity in violation of this Agreement are subject to discipline up to and including discharge.

20.2    In consideration of the foregoing, the Company agrees that it shall not lock out or cause to be locked out any employee covered under the provisions of this Agreement.  The term "lockout" does not refer to the discharge, termination or layoff of employees by the Company, nor does "lockout" include the Company's decision to

terminate or suspend work at either Plant or any portion of either Plant for reasons unrelated to economic pressure on the Union or its members.

20.3    The Parties agree that any dispute under this Article, except employee discharges pursuant to Article 21.1, shall be submitted to the following arbitration procedure:

(A)    The Grieving Party shall submit to an arbitrator designated in subsection (B) below a sworn declaration containing, in reasonable detail, the relevant facts of the events giving rise to the dispute, and alleging a threatened or existing breach of this Article that shall cause or is causing irreparable harm.  This declaration shall be simultaneously served on the other Party.

(B)    The declaration required under subsection (A) shall be submitted to the first available arbitrator on the following list to consider the dispute:

| | |
|---|---|
| John Kagel | Chris Knowlton |
| Barbara Chaveny | Claude Ames |
| Ken Silbert | Gerald McKay |
| Barry Winograd | Norman Brand |
| Frank Silver | Jim Madison |

(C)    The arbitrator shall have the authority, pending a full hearing, to issue interim, preliminary, or temporary orders as well as a final and binding decision following a hearing.

(D)    Any interim, temporary, preliminary or final decision or order from the arbitrator, as well as the ability to compel compliance with this procedure shall be enforceable by lawful judicial action by a court of competent jurisdiction.

## ARTICLE 21
## GRIEVANCE AND ARBITRATION PROCEDURE

21.1    Should either party allege a violation of this Agreement, an earnest effort shall be made to settle such matters promptly in accordance with this Grievance and Arbitration Procedure.

21.2    Whenever possible, prior to filing a formal grievance, any employee or his designated Steward, having a complaint under the terms of this Agreement shall explain the matter to his supervisor.  The employee may request the supervisor to summon the Steward.  An attempt will be made to settle the complaint at this stage.

21.3    Formal Grievances must be asserted and filed within ten (10) working days of when the grieving party knew or should have known of the alleged violation, or else they are barred.  The period shall commence to run on the day following the action complained of.  In case of disciplinary action, the Shop Steward will be present, if requested by the employee.

21.4    A steward may investigate and attempt to adjust a pending request, complaint or grievance.  The Company and Union will determine those employees to be present at any scheduled meetings by and between the Company and the Union during the time the employee's grievance is discussed, provided the meeting(s) do not interfere with operations.

21.5    The Steps of the Grievance Procedure shall be as follows:

(A)    Step One:  When the steward, employee and supervisor have been unable to resolve the complaint, it may be reduced to writing and submitted as a formal grievance by the Business Representative to the Plant Manager and Human Resources Manager, but no later than the ten (10) day time limit set forth in 21.3. The Union and the Company's Human Resources Manager or designee shall discuss the grievance within five (5) working days from the date of receipt of the grievance.  Within five (5) working days after the meeting between Company and Union, the Company shall answer in writing to the Union.  Within five (5) working days after receipt of the Company's answer, the Union may refer the matter to Step 2.

(B)    Step Two:  In the event the issue is not resolved in Step One, it may be referred by either party to the Review Committee comprised of the Company's Director of Operations and a Union Assistant Business Manager.  They shall meet within ten (10) days and have the authority to, interview additional witnesses, send it back for additional information, settle or send to the next step.

(C)    Step Three:  Either party may request the Federal Mediation and Conciliation Service to provide a list of no less than seven (7) qualified arbitrators by separately submitting the request directly to the FMCS.  Either party may reject a list in its entirety on one occasion.  Within five (5) working days of receipt of such list, the individuals to represent the parties at the arbitration hearing and one other individual appointed by each party shall confer to select an arbitrator by alternatively striking the name from the list  until one name remains who shall be the arbitrator.  The parties shall flip a coin to determine who strikes the first name.  The date to be set for the arbitration shall be one which is mutually agreed to by and among the arbitrator, the Union and the

Company.  At this Step, the parties will also attempt to resolve the issue in a manner that is satisfactory to both parties.  If an agreeable settlement is not reached, the parties will jointly advise the arbitrator of the following agreed upon steps which s/he is to follow in the rendering of his/her decision:

(1)    The decision of the arbitrator shall be in writing and shall be final and binding upon the parties.  The burden of proof for any decision shall be by a preponderance of the evidence.

(2)    Back pay remedies shall be limited to a maximum of no more than ten (10) months retroactive pay, unless it is shown that the Company willfully and deliberately violated the Agreement.

(3)    The arbitrator shall have no power or authority to add to or subtract from or modify in any way the terms and conditions of this Agreement.  Where termination is at issue, the Arbitrator shall only have the power to adjudicate the issue of "just cause."

(4)    All fees and expenses of the arbitrator shall be shared equally by the Company and the Union.

21.6    Failure to timely raise, file or appeal any grievance within the time limits set forth above will result in the grievance being waived; provided, however, that the time limits set forth above may be extended by the mutual written agreement of the parties.

21.7    Any grievance affecting the hourly rate of an employee which is settled in favor of the employee shall not be retroactive to a date earlier than sixty (60) calendar days prior to the date the grievance was presented to the Company in writing in Step 1 of this procedure.  It is agreed that no grievance shall be valid unless appealed within the time provided herein.  Where the grievance has not been appealed as provided herein, it shall be considered settled on the basis of the last answer given by the Company.  If the Company fails to respond in accordance with the time limits set forth herein the grievance will be settled as requested by the Union.

## ARTICLE 22
## NO DISCRIMINATION

22.1    The Company shall not discriminate against any employee because of membership in or activity on behalf of the Union.  The Union shall not discriminate against, coerce, or intimidate any employee because of non-membership in the Union.

22.2    The parties agree that employees are entitled to equal employment opportunity and the parties will not discriminate against qualified employees or

applicants by reason of his or her race, creed, religion, color, sex, national origin, age, disability, veteran status, marital status, perceived or actual sexual orientation or citizenship status, as these terms are defined and interpreted under the provisions of the following statutes, as amended: Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Vietnam Veterans Readjustment Act of 1974, the Family and Medical Leave Act, the California Family Rights Act, the Immigration Reform and Control Act of 1986, and any other applicable federal/state/local laws governing discrimination.

22.3     The Company and the Union agree that no employee should be subjected to unlawful harassment on any basis prohibited by law, including sexual or racial harassment.

22.4     The Union acknowledges its obligation to abide by the laws, regulations and policies which prohibit discrimination, intimidation, or harassment. The Union recognizes that bargaining unit employees must comply with the Company's non-discrimination policy and its policy against harassment. The Union also recognizes that, should the Company determine that an employee is in violation of the non-discrimination or harassment policy, the employee may be subject to disciplinary action up to and including discharge.

22.5     If, pursuant to any court or administrative order or settlement of a lawsuit or charge under any anti-discrimination law, the Company must change or provide terms and conditions of employment inconsistent with this Agreement, the parties agree that said Court order or settlement terms shall supercede the provisions of this Agreement.

22.6     The parties agree that the Company may provide reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled employee or applicant pursuant to state and/or federal disability laws. The parties agree to meet and confer regarding the accommodation and, if they cannot agree, the Company may implement any reasonable accommodation.

22.7     The Company and the Union agree to comply with the applicable requirements of the Family and Medical Leave Act of 1993 and similar applicable laws when and so long as such laws are in effect. Such actions shall not be considered a violation of any provision of this Agreement, notwithstanding any other provisions of this Agreement, nor shall such actions be used as evidence of precedent or past practice in any subsequent situation.

## ARTICLE 23
## SAVINGS CLAUSE

23.1    In the event any clause or provision of this Agreement is ruled an "unfair labor practice" by the National Labor Relations Board or should become invalid by reason of present or future legislation, regulation, or decision by any court or other tribunal with jurisdiction, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected.  In such event, the parties shall meet within thirty (30) days to negotiate a substitute provision which will, as nearly as possible, reflect the intent of the suspended clause in a lawful manner.  In any event, the No Strike -- No Lockout provisions contained in Article 20 shall remain in effect for the term of this Agreement as to any issue which might be addressed by negotiating commenced pursuant to this Article.

## ARTICLE 24
## DURATION OF AGREEMENT

24.1    This Agreement is executed on November 1, 2005 and it shall remain in full force and effect for three (3) years through October 31, 2008 and from year to year thereafter unless either party serves written notice of their desire to amend, modify or terminate this Agreement at least sixty (60) days prior to the anniversary date.  The Company and the Union may mutually agree to amend or add to any provision of this Agreement during its term, provided that any such amendment or modification must be in writing executed by the duly authorized representatives of each party and any oral modification or amendment shall have no force or effect.

IN WITNESS WHEREOF MIRANT CALIFORNIA, LLC and IBEW LOCAL 1245 have each caused this agreement to be executed in its name and behalf, by its proper officials thereunto duly authorized the year and day first above written.

MIRANT CALIFORNIA, LLC

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 1245

By: _____

By: _____
    Mark Gouveia, Director
       Of Operations

    Perry Zimmerman, Business Manager

Date: _____

Date: _____

By: _____
    Michael Davis, President
Date:_____

By: _____
    Hunter Stern, Business Representative
Date  :  _____

# EXHIBIT 4



# OFFICIAL NOTICE

**INDUSTRIAL WELFARE COMMISSION
ORDER NO. 1-2001
REGULATING
WAGES, HOURS AND WORKING CONDITIONS IN THE**

# MANUFACTURING INDUSTRY

*Effective July 1, 2002 as amended*

*Sections 4(A) and 10(C) amended and republished by the Department of Industrial Relations,
effective January 1, 2007, pursuant to AB 1835, Chapter 230, Statutes of 2006*

*This Order Must Be Posted Where Employees Can Read It Easily*

Visit *www.dir.ca.gov*
IWC FORM 1101 (Rev. 10-2006)
OSP 06 98759

● **Please Post With This Side Showing** ●

# OFFICIAL NOTICE
*Effective July 1, 2002 as amended*

*Sections 4(A) and 10(C) amended and republished by the Department of Industrial Relations, effective January 1, 2007, pursuant to AB 1835, Chapter 230, Statutes of 2006*

## INDUSTRIAL WELFARE COMMISSION
## ORDER NO. 1-2001
## REGULATING
## WAGES, HOURS AND WORKING CONDITIONS IN THE

# MANUFACTURING INDUSTRY



**TAKE NOTICE:** To employers and representatives of persons working in industries and occupations in the State of California: The Department of Industrial Relations amends and republishes the minimum wage and meals and lodging credits in the Industrial Welfare Commission's Orders as a result of legislation enacted (AB 1835, Ch. 230, Stats of 2006, adding sections 1182.12 and 1182.13 to the California Labor Code.) The amendments and republishing make no other changes to the IWC's Orders.

## 1. APPLICABILITY OF ORDER

This order shall apply to all persons employed in the manufacturing industry whether paid on a time, piece rate, commission, or other basis, except that:

(A) Provisions of Sections 3 through 12 of this order shall not apply to persons employed in administrative, executive, or professional capacities. The following requirements shall apply in determining whether an employee's duties meet the test to qualify for an exemption from those sections:

(1) Executive Exemption. A person employed in an executive capacity means any employee:

(a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees herein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.102, 541.104-111, and 541.115-116. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the work week must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

(2) Administrative Exemption. A person employed in an administrative capacity means any employee:

(a) Whose duties and responsibilities involve either:

(i) The performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers, or

(ii) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined for purposes of this section); or

(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

(e) Who executes under only general supervision special assignments and tasks; and

(f) Who are primarily engaged in duties that meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, and 541.210, 541.215. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the work week must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies

(g) Such employee must also earn a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

(3) <u>Professional Exemption</u>.  A person employed in a professional capacity means any employee who meets *all* of the following requirements:

(a) Who is licensed or certified by the State of California and is primarily engaged in the practice of one of the following recognized professions: law, medicine, dentistry, optometry, architecture, engineering, teaching, or accounting; or

(b) Who is primarily engaged in an occupation commonly recognized as a learned or artistic profession. For the purposes of this subsection, "learned or artistic profession" means an employee who is primarily engaged in the performance of:

(i) Work requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or work that is an essential part of or necessarily incident to any of the above work; or

(ii) Work that is original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination, or talent of the employee or work that is an essential part of or necessarily incident to any of the above work; and

(iii) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

(c) Who customarily and regularly exercises discretion and independent judgment in the performance of duties set forth in paragraphs (a) and (b).

(d) Who earns a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

(e) Subparagraph (b) above is intended to be construed in accordance with the following provisions of federal law as they existed as of the date of this wage order: 29 C.F.R. Sections 541.207, 541.301(a)-(d), 541.302, 541.306, 541.307, 541.308, and 541.310.

(f) Notwithstanding the provisions of this subparagraph, pharmacists employed to engage in the practice of pharmacy, and registered nurses employed to engage in the practice of nursing, shall not be considered exempt professional employees, nor shall they be considered exempt from coverage for the purposes of this subparagraph unless they individually meet the criteria established for exemption as executive or administrative employees.

(g) Subparagraph (f) above, shall not apply to the following advanced practice nurses:

(i) Certified nurse midwives who are primarily engaged in performing duties for which certification is required pursuant to Article 2.5 (commencing with Section 2746) of Chapter 6 of Division 2 of the Business and Professions Code.

(ii) Certified nurse anesthetists who are primarily engaged in performing duties for which certification is required pursuant to Article 7 (commencing with Section 2825) of Chapter 6 of Division 2 of the Business and Professions Code.

(iii) Certified nurse practitioners who are primarily engaged in performing duties for which certification is required pursuant to Article 8 (commencing with Section 2834) of Chapter 6 of Division 2 of the Business and Professions Code.

(iv) Nothing in this subparagraph shall exempt the occupations set forth in clauses (i), (ii), and (iii) from meeting the requirements of subsection 1(A)(3)(a)-(d) above.

(h) Except, as provided in subparagraph (i), an employee in the computer software field who is paid on an hourly basis shall be exempt, if *all* of the following apply:

(i) The employee is primarily engaged in work that is intellectual or creative and requires the exercise of discretion and independent judgment.

(ii) The employee is primarily engaged in duties that consist of one or more of the following:

—The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications.

—The design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications.

—The documentation, testing, creation, or modification of computer programs related to the design of software or hardware for computer operating systems.

(iii) The employee is highly skilled and is proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, and software engineering. A job title shall not be determinative of the applicability of this exemption.

(iv) The employee's hourly rate of pay is not less than forty-one dollars ($41.00). The Division of Labor Statistics and Research shall adjust this pay rate on October 1 of each year to be effective on January 1 of the following year by an amount equal to the percentage increase in the California Consumer Price Index for Urban Wage Earners and Clerical Workers.*

(i) The exemption provided in subparagraph (h) does not apply to an employee if *any* of the following apply:

(i) The employee is a trainee or employee in an entry-level position who is learning to become proficient in the

_____

* Pursuant to Labor Code section 515.5, subdivision (a)(4), the Division of Labor Statistics and Research, Department of Industrial Relations, has adjusted the minimum hourly rate of pay specified in this subdivision to be $49.77, effective January 1, 2007.  This hourly rate of pay is adjusted on October 1 of each year to be effective on January 1, of the following year, and may be obtained at www.dir.ca.gov/IWC or by mail from the Department of Industrial Relations.

—2—

theoretical and practical application of highly specialized information to computer systems analysis, programming, and software engineering.

(ii) The employee is in a computer-related occupation but has not attained the level of skill and expertise necessary to work independently and without close supervision.

(iii) The employee is engaged in the operation of computers or in the manufacture, repair, or maintenance of computer hardware and related equipment.

(iv) The employee is an engineer, drafter, machinist, or other professional whose work is highly dependent upon or facilitated by the use of computers and computer software programs and who is skilled in computer-aided design software, including CAD/CAM, but who is not in a computer systems analysis or programming occupation.

(v) The employee is a writer engaged in writing material, including box labels, product descriptions, documentation, promotional material, setup and installation instructions, and other similar written information, either for print or for on screen media or who writes or provides content material intended to be read by customers, subscribers, or visitors to computer-related media such as the World Wide Web or CD-ROMs.

(vi) The employee is engaged in any of the activities set forth in subparagraph (h) for the purpose of creating imagery for effects used in the motion picture, television, or theatrical industry.

(B) Except as provided in Sections 1, 2, 4, 10, and 20, the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district.

(C) The provisions of this order shall not apply to outside salespersons.

(D) Provisions of this order shall not apply to any individual who is the parent, spouse, child, or legally adopted child of the employer.

(E) The provisions of this order shall not apply to any individual participating in a national service program, such as Ameri-Corps, carried out using assistance provided under Section 12571 of Title 42 of the United States Code. (See Stats. 2000, ch. 365, amending California Labor Code Section 1171.)

## 2. DEFINITIONS

(A) An "alternative workweek schedule" means any regularly scheduled workweek requiring an employee to work more than eight (8) hours in a 24-hour period.

(B) "Commission" means the Industrial Welfare Commission of the State of California.

(C) "Division" means the Division of Labor Standards Enforcement of the State of California.

(D) "Employ" means to engage, suffer, or permit to work.

(E) "Employee" means any person employed by an employer.

(F) "Employer" means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.

(G) "Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

(H) "Manufacturing Industry" means any industry, business, or establishment operated for the purpose of preparing, producing, making, altering, repairing, finishing, processing, inspecting, handling, assembling, wrapping, bottling, or packaging goods, articles, or commodities, in whole or in part; EXCEPT when such activities are covered by Orders in the: Canning, Preserving, and Freezing Industry; Industries Handling Products After Harvest; Industries Preparing Agricultural Products for Market, on the Farm; or Motion Picture Industry.

(I) "Minor" means, for the purpose of this Order, any person under the age of 18 years.

(J) "Outside salesperson" means any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities.

(K) "Primarily" as used in Section 1, Applicability, means more than one-half the employee's work time.

(L) "Shift" means designated hours of work by an employee, with a designated beginning time and quitting time.

(M) "Split shift" means a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods.

(N) "Teaching" means, for the purpose of Section 1 of this order, the profession of teaching under a certificate from the Commission for Teacher Preparation and Licensing or teaching in an accredited college or university.

(O) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.

(P) "Workday" and "day" means any consecutive 24-hour period beginning at the same time each calendar day.

(Q) "Workweek" and "week" means any seven (7) consecutive days, starting with the same calendar day each week. "Workweek" is a fixed and regularly recurring period of 168 hours, seven (7) consecutive 24-hour periods.

## 3. HOURS AND DAYS OF WORK

(A) Daily Overtime-General Provisions

(1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 in a workweek unless the employee receives one and one half (1 1/2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:

(a) One and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours

up to and including the 12th hour in any workday and in the first eight (8) hours on the seventh (7th) consecutive day of work in a workweek; and

(b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

(c) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one fortieth (1/40) of the employee's weekly salary.

(2) The provisions of this section are not applicable to employees whose hours of service:

(a) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers; or

(b) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers.

(B) Alternative Workweeks

(1) No employer shall be deemed to have violated the daily overtime provisions by instituting, pursuant to the election procedures set forth in this wage order, a regularly scheduled alternative workweek schedule of not more than ten (10) hours per day within a 40 hour workweek without the payment of an overtime rate of compensation. All work performed in any workday beyond the schedule established by the agreement up to 12 hours a day or beyond 40 hours per week shall be paid at one and one-half (1½) times the employee's regular rate of pay. All work performed in excess of 12 hours per day and any work in excess of eight (8) hours on those days worked beyond the regularly scheduled number of workdays established by the alternative workweek agreement shall be paid at double the employee's regular rate of pay. Any alternative workweek agreement adopted pursuant to this section shall provide for not less than four (4) hours of work in any shift. Nothing in this section shall prohibit an employer, at the request of the employee, to substitute one day of work for another day of the same length in the shift provided by the alternative workweek agreement on an occasional basis to meet the personal needs of the employee without the payment of overtime. No hours paid at either one and one-half (1½) or double the regular rate of pay shall be included in determining when 40 hours have been worked for the purpose of computing overtime compensation.

(2) Any agreement adopted pursuant to this section shall provide not less than two (2) consecutive days off within a workweek.

(3) If an employer, whose employees have adopted an alternative workweek agreement permitted by this order requires an employee to work fewer hours than those that are regularly scheduled by the agreement, the employer shall pay the employee overtime compensation at a rate of one and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours, and double the employee's regular rate of pay for all hours worked in excess of 12 hours for the day the employee is required to work the reduced hours.

(4) An employer shall not reduce an employee's regular rate of hourly pay as a result of the adoption, repeal or nullification of an alternative workweek schedule.

(5) An employer shall explore any available reasonable alternative means of accommodating the religious belief or observance of an affected employee that conflicts with an adopted alternative workweek schedule, in the manner provided by subdivision (j) of Section 12940 of the Government Code.

(6) An employer shall make a reasonable effort to find a work schedule not to exceed eight (8) hours in a workday, in order to accommodate any affected employee who was eligible to vote in an election authorized by this section and who is unable to work the alternative workweek schedule established as the result of that election.

(7) An employer shall be permitted, but not required, to provide a work schedule not to exceed eight (8) hours in a workday to accommodate any employee who is hired after the date of the election and who is unable to work the alternative workweek schedule established by the election.

(8) Arrangements adopted in a secret ballot election held pursuant to this order prior to 1998, or under the rules in effect prior to 1998, and before the performance of the work, shall remain valid after July 1, 2000 provided that the results of the election are reported by the employer to the Division of Labor Statistics and Research by January 1, 2001, in accordance with the requirements of subsection (C) below (Election Procedures). If an employee was voluntarily working an alternative workweek schedule of not more than ten (10) hours a day as of July 1, 1000, that alternative workweek schedule was based on an individual agreement made after January 1, 1998 between the employee and employer, and the employee submitted, and the employer approved, a written request on or before May 30, 2000 to continue the agreement, the employee may continue to work that alternative workweek schedule without payment of an overtime rate of compensation for the hours provided in the agreement. The employee may revoke his or her voluntary authorization to continue such a schedule with 30 days written notice to the employer. New arrangements can only be entered into pursuant to the provisions of this section.

(C) Election Procedures

Election procedures for the adoption and repeal of alternative workweek schedules require the following:

(1) Each proposal for an alternative workweek schedule shall be in the form of a written agreement proposed by the employer. The proposed agreement must designate a regularly scheduled alternative workweek in which the specified number of work days and work hours are regularly recurring. The actual days worked within that alternative workweek schedule need not be specified. The employer may propose a single work schedule that would become the standard schedule for workers in the work unit, or a menu of work schedule options, from which each employee in the unit would be entitled to choose. If the employer proposes a menu of work schedule options, the employee may, with the approval of the employer, move from one menu option to another.

(2) In order to be valid, the proposed alternative workweek schedule must be adopted in a secret ballot election, before the performance of work, by at least a two-thirds (2/3) vote of the affected employees in the work unit. The election shall be held during regular working hours at the employees' work site. For purposes of this subsection, "affected employees in the work unit" may include all employees in a readily identifiable work unit, such as a division, a department, a job classification, a shift, a separate physical location, or a recognized subdivision of any such work unit. A work unit may consist of an individual employee as long as

—4—

(3) Prior to the secret ballot vote, any employer who proposed to institute an alternative workweek schedule shall have made a disclosure in writing to the affected employees, including the effects of the proposed arrangement on the employees' wages, hours, and benefits. Such a disclosure shall include meeting(s), duly noticed, held at least 14 days prior to voting, for the specific purpose of discussing the effects of the alternative workweek schedule. An employer shall provide that disclosure in a non-English language, as well as in English, if at least five (5) percent of the affected employees primarily speak that non-English language. The employer shall mail the written disclosure to employees who do not attend the meeting. Failure to comply with this paragraph shall make the election null and void.

(4) Any election to establish or repeal an alternative workweek schedule shall be held at the work site of the affected employees. The employer shall bear the costs of conducting any election held pursuant to this section. Upon a complaint by an affected employee, and after an investigation by the Labor Commissioner, the Labor Commissioner may require the employer to select a neutral third party to conduct the election.

(5) Any type of alternative workweek schedule that is authorized by the Labor Code may be repealed by the affected employees. Upon a petition of one-third (1/3) of the affected employees, a new secret ballot election shall be held and a two-thirds (2/3) vote of the affected employees shall be required to reverse the alternative workweek schedule. The election to repeal the alternative workweek schedule shall be held not more than 30 days after the petition is submitted to the employer, except that the election shall be held not less than 12 months after the date that the same group of employees voted in an election held to adopt or repeal an alternative workweek schedule. The election shall take place during regular working hours at the employees' work site. If the alternative workweek schedule is revoked, the employer shall comply within 60 days. Upon proper showing of undue hardship, the Division of Labor Standards Enforcement may grant an extension of time for compliance.

(6) Only secret ballots may be cast by affected employees in the work unit at any election held pursuant to this section. The results of any election conducted pursuant to this section shall be reported by the employer to the Division of Labor Statistics and Research within 30 days after the results are final, and the report of election results shall be a public document. The report shall include the final tally of the vote, the size of the unit, and the nature of the business of the employer.

(7) Employees affected by a change in the work hours resulting from the adoption of an alternative workweek schedule may not be required to work those new work hours for at least 30 days after the announcement of the final results of the election.

(8) Employers shall not intimidate or coerce employees to vote either in support of or in opposition to a proposed alternative workweek. No employees shall be discharged or discriminated against for expressing opinions concerning the alternative workweek election or for opposing or supporting its adoption or repeal. However, nothing in this section shall prohibit an employer from expressing his/her position concerning that alternative workweek to the affected employees. A violation of this paragraph shall be subject to Labor Code Section 98 et seq.

(D) One and one-half (1$^1$/$_2$) times a minor's regular rate of pay shall be paid for all work over 40 hours in any workweek except minors 16 or 17 years old who are not required by law to attend school and may therefore be employed for the same hours as an adult are subject to subsection (A) or (B) and (C) above.

**(VIOLATIONS OF CHILD LABOR LAWS** are subject to civil penalties of from $500 to $10,000 as well as to criminal penalties. Refer to California Labor Code sections 1285 to 1312 and 1390 to 1399 for additional restrictions on the employment of minors and for descriptions of criminal and civil penalties for violation of the child labor laws. Employers should ask school districts about any required work permits.)

(E) An employee may be employed on seven (7) workdays in one workweek when the total hours of employment during such workweek do not exceed 30 and the total hours of employment in any one workday thereof do not exceed six (6).

(F) The provisions of Labor Code Sections 551 and 552 regarding one (1) day's rest in seven (7) shall not be construed to prevent an accumulation of days of rest when the nature of the employment reasonably requires the employee to work seven (7) or more consecutive days; provided, however, that in each calendar month, the employee shall receive the equivalent of one (1) day's rest in seven (7).

(G) If a meal period occurs on a shift beginning or ending at or between the hours of 10 p.m. and 6 a.m., facilities shall be available for securing hot food and drink or for heating food or drink, and a suitable sheltered place shall be provided in which to consume such food or drink.

(H) Except as provided in subsections (D) and (F), this section shall not apply to any employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

(I) Notwithstanding subsection (H) above, where the employer and a labor organization representing employees of the employer have entered into a valid collective bargaining agreement pertaining to the hours of work of the employees, the requirement regarding the equivalent of one (1) day's rest in seven (7) (see section (F) above) shall apply, unless the agreement expressly provides otherwise.

(J) If an employer approves a written request of an employee to make up work time that is or would be lost as a result of a personal obligation of the employee, the hours of that makeup work time, if performed in the same workweek in which the work time was lost, may not be counted toward computing the total number of hours worked in a day for purposes of the overtime requirements, except for hours in excess of 11 hours of work in one (1) day or 40 hours of work in one (1) workweek. If an employee knows in advance that he or she will be requesting makeup time for a personal obligation that will recur at a fixed time over a succession of weeks, the employee may request to make up work time for up to four (4) weeks in advance; provided, however, that the make up work must be performed in the same week that the work time was lost. An employee shall provide a signed written request for each occasion that the employee makes a request to make up work time pursuant to this subsection. While an employer may inform an employee of this makeup time option, the employer is prohibited from encouraging or otherwise soliciting an employee to request the employer's approval to take personal time off and make up the work hours within the same workweek pursuant to this subsection.

# 4. MINIMUM WAGES

(A) Every employer shall pay to each employee wages not less than seven dollars and fifty cents ($7.50) per hour for all hours worked, effective January 1, 2007, and not less than eight dollars ($8.00) per hour for all hours worked, effective January 1, 2008, except:

LEARNERS: Employees during their first 160 hours of employment in occupations in which they have no previous similar or related experience, may be paid not less than 85 percent of the minimum wage rounded to the nearest nickel.

(B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

(C) When an employee works a split shift, one hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.

(D) The provisions of this section shall not apply to apprentices regularly indentured under the State Division of Apprenticeship Standards.

# 5. REPORTING TIME PAY

(A) Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

(B) If an employee is required to report for work a second time in any one workday and is furnished less than two hours of work on the second reporting, said employee shall be paid for two (2) hours at the employee's regular rate of pay, which shall not be less than the minimum wage.

(C) The foregoing reporting time pay provisions are not applicable when:

(1) Operations cannot commence or continue due to threats to employees or property; or when recommended by civil authorities; or

(2) Public utilities fail to supply electricity, water, or gas, or there is a failure in the public utilities, or sewer system; or

(3) The interruption of work is caused by an Act of God or other cause not within the employer's control.

(D) This section shall not apply to an employee on paid standby status who is called to perform assigned work at a time other than the employee's scheduled reporting time.

# 6. LICENSES FOR DISABLED WORKERS

(A) A license may be issued by the Division authorizing employment of a person whose earning capacity is impaired by physical disability or mental deficiency at less than the minimum wage. Such licenses shall be granted only upon joint application of employer and employee and employee's representative if any.

(B) A special license may be issued to a nonprofit organization such as a sheltered workshop or rehabilitation facility fixing special minimum rates to enable the employment of such persons without requiring individual licenses of such employees.

(C) All such licenses and special licenses shall be renewed on a yearly basis or more frequently at the discretion of the Division.

(See California Labor Code, Sections 1191 and 1191.5)

# 7. RECORDS

(A) Every employer shall keep accurate information with respect to each employee including the following:

(1) Full name, home address, occupation and social security number.

(2) Birth date, if under 18 years, and designation as a minor.

(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.

(4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee.

(5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.

(6) When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.

(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

(C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day, and year and shall be kept on file by the employer for at least three (3) years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

(D) Clocks shall be provided in all major work areas or within reasonable distance thereto insofar as practicable.

# 8. CASH SHORTAGE AND BREAKAGE

No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee.

# 9. UNIFORMS AND EQUIPMENT

(A) When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term "uniform" includes wearing apparel and accessories of distinctive design or color.

 **NOTE:** This section shall not apply to protective apparel regulated by the Occupational Safety and Health Standards Board.

(B) When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft. This subsection (B) shall not apply to apprentices regularly indentured under the State Division of Apprenticeship Standards.

**NOTE:** This section shall not apply to protective equipment and safety devices on tools regulated by the Occupational Safety and Health Standards Board.

(C) A reasonable deposit may be required as security for the return of the items furnished by the employer under provisions of subsection (A) and (B) of this section upon issuance of a receipt to the employee for such deposit. Such deposits shall be made pursuant to Section 400 and following of the Labor Code or an employer with the prior written authorization of the employee may deduct from the employee's last check the cost of an item furnished pursuant to subsections (A) and (B) above in the event said item is not returned. No deduction shall be made at any time for normal wear and tear. The employee upon completion of the job shall return all items furnished by the employer.

# 10. MEALS AND LODGING

(A) "Meal" means an adequate, well-balanced serving of a variety of wholesome, nutritious foods.

(B) "Lodging" means living accommodations available to the employee for full-time occupancy, which are adequate, decent, and sanitary according to usual and customary standards. Employees shall not be required to share a bed.

(C) Meals or lodging may not be credited against the minimum wage without a voluntary written agreement between the employer and the employee. When credit for meals or lodging is used to meet part of the employer's minimum wage obligation, the amounts so credited may not be more than the following:

| | Effective January 1, 2007 | Effective January 1, 2008 |
|---|---|---|
| **Lodging:** | | |
| Room occupied alone .................................................... | $35.27 per week | $37.63  per week |
| Room shared ................................................................ | $29.11 per week | $31.06  per week |
| Apartment—two-thirds (2/3) of the ordinary rental value, and in no event more than  ............................................ | $423.51 per month | $451.89 per month |
| Where a couple are both employed by the employer, two-thirds (2/3) of the ordinary rental value, and in no event more than  ........................................................ | $626.49 per month | $668.46 per month |
| **Meals:** | | |
| Breakfast ......................................................................... | $2.72 | $2.90 |
| Lunch.............................................................................. | $3.72 | $3.97 |
| Dinner............................................................................. | $5.00 | $5.34 |

(D) Meals evaluated, as part of the minimum wage must be bona fide meals consistent with the employee's work shift. Deductions shall not be made for meals not received or lodging not used.

(E) If, as a condition of employment, the employee must live at the place of employment or occupy quarters owned or under the control of the employer, then the employer may not charge rent in excess of the values listed herein.

# 11. MEAL PERIODS

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. In the case of employees covered by a valid collective bargaining agreement, the parties to the collective bargaining agreement may agree to a meal period that commences after no more than six (6) hours of work.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C) Unless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

(E) In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated.

## 12. REST PERIODS

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.

However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half ($3^1/_2$) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

## 13. CHANGE ROOMS AND RESTING FACILITIES

(A) Employers shall provide suitable lockers, closets, or equivalent for the safekeeping of employees' outer clothing during working hours, and when required, for their work clothing during non-working hours. When the occupation requires a change of clothing, change rooms or equivalent space shall be provided in order that employees may change their clothing in reasonable privacy and comfort. These rooms or spaces may be adjacent to but shall be separate from toilet rooms and shall be kept clean.

**NOTE:** This section shall not apply to change rooms and storage facilities regulated by the Occupational Safety and Health Standards Board.

(B) Suitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours.

## 14. SEATS

(A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.

(B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

## 15. TEMPERATURE

(A) The temperature maintained in each work area shall provide reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed.

(B) If excessive heat or humidity is created by the work process, the employer shall take all feasible means to reduce such excessive heat or humidity to a degree providing reasonable comfort. Where the nature of the employment requires a temperature of less than 60° F., a heated room shall be provided to which employees may retire for warmth, and such room shall be maintained at not less than 68°.

(C) A temperature of not less than 68° shall be maintained in the toilet rooms, resting rooms, and change rooms during hours of use.

(D) Federal and State energy guidelines shall prevail over any conflicting provision of this section.

## 16. ELEVATORS

Adequate elevator, escalator or similar service consistent with industry-wide standards for the nature of the process and the work performed shall be provided when employees are employed four floors or more above or below ground level.

## 17. EXEMPTIONS

If, in the opinion of the Division after due investigation, it is found that the enforcement of any provision contained in Section 7, Records; Section 12, Rest Periods; Section 13, Change Rooms and Resting Facilities; Section 14, Seats; Section 15, Temperature; or Section 16, Elevators, would not materially affect the welfare or comfort of employees and would work an undue hardship on the employer, exemption may be made at the discretion of the Division. Such exemptions shall be in writing to be effective and may be revoked after reasonable notice is given in writing. Application for exemption shall be made by the employer or by the employee and/or the employee's representative to the Division in writing. A copy of the application shall be posted at the place of employment at the time the application is filed with the Division.

## 18. FILING REPORTS

(See California Labor Code, Section 1174(a))

—8—

**19. INSPECTION**

(See California Labor Code, Section 1174)

## 20. PENALTIES

(See California Labor Code, Section 1199)

(A) In addition to any other civil penalties provided by law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of this order, shall be subject to the civil penalty of:

(1) Initial Violation — $50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages.

(2) Subsequent Violations — $100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages.

(3) The affected employee shall receive payment of all wages recovered.

(B) The Labor Commissioner may also issue citations pursuant to California Labor Code Section 1197.1 for non-payment of wages for overtime work in violation of this order.

## 21. SEPARABILITY

If the application of any provision of this order, or any section, subsection, subdivision, sentence, clause, phrase, word, or portion of this order should be held invalid or unconstitutional or unauthorized or prohibited by statute, the remaining provisions thereof shall not be affected thereby, but shall continue to be given full force and effect as if the part so held invalid or unconstitutional had not been included herein.

## 22. POSTING OF ORDER

Every employer shall keep a copy of this order posted in an area frequented by employees where it may be easily read during the workday. Where the location of work or other conditions make this impractical, every employer shall keep a copy of this order and make it available to every employee upon request.

**QUESTIONS ABOUT ENFORCEMENT** of the Industrial Welfare Commission orders and reports of violations should be directed to the Division of Labor Standards Enforcement. A listing of the DLSE offices is on the back of this wage order. Look in the white pages of your telephone directory under CALIFORNIA, State of, Industrial Relations for the address and telephone number of the office nearest you. The Division has offices in the following cities: Bakersfield, El Centro, Eureka, Fresno, Long Beach, Los Angeles, Oakland, Redding, Sacramento, Salinas, San Bernardino, San Diego, San Francisco, San Jose, Santa Ana, Santa Barbara, Santa Rosa, Stockton, Van Nuys.

---

**SUMMARIES IN OTHER LANGUAGES**

The Department of Industrial Relations will make summaries of wage and hour requirements in this Order available in Spanish, Chinese and certain other languages when it is feasible to do so. Mail your request for such summaries to the Department at: P.O. Box 420603, San Francisco, CA 94142-0603.

**RESUMEN EN OTROS IDIOMAS**

El Departamento de Relaciones Industriales confeccionara un resumen sobre los requisitos de salario y horario de esta Disposicion en español, chino y algunos otros idiomas cuando sea posible hacerlo. Envie por correo su pedido por dichos resumenes al Departamento a: P.O. Box 420603, San Francisco, CA 94142-0603.

其它文字的摘錄

工業關係處將摘錄本規則中有關工資和工時的規定，用西班牙文、中文印就。其它文字如有需要，也將同樣辦理。如果您有需要，可以來信索閱，請寄到：   **Department of Industrial Relations**
**P.O. Box 420603**
**San Francisco, CA 94142-0603**

All complaints are confidential. For further information during normal working hours, please contact the nearest of the following enforcement offices:

**Division of Labor Standards Enforcement (DLSE)**
For labor law information and assistance for your area call the pre-recorded information lines in **bold** below. If the information you need is not provided in the pre-recorded message, please call the general office number listed.

**BAKERSFIELD**
Division of Labor Standards Enforcement
5555 California Ave., Suite 200
Bakersfield, CA 93309
661-395-2710
**661-859-2462**

**EL CENTRO**
Division of Labor Standards Enforcement
1550 W. Main St.
El Centro, CA 92643
760-353-0607
**760-353-2544**

**EUREKA**
Division of Labor Standards Enforcement
619 Second Street, Room 109
Eureka, CA 95501
707-445-6613
**707-441-4604**

**FRESNO**
Division of Labor Standards Enforcement
770 E. Shaw Ave., Suite 315
Fresno, CA 93710
559-244-5340
**559-248-8398**

**LONG BEACH**
Division of Labor Standards Enforcement
300 Oceangate, 3rd Floor
Long Beach, CA 90802
562-590-5048
**562-491-0160**

**LOS ANGELES**
Division of Labor Standards Enforcement
320 W. Fourth St, Suite 450
Los Angeles, CA 90013
213-620-6330
**213-576-6227**

**OAKLAND**
Division of Labor Standards Enforcement
1515 Clay Street, Room 801
Oakland, CA 94612
510-622-3273
**510-622-2660**

**REDDING**
Division of Labor Standards Enforcement
2115 Civic Center Drive, Room 17
Redding, CA 96001
530-225-2655
**530-229-0565**

**SACRAMENTO**
Division of Labor Standards Enforcement
2031 Howe Ave, Suite 100
Sacramento, CA 95825
916-263-1811
**916-263-5378**

**SALINAS**
Division of Labor Standards Enforcement
1870 N. Main Street, Suite 150
Salinas, CA 93906
831-443-3041
**831-443-3029**

**SAN BERNARDINO**
Division of Labor Standards Enforcement
464 West 4th Street, Room 348
San Bernardino, CA 92401
909-383-4334
**909-889-8120**

**SAN DIEGO**
Division of Labor Standards Enforcement
7575 Metropolitan, Room 210
San Diego, CA 92108
619-220-5451
**619-682-7221**

**SAN FRANCISCO**
Division of Labor Standards Enforcement
455 Golden Gate Ave. 10th Floor
San Francisco, CA 94102
415-703-5300
**415-703-5444**

**SAN FRANCISCO – HEADQUARTERS**
Division of Labor Standards Enforcement
455 Golden Gate Ave. 9th Floor
San Francisco, CA 94102
415-703-4810

**SAN JOSE**
Division of Labor Standards Enforcement
100 Paseo De San Antonio, Room 120
San Jose, CA 95113
408-277-1266
**408-277-3711**

**SANTA ANA**
Division of Labor Standards Enforcement
28 Civic Center Plaza, Room 625
Santa Ana, CA 92701
714-558-4910
**714-558-4574**

**SANTA BARBARA**
Division of Labor Standards Enforcement
411 E. Canon Perdido, Room 3
Santa Barbara, CA 93101
805-568-1222
**805-965-7214**

**SANTA ROSA**
Division of Labor Standards Enforcement
50 "D" Street, Suite 360
Santa Rosa, CA 95404
707-576-2362
**707-576-2459**

**STOCKTON**
Division of Labor Standards Enforcement
31 E. Channel Street, Room 317
Stockton, CA 95202
209-948-7771
**209-941-1906**

**VAN NUYS**
Division of Labor Standards Enforcement
6150 Van Nuys Boulevard, Room 206
Van Nuys, CA 91401
818-901-5315
**818-908-4556**

EMPLOYERS:  Do not send copies of your alternative workweek election ballots or election procedures.

Only the results of the alternative workweek election shall be mailed to:

Department of Industrial Relations
Division of Labor Statistics and Research
P.O. Box 420603
San Francisco, CA 94142-0603
(415) 703-4780

Prevailing Wage Hotline (415) 703-4774

# EXHIBIT 5

STATE OF CALIFORNIA                                                              GRAY DAVIS, Governor

DEPARTMENT OF INDUSTRIAL RELATIONS
**DIVISION OF LABOR STANDARDS ENFORCEMENT**
*LEGAL SECTION*
455 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102
(415) 703-4863

MILES E. LOCKER, *Attorney for the Labor Commissioner*


September 4, 2002


Robert T. Cherry, Managing Director
Valley Employers Association
1300 East Shaw Avenue, Suite 125
Fresno, CA 93710-7903


     Re:  On-Duty Meal Periods


Dear Mr. Cherry:


     This in response to your letter to the State Labor Commissioner,
Arthur Lujan, dated April 4, 2002, in which you presented the following
question, seeking clarification of the requirements for a permissible "on-
duty meal period":

     "The problem arises in the fast food industry where during many of the
late night shifts the only person in charge of the restaurant is an hourly
paid Shift Manager.  Because this person must be available at all times to
answer questions or solve problems it is not always possible for the
employee to get an uninterrupted meal period of one-half hour.  The
employees do get to eat and are paid for all time including the time they
are eating their meal.  Under these circumstances, and with the agreement
of the employee, can then employer have an On-Duty Meal Period arrangement
with the employee?"

     Industrial Welfare Commission ("IWC") Order 5-2001, which governs
wages, hours and working conditions in the restaurant and fast food
industry, mirrors Labor Code §512 in providing: "No employer shall employ
any person for a work period of more than five hours without a meal period
of not less than 30 minutes, except that when a work period of not more
than six hours will complete the day's work the meal period may be waived
by mutual consent of the employer and the employee."  Subdivision 11(A) of
IWC Order 5-2001 further provides: "Unless the employee is relieved of all
duty during a 30 minute meal period, the meal period shall be considered an
'on-duty' meal period and counted as time worked.  **An 'on-duty' meal period
shall be permitted only when the nature of the work prevents an employee
from being relieved of all duty and when by written agreement between the**

2002.09.04

Robert T. Cherry
September 4, 2002
Page 2

**parties an on-the-job paid meal period is agreed to.** The written agreement shall state that the employee may, in writing, revoke the agreement at any time."

Thus, as a general rule the required meal period must be an off-duty meal period, during which time the employee: 1) is not required to work, 2) is not suffered or permitted to work, 3) is not subject to the control of the employer so as to be free to leave the employer's premises and attend to his/her own personal affairs, 4) for a minimum of thirty minutes. If any of these conditions are not present, the time, if any, during which the employee is permitted to eat his or her meal is considered on-duty time, which is treated as "hours worked" for which the employee must be paid at his or her regular rate of pay.

There are two types of on-duty meal periods: those that are permitted under the wage orders, and those that are not. In order for an on-duty meal period to be permitted under the wage orders, all three of the following requirements must be met:
1) the nature of the work must prevent the employee from being relieved of all duty during the meal period, 2) the employee and employer must have previously entered into a signed agreement authorizing an on-duty meal period, and 3) the signed agreement must expressly state that the employee may, in writing, revoke the agreement at any time. (If employees are represented by a collective bargaining representative, that representative is empowered to enter into or revoke such agreement on behalf of the represented employees. See *Porter v. Quillin* (1981) 123 Cal.App.3d 869.)

In determining whether "the nature of the work" prevents an employee from being relieved of all duty, the Division of Labor Standards Enforcement starts with the premise that the general requirement for an off-duty meal period is remedial in nature, and any exceptions to that general requirement must be narrowly construed, so as to avoid frustrating the remedial purpose of the regulation. The Division has always followed an enforcement policy that this determination must be made on the basis of a multi-factor objective test. The factors that should be considered include the type of work, the availability of other employees to provide relief to an employee during a meal period, the potential consequences to the employer if the employee is relieved of all duty, the ability of the employer to anticipate and mitigate these consequences such as by scheduling the work in a manner that would allow the employee to take an off-duty meal break, and whether the work product or process will be destroyed or damaged by relieving the employee of all duty. The Division will conclude that an off-duty meal period must be provided unless these factors, taken as a whole, decisively point to the conclusion that the nature of the work makes it virtually impossible for the employer to provide the employee with an off-duty meal period. Finally, the burden

2002.09.04

Robert T. Cherry
September 4, 2002
Page 3

rests on the employer for establishing the facts that would justify an on-duty meal period.

Applying this multi-factor test to the facts that you have provided, we note that despite your assertion that the hourly paid shift manager "must be available at all times to answer questions or solve problems," we cannot fathom why the other employees of the restaurant could not function in the absence of the shift manager for thirty minutes, so as to allow the shift manager to take an off-duty meal period. There is nothing that would appear so inherently complex about the running of a fast food outlet that would make the shift manager's presence utterly indispensable so as to preclude this manager from getting his or her well deserved, and legally required, off-duty meal break. You have failed to present any facts that would establish why no other employee could be trained to answer or resolve the "questions" or "problems" that may arise, or why any "questions" or "problems" that could only be answered or resolved by the shift manager could not wait for his or her return from an off-duty meal break. Finally, you do not suggest that the fast food being prepared and served would be destroyed or damaged as a result of relieving the shift manager of all duty for the length of his or her meal period. As such, we would conclude that the failure to provide this employee with an off-duty meal period violates the meal period requirements of IWC Order 5-2001, and that an on-duty meal period is not permitted.

Subdivision 11(B) of Order 5-2001 states: "If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." This extra hour of compensation is required for each day that an employee who is entitled to an off-duty meal period is employed without the required off-duty meal period.

Thank you for your interest in California wage and hour law. Please do not hesitate to contact us with any further questions.

Sincerely,

Miles E. Locker
Attorney for the Labor Commissioner

cc: Chuck Cake, DIR Director
    Arthur Lujan, Labor Commissioner

2002.09.04

Robert T. Cherry
September 4, 2002
Page 4


Anne Stevason, Chief Counsel
Tom Grogan, Chief Deputy
Greg Rupp, Assistant Chief
Nance Steffen, Assistant Chief
Bridget Bane, IWC Executive Officer

2002.09.04

# EXHIBIT 6

Chavez & Gertler
42 Miller Avenue
Mill Valley, CA  94941

Invoice submitted to:
Mitchell v. Mirant Ca. LLP

January 11, 2008

Invoice #10063

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 12/14/2007 DG | confer w/ D. Siegel, J. Gertler; review motion to remand draft; review legal research re: opposition | | 1.80 385.00/hr | 693.00 |
| 1/3/2008 DG | research fee request timing and standard; draft fee request | | 1.90 385.00/hr | 731.50 |
| 1/7/2008 DG | continue research and revise fee request for motion to remand; draft supporting declarations | | 1.60 385.00/hr | 616.00 |
| 1/8/2008 DG | review/revise motion to remand; draft proposed order | | 3.50 385.00/hr | 1,347.50 |
| 1/9/2008 DG | proofread and revise motion to remand | | 3.00 385.00/hr | 1,155.00 |
| 1/10/2008 DG | review emails; revise citations in motion; proof and revise supporting declarations; review local e-filing rules | | 2.80 385.00/hr | 1,078.00 |
| | For professional services rendered | | 14.60 | $5,621.00 |
| | Balance due | | | $5,621.00 |

Attorney Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Dan Gildor | 14.60 | 385.00 | $5,621.00 |