1    MARGARET HART EDWARDS, Bar No. 65699
     PHILIP L. ROSS, Bar No. 90042
2    KIMBERLY L. OWENS, Bar No. 233185
     LITTLER MENDELSON
3    A Professional Corporation
     650 California Street
4    20th Floor
     San Francisco, CA  94108.2693
5    Telephone:    415.433.1940
     Facsimile:    415.399.8490
6    E-Mail:        mhedwards@littler.com;
                    plross@littler.com;
7                   kowens@littler.com

8    Attorneys for Defendant
     MIRANT CALIFORNIA, LLC
9

10                   UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14   JERRY MITCHELL, EDDIE WILLIAMS,        Case No. C 07-05847 PJH [ECF]
     JR., EDWARD S. MEDINA, and DAVID
15   WALTERS, individually and on behalf of  **DEFENDANT MIRANT CALIFORNIA,**
     all others similarly situated,          **LLC'S OPPOSITION TO PLAINTIFFS'**
16                                           **MOTION TO REMAND, REQUEST FOR**
                    Plaintiffs,              **FEES, AND MOTION TO DISMISS**
17                                           **COUNTERCLAIM**
            v.
18                                           Date:      February 20, 2008
     MIRANT CALIFORNIA, LLC, a              Time:      9:00 a.m.
19   Delaware Corp., and Does 1 to 50,      Place:     Courtroom 3
                                             Judge:     Hon. Phyllis J. Hamilton
20                  Defendants.
                                             Complaint Filed:  October 17, 2007
21                                           Trial Date:      None

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF.'S OPP.TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS   CASE NO. C 07-05847 PJH

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................................................. 1

II. RELEVANT FACTS ........................................................................................... 1

    A. Defendant Mirant California, LLC ................................................................ 1

    B. The Collective Bargaining Agreement Between Mirant And IBEW Local 1245................................................................................................................... 2

        1. The Applicable Bargaining Unit ............................................................. 2

        2. Normal Plant Operations and Periodic Shift Work............................... 2

    C. All Power Plant Technicians Receive Duty Free Meal And Rest Periods In Compliance With California Law .................................................................... 3

    D. There Is Extensive Language In The CBA Regarding Meal Periods And Rest Breaks .......................................................................................................... 3

        1. Unpaid Meal Periods For Power Plant Technicians With Eight (8) Hour Shifts Under Section 16.2 Of The CBA ................................................. 3

        2. "Time Worked" In CBA Section 16.5 .................................................... 3

        3. Whether CBA Section 16.5 Requires Employees To Remain In Any Particular Location During Their Meal Periods.................................... 4

        4. On-Duty Meal Period Agreement .......................................................... 4

        5. Paid Rest Breaks ................................................................................... 5

        6. The Provisions Of The CBA That Govern Overtime Meal Breaks ................. 5

        7. An Agreement Also Exists Between The Union And Mirant That Waives The Second Meal Break For 12 Hour Shift Employees Working More Than Ten Hours, But Not More Than Twelve Hours ............ 6

    E. The Union Instigated This Lawsuit When Mirant Refused Its Settlement Demand ........................................................................................................ 6

III. LEGAL ARGUMENT........................................................................................ 6

    A. Because Resolution Of Plaintiffs' Claims Requires Interpretation Of Disputed Terms Of The CBA, The Complete Preemption Doctrine Of Section 301 Applies ....................................................................................................... 7

        1. Plaintiffs' Meal Period Claims (First, Fourth & Fifth Causes Of Action) Will Require Interpretation Of Numerous Provisions Of The CBA ....................................................................................................... 8

            a. CBA Section 16.5 Must Be Interpreted ............................... 9

            b. The Parties Dispute Whether the CBA Contains An On-Duty Meal Period Agreement ................................................... 10

            c. The Court Must Determine The Existence, Scope And Validity Of The Agreements Between The Employer And The Union Regarding The Second Meal Period .................................. 12

        2. Plaintiffs' Rest Period Claims (Second, Fourth And Fifth Causes Of Action) Will Also Require Interpretation Of Disputed Terms Of The CBA ..................................................................................................... 12

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

3. Plaintiffs' Claim For Waiting Time Penalties Under California Labor Code Section 203 (Third Cause Of Action) Is Dependent On The Meaning Of All Of The Disputed Terms Of The CBA ............................... 13

B. As With Any Other Claim, "Nonnegotiable" State Right Claims Are Preempted By Section 301 If Resolution of the Claims Requires Interpreting a Collective Bargaining Agreement.................................................................. 13

C. Plaintiffs Are Not Entitled To Attorneys' Fees .................................... 14

D. Plaintiffs' Motion To Strike Or Dismiss The Counterclaim Must Also Be Denied .............................................................................................. 15

1. The Counterclaim Is Not Redundant To Plaintiffs' Request For Declaratory Relief................................................................ 16

2. This Court Has Supplemental Of Defendant's Counterclaim........................ 17

3. This Court Also Has Original Jurisdiction of Defendant's Counterclaim Under Section 301 .................................................. 18

4. Defendant Has Alleged An Actual Controversy, And Thus The Counterclaim Properly States A Cause Of Action Under The Declaratory Judgment Act ........................................................ 19

IV. CONCLUSION.............................................................................................. 20

TABLE OF AUTHORITIES

PAGE

## CASES

*Allied Oil Workers Union v. Ethyl Corp.,*
   301 F.2d 104 (5th Cir. 1962) .......................................................................... 19

*Allied Oil Workers Union v. Ethyl Corp.,*
   341 F.2d 47 (5th Cir. 1965) ............................................................................ 19

*Allis-Chalmers Corp. v. Lueck,*
   471 U.S. 202, 220 (1985) ............................................................................... 18

*Assoc. Gen. Contractors v. Ill. Conference of Teamsters,*
   486 F.2d 972 (7th Cir. 1973) .......................................................................... 19

*Associated Builders & Contractors, Inc. v. Local 302, IBEW,*
   109 F.3d 1353 (9th Cir. 1997) .......................................................................... 7

*Atchley v. Heritage Cable Vision Assoc.,*
   101 F.3d 495 (7th Cir. 1996) .......................................................................... 12

*Balcorta v. Twentieth Century-Fox Film Corp.,*
   208 F.3d 1102 (9th Cir. 2000) .................................................................... 7, 13

*Black-Clawson Co. Paper Machine Div. v. Int'l Assoc. of Machinists,*
   313 F.2d 179 (2d Cir. 1962) ........................................................................... 19

*California Trucking Assoc. v. Corcoran,*
   74 F.R.D. 534 (N.D. Cal. 1977) ....................................................................... 9

*Caterpillar Inc. v. Williams,*
   482 U.S. 386 (1987) ......................................................................................... 7

*Comm. Workers of Am. v. Pac. N.W. Bell Tel. Co.,*
   337 F.2d 455 (9th Cir. 1964) ............................................................................ 9

*Cooper Dev. Co. v. Employers Ins. of Wasau,*
   765 F.Supp. 1429 (N.D. Cal. 1991) ............................................................... 19

*Council of Western Electric Technical Employees v. Western Electric Co.,*
   238 F.2d 892 (2d Cir. 1956) ........................................................................... 19

*Cramer v. Consol. Freightways, Inc.,*
   255 F.3d 683 (9th Cir. 2001) ..................................................................... 10, 11

*DLSE v. Williams,*
   121 Cal. App. 3d 302 (1981) .......................................................................... 10

*Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.,*
   126 F.2d 172 (6th Cir. 1942) .......................................................................... 16

*Eureka Fed. Sav. & Loan Assoc. v. American Cas. Co.,*
   873 F.2d 229 (9th Cir. 1989) .......................................................................... 17

*Firestone v. Southern California Gas Co.,*
   219 F.3d 1063 (9th Cir. 2000) ........................................................................ 10

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,*
   463 U.S. 1 (1983) ...................................................................................... 7, 18

*Huffman v. Saul Holdings, Ltd. Partnership,*
   262 F.3d 1128 (10th Cir. 2001) ...................................................................... 15

i.

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Int'l Harvester Co. v. Deere & Co.,*
  623 F.2d 1207 (7th Cir. 1980) ............................................................... 19

*Int'l Woodworkers v. McCloud Lumber Co.,*
  119 F. Supp. 475 (N.D. Cal. 1953) ........................................................ 16

*Iron Mountain Security Storage Corp. v. Am. Specialty Foods, Inc.,*
  457 F. Supp. 1158 (E.D. Pa. 1978) ........................................................ 17

*John S. Griffith Constr. Co. v. United Brotherhood of Carpenters & Joiners,*
  785 F.2d 706 (9th Cir. 1986) ............................................................... 19

*Jungersen v. Miller,*
  125 F. Supp. 846 (N.D. Ohio 1954) ....................................................... 17

*Levy v. Verizon Information Services, Inc.,*
  498 F. Supp. 2d 586 (E.D.N.Y. 2007) .................................................... 10

*Lingle v. Norge Division of Magic Chef, Inc.,*
  486 U.S. 399 (1988) ........................................................................... 13

*Martin v. Franklin Capital Corp.,*
  546 U.S. 132 (2005) ........................................................................... 14

*Porter v. Quillin,*
  123 Cal. App. 3d 869 (1981) ................................................................ 10

*Syufy Enterprises v. N. Cal. State Assoc. of IATSE Locals,*
  631 F.2d 124 (9th Cir. 1980) ................................................................. 9

*Topps Chewing Gum, Inc. v. Fleer Corp.,*
  799 F.2d 851 (2d Cir. 1986) ................................................................ 19

*United Wats, Inc. v. Cincinnati Ins. Co.,*
  971 F. Supp. 1375 (D. Kansas 1997) ..................................................... 17

*Valles v. Ivy Hill Corp.,*
  410 F.3d 1071 (9th Cir. 2005) ......................................................... 13, 14

*Young v. Anthony's Fish Grotto's, Inc.,*
  830 F.2d 993 (9th Cir. 1987) ................................................................. 7

**STATUTES**

28 U.S.C. § 1367(a) ............................................................................ 18

28 U.S.C. § 2201 ................................................................................ 19

Fed.R.Civ.Proc. 13(a) ..................................................................... 15, 17

Fed.R.Civ.Proc. 7 .............................................................................. 17

Lab. Code § 226.7 .............................................................................. 12

**OTHER AUTHORITIES**

12-57 *Moore's Federal Practice-Civil* § 57.06 ........................................ 18

3-12 *Moore's Federal Practice-Civil* § 13.41 ......................................... 17

## I.    INTRODUCTION

Contrary to Plaintiffs' assertions in their Motion to Remand, resolution of Plaintiffs' claims depends entirely upon interpretation of the collective bargaining agreement between Mirant and IBEW Local 1245. Therefore, under well-settled Supreme Court law, Plaintiffs' state law claims are indeed preempted by, and arise under, Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). In fact, each and every one of Plaintiffs' claims in this case rests on the incorrect interpretation of specific language in the collective bargaining agreement rather than the actual practices of the parties. To support their meal and rest period claims, Plaintiffs allege that certain language in the collective bargaining agreement prohibits them from taking off duty breaks in violation of California law. In other words, Plaintiffs have accused Mirant and their Union of having negotiated an unlawful contract.[1] Yet, the collective bargaining agreement language that Plaintiffs reference is equally subject to a lawful interpretation, and it is well-established that where a contract is subject to more than one interpretation, a court should give it the meaning that is lawful. Interpretation of the collective bargaining agreement also requires an examination of past practice and extrinsic evidence. The Supreme Court has held that Section 301 creates a federal common law for interpreting and enforcing collective bargaining agreements, and it is this law that must be applied to the interpretation disputes here. Thus, as shown in more detail below, this Court does have jurisdiction over this case under Section 301, and Plaintiffs' Motion to Remand must be denied.

Further, as this Court properly has jurisdiction over this matter under Section 301, the Court has supplemental jurisdiction over Defendant's Counterclaim. All requirements of the Declaratory Judgment Act are met. Therefore, Plaintiffs' Motion to Strike or Dismiss the Counterclaim must also be denied.

---

[1] While Plaintiffs contradict their Complaint by claiming in their Motion to Remand that they are not challenging the lawfulness of the CBA, they are plainly doing just that, as the Union acknowledges. (IBEW Local 1245 Motion to Dismiss, pp. 21, 22 (recognizing that Plaintiffs claim "that implementing this CBA violates state law regarding meal and rest breaks" and that Plaintiffs argue that the CBA "authorizes Mirant to violate state meal and rest break requirements."))

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

1.

**DEF.'S OPP.TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH**

## II.    RELEVANT FACTS

### A.    Defendant Mirant California, LLC.

Defendant Mirant California, LLC ("Mirant") owns and operates Power Plants in San Francisco (the "Potrero Power Plant"), Antioch (the "Contra Costa Power Plant") and Pittsburg, California (the "Pittsburg Power Plant") (collectively the "Power Plants"). Mirant purchased the Power Plants from PG&E in 1999. (Declaration of Lisa Battles ("Battles Decl."), ¶ 2.)

### B.    The Collective Bargaining Agreement Between Mirant and IBEW Local 1245.

The Power Plant Technicians employed by Mirant are members of a bargaining unit represented by IBEW Local 1245 (the "Union"). Since 2000, Mirant and the Union have been parties to a series of Collective Bargaining Agreements. The current Collective Bargaining Agreement (the "CBA") has been in effect since November 1, 2005. The practices that the parties intended to be set forth in the CBA have been the practices since before Mirant purchased the Power Plants. (Battles Decl., ¶¶ 6, 7.)

#### 1.    The Applicable Bargaining Unit.

The CBA bargaining unit consists of "Power Plant Technicians employed at the Company's Contra Costa, Pittsburg and Potrero Power Plants." (Battles Decl., ¶ 4 & Exh. 1, CBA § 4.1.)

#### 2.    Normal Plant Operations and Periodic Shift Work.

The usual work schedule for employees in the bargaining unit is "eight (8) hours per day, Monday through Friday." (Battles Decl., Exh. 1, CBA § 16.2.) However, the CBA also provides different terms for employees who are "shift employees." "Shift employees" are individuals who work "a job that is staffed with a rotating twenty-four (24) hour per day shift, on a seven (7) day a week basis, including holidays." (Battles Decl., Exh. 1, CBA § 16.5.)

Mirant produces and sells electricity only when necessary meet electricity demands. The Contra Costa and Pittsburg Plants produce electricity only about 30 to 60 days per year. The remainder of the year, these Power Plants are fully staffed, but do not produce electricity. (Battles Decl., ¶ 3.)

Mirant's interpretation of the term "shift employees" is that it includes only those Power Plant Technicians who regularly work twelve hour shifts. The term "shift employee" does not

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1    include Power Plant Technicians whose regular work schedule is only 8 hours per day, regardless of

2    whether those individuals work overtime or how much overtime they work. (Battles Decl., ¶ 8.)

**C.    All Power Plant Technicians Receive Duty Free Meal and Rest Periods in Compliance with California Law.**

All Power Plant Technicians employed by Mirant receive meal breaks lasting at least 30 minutes every day.  The employees are relieved of all duties during the meal breaks and are free to leave the premises. (Battles Decl., ¶ 9.)

A few Power Plant Technicians are responsible for manning the control room ("control room operators").  When the Power Plants are producing electricity, the control room operators cannot leave the control room unattended, but are expected to try to find another employee to relieve them during their break times. (Battles Decl., ¶ 12.)

Employees also receive at least two fifteen minute breaks per day.  Employees can take these breaks anywhere in the Plant.  During their breaks, they are relieved of all duties.  Employees are also permitted to take additional shorter breaks at any time. (Battles Decl., ¶ 9, 18.)

**D.    There Is Extensive Language in the CBA Regarding Meal Periods and Rest Breaks.**

**1.    Unpaid Meal Periods for Power Plant Technicians with Eight (8) Hour Shifts Under Section 16.2 of the CBA.**

Power Plant Technicians with 8 hour shifts have regular working hours of "40 hours per week, eight (8) hours per day, not including a meal period of one-half (1/2) hour." (Battles Decl., Exh. 1, CBA § 16.2.)  Unless employed as a "Shift Employee," meal periods are not included in "work time." (Battles Decl., Exh. 1, CBA §16.3.)  Mirant interprets this provision to mean that the 30 minute duty free meal periods of these employees are unpaid. (Battles Decl., ¶ 9.)

**2.    "Time Worked" in CBA Section 16.5.**

CBA Section 16.5 sets forth the terms of the parties' agreement with respect to meal periods for "shift employees."  It provides: "Time to consume meals for shift employee shall be considered as *time worked*." (Battles Decl., Exh. 1.)  Plaintiffs interpret this provision as constituting "evidence of the fact that Mirant denied Plaintiffs the mandatory off-duty meal and rest periods . . . ." (Motion to Remand, p. 4.)  Plaintiffs assert that the fact that the CBA "states unequivocally that the meal

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
850 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

3.

1    periods of 'shift employees' are 'considered as time worked'" is "consistent with Plaintiff's claims

2    that the Class Members are not getting required 'off duty' meal periods." (Motion to Remand, p. 7.)

3         In contrast, Mirant has never interpreted this language to mean that "shift employees" must

4    perform any work while consuming meals.  Mirant interprets this language to mean that the parties

5    have agreed that the duty free meal periods of "shift employees" are *paid* rather than *unpaid* break

6    periods.  Not only do "shift employees" receive duty free meal breaks, but they are also paid their

7    regular hourly rate for the time that they are on break. (Battles Decl., ¶ 10.)

### 3.    Whether CBA Section 16.5 Requires Employees to Remain in Any Particular Location During Their Meal Periods.

10         Section 16.5 of the CBA also states that "[m]eals will be taken at the work station or as

11    directed by the Supervisor." (Battles Decl., Exh. 1.)  Plaintiffs claim that this provision is "evidence"

12    that Mirant requires employees to "remain at their work stations to monitor and respond to alarms

13    while they eat quickly." (Motion to Remand, p. 1.)  In contrast, Mirant does not interpret this

14    provision as requiring employees to work during lunch.  The Power Plants are extremely large and

15    spread out facilities, and employees do not generally have assigned work stations and can be

16    working anywhere in the plant at any point in time.  Mirant interprets the term "work stations" to

17    mean the entire Plant, which includes kitchen, outdoor patios and other spaces that are appropriate

18    for breaks.  Moreover, Mirant has always interpreted this language to mean that such employees may

19    take their meal breaks anywhere they want and find convenient. *unless* they are directed by their

20    supervisors to remain in the Plant.  That would only occur if the nature of the work prevented them

21    from leaving. (Battles Decl., ¶ 11.)

### 4.    On-Duty Meal Period Agreement.

23         The vast majority of Power Plant Technicians may leave the premises and are never required

24    to perform any work during meal breaks.  The only people who may rarely be unable to leave the

25    Plant are the very few Power Plant Technicians who work as control room operators.  When the

26    Power Plants are producing electricity, there may be a few occasions when the nature of the work

27    prevents control room operators from being relieved of all duties during their meal periods.  Mirant

28    intended and interprets Section 16.5 to constitute an on-duty meal period agreement should it be

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

4.

1  necessary for a control room operator to continue monitoring equipment. However, even during the

2  time that the Power Plants are operational, control room operators are required to take a duty free

3  meal period as they are expected to ask other employees to relieve them. (Battles Decl., ¶ 12.)

4      CBA Section 24.1 states: "The Company and the Union may mutually agree to amend or add

5  to any provision of this Agreement during its term, provided that any such amendment or

6  modification must be in writing . . . ." Mirant interprets this language as giving the Union an ability

7  to revoke the on-duty meal period agreement in Section 16.5 at any time. (Battles Decl., ¶ 13.)  In

8  contrast, Plaintiffs claim "no written statement of a right to revoke exists in the CBA or elsewhere."

9  (Motion to Remand, p. 13.)

10        **5.     Paid Rest Breaks.**

11      CBA Section 16.7 states that "[e]ach employee shall be allowed a ten-minute paid break to

12  be taken at his or her workstation . . . ." (Battles Decl., Exh. 1.)  Plaintiffs claim this "demonstrates

13  that it has been the policy and practice of MIRANT that the only rest periods to be taken by the

14  Class are unlawful 'on duty' breaks." (Motion to Remand, p. 4.)  However, Mirant does not interpret

15  this language to mean that employees must stay at their workstations to monitor and respond to

16  alarms.  Section 16.7 provides for rest breaks during which employees are relieved of all duties and

17  do not perform any work.  Mirant's interpretation of Section 16.7 is that it only means that

18  employees may not leave the plant during breaks.  There are several break areas, including a kitchen,

19  restrooms and outdoor patios, where employees may go during breaks without leaving the plant.

20  (Battles Decl., ¶ 18.)

21        **6.     The Provisions of the CBA that Govern Overtime Meal Breaks.**

22      The CBA also contains agreements regarding a second meal period.  Pursuant to Section

23  17.8, Power Plant Technicians who have 8 hour shifts receive a second 30 minute meal period

24  ("overtime meal break") when they work overtime.  Power Plant Technicians who regularly work 12

25  hour shifts receive an overtime meal break when they work more than 12 hours.  An employee who

26  does not receive any overtime meal break receives a $13.00 meal allowance plus one-half hour of

27  pay at one and one-half times the employee's regular hourly rate, which is more than the one hour

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEF.'S OPP. TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH**

1  premium pay provided by California Labor Code section 226.7. (Battles Decl., ¶ 14 & Exh. 1, CBA

2  § 17.8.)

3  **7.    An Agreement Also Exists Between the Union and Mirant That Waives the Second Meal Break for 12 Hour Shift Employees Working More Than Ten Hours, But Not More Than Twelve Hours.**

4

5  The Union has waived a second 30 minute meal break after 10 hours of work for Power Plant

6  Technicians who regularly work 12 hour shifts.  The Union agreed in the CBA that these employees

7  qualify for an overtime meal only when they work more than 12 hours.  The pattern and practice for

8  these Power Plants has been this way for many years.  The Union has also told Mirant that it has

9  always been the Union's understanding that it waived a second meal period for 12 hour shift workers

10  and has expressly acknowledged that the parties have an "ongoing practice of waiving the second

11  meal due employees working 12 hour shifts under CA law." (Battles Decl., ¶¶ 15-17.)[2]

12  **E.    The Union Instigated This Lawsuit When Mirant Refused Its Settlement Demand.**

13  The Union has claimed to Mirant that the practices negotiated in the CBA regarding meal

14  and rest breaks violate California law.  When Mirant refused the Union's demand for a settlement,

15  the Union stated that it would be consulting with its attorneys. (Battles Decl., ¶ 19.)  Thereafter,

16  Plaintiffs filed this meal and rest period lawsuit in which they seek to represent a class of Union

17  Power Plant Technicians (Complaint, ¶¶ 12, 21).  The lawsuit claims that (1) CBA Section 16.5

18  "demonstrates that the policy and practice of MIRANT has been to require Plaintiffs and the Class to

19  work 'on duty' meal periods"; and (2) CBA Section 16.7 "demonstrates that it has been the policy

20  and practice of MIRANT that the only rest periods to be taken by the Class are unlawful 'on duty'

21  breaks." (Complaint, ¶¶ 20, 24.)  These claims are similar to those made previously by Local 1245.

22

23

24

25

26

27  [2] Neither Plaintiffs nor the Union dispute that the Union had the right to waive this second meal period, or that Mirant was required as a matter of federal law to comply with the waiver negotiated by the Union as the employees' exclusive collective bargaining representative, unless and until the Union acted to revoke that waiver.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

6.

DEF.'S OPP.TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH

1    **III.    LEGAL ARGUMENT**

2        **A.    Because Resolution of Plaintiffs' Claims Requires Interpretation of Disputed
                Terms of the CBA, the Complete Preemption Doctrine of Section 301 Applies.**

3

4        Section 301 completely preempts **any** state law claim requiring interpretation of a collective

5    bargaining agreement, even those "artfully pled" and sought to be camouflaged as state law claims.

6    In this case, contrary to Plaintiffs' assertions in their Motion to Remand, resolution of their claims

7    depends entirely upon interpretation of the collective bargaining agreement between Mirant and

8    IBEW Local 1245.   Therefore, under well-settled Supreme Court law, Plaintiffs' alleged state law

9    claims are preempted by, and arise under, Section 301.

10       The Section 301 preemption doctrine is broad.  It has been summarized as follows: "Section

11   301 governs claims founded directly on rights created by collective bargaining agreements, and *also*

12   claims substantially dependent on analysis of a collective bargaining agreement." *Caterpillar Inc. v.*

13   *Williams*, 482 U.S. 386, 394 (1987) (emphasis added); *see also Balcorta v. Twentieth Century-Fox*

14   *Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) ("[T]o give the proper range to § 301's policies of

15   promoting arbitration and the uniform interpretation of collective bargaining agreement provisions, §

16   301 'complete preemption' must be construed to cover 'most state-law actions that require

17   interpretation of labor agreements.'"); *Young v. Anthony's Fish Grotto's, Inc.,* 830 F.2d 993 (9th Cir.

18   1987) ("The key to determining the scope of preemption is not how the complaint is cast, but

19   whether the claims can be resolved only by referring to the terms of the collective bargaining

20   agreement.")  Therefore, Section 301 preempts state law claims that are either (1) based on, *or* (2)

21   require interpretation of any provision of a collective bargaining agreement.  Further, an artfully pled

22   state law claim is properly "recharacterized" as a federal claim under the "complete preemption"

23   doctrine, which provides that the preemptive force of LMRA Section 301 "converts an ordinary state

24   law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."

25   *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Franchise Tax Board v. Constr. Laborers*

26   *Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state

27   cause of action, any complaint that comes within the scope of the federal cause of action necessarily

28

**DEF.'S OPP. TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH**

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

1  'arises' under federal law"); *Assoc. Builders & Contractors, Inc. v. Local 302, IBEW*, 109 F.3d

2  1353, 1356 (9th Cir. 1997).

3      In this case, Section 301 preemption clearly applies because each and every one of Plaintiffs'

4  claims rests on the intent and meaning of specific language in the collective bargaining agreement

5  rather than the actual practices of the parties.  As such, Plaintiffs' claims "arise under" federal law,

6  and the federal common law created under Section 301 for interpreting and enforcing collective

7  bargaining agreements must be used to resolve the disputed CBA terms.

8      In short, rather than try to claim that Mirant employees actually miss meal and rest breaks –

9  which they could not do – Plaintiffs have instead chosen to rely solely on the express language in the

10  CBA between Mirant and their union, IBEW Local 1245, to support all of the allegations in their

11  Complaint.  In so doing, they have essentially alleged that certain language in the CBA prohibits

12  them from taking breaks in violation of California law; in other words, Plaintiffs have accused

13  Mirant and their own Union of having negotiated an unlawful contract.  Yet, the collective

14  bargaining language Plaintiffs reference is equally subject to the lawful interpretation that Defendant

15  has followed for almost a decade.

### 1. Plaintiffs' Meal Period Claims (First, Fourth & Fifth Causes of Action) Will Require Interpretation of Numerous Provisions of the CBA.

17      Contrary to any such suggestion by Plaintiffs, Mirant does not claim that the CBA modifies

18  any of the substantive provisions of California meal period law.  Rather, Mirant submits that several

19  CBA provisions *must be interpreted* to resolve Plaintiffs' meal period claim, as Mirant asserts that

20  (1) the requirements of an exemption provided by state law (on-duty meal period agreement) are met

21  by the CBA; and (2) Mirant and the Union agreed in the CBA to waive the second meal period for

22  certain employees as permitted by California law.[3]  Thus, an interpretation of the CBA is necessary

23  to determine whether there has been any violation of the California meal period law.

---

[3] To avoid federal jurisdiction, Plaintiffs claim that the sole basis of Defendant's preemption argument is the ambiguous definition of "shift employee" in CBA Section 16.5.  This is untrue.  As is discussed, *numerous* disputed CBA terms are at issue in this case.  (See also Def's Notice of Removal, ¶¶ 19-21.)  The dispute regarding the meaning of the term "shift employee" is minor in comparison to the disputes regarding the meaning of the substantive meal and rest period agreements.  Nonetheless, the fact that the parties do not even agree on the meaning of the term "shift employee" – with the Plaintiffs claiming it includes all Power Plant Technicians (Compl., ¶¶ 12, 21), while Mirant submits that it means only those few Power Plant Technicians who regularly

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEF.'S OPP. TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH**

### a.    CBA Section 16.5 Must Be Interpreted.

Plaintiffs claim that they and other similarly situated employees were denied duty free meal periods because CBA Section 16.5 states:

> A Shift employee works a job that is staffed with a rotating twenty-four (24) hour per day shift, on a seven (7) day a week basis, including holidays. Time to consume meals for shift employees shall be considered as time worked. Meals will be taken at the work station or as directed by the Supervisor.

Plaintiffs would have the Court interpret this language to require them to take only on duty meal breaks in violation of California law. However, as shown above, this language actually means only that employees are *paid* for their lunch breaks, which may be taken wherever employees want and whenever employees want under most circumstances.

Interpreting Section 16.5 of the CBA will require examining not only the CBA language, but also the past practices of Mirant and the Union. The past practices of an employer and union must be considered when interpreting the terms of a CBA. *See, e.g., Syufy Enterprises v. N. Cal. State Assoc. of IATSE Locals*, 631 F.2d 124, 126 (9th Cir. 1980) ("Courts . . . may rely upon extrinsic evidence to interpret various aspects of collective bargaining agreements."); *Comm. Workers of Am. v. Pac. N.W. Bell Tel. Co.*, 337 F.2d 455, 459 (9th Cir. 1964) ("The very nature of a collective bargaining agreement requires that it be read in the light of bargaining history and the history of the parties' own interpretations"); *California Trucking Assoc. v. Corcoran*, 74 F.R.D. 534, 542 (N.D. Cal. 1977) (interpreting trust fund provision in collective bargaining agreement by examining the parties' past practices and bargaining history). Defendant has submitted evidence demonstrating that Defendant's interpretations of the CBA and the past practices squarely contradict Plaintiffs' claims regarding Section 16.5. In contrast, Plaintiffs have produced no evidence supporting their incorrect interpretation.

In this case, longstanding past practice will show that Mirant has interpreted the language of Section 16.5 to mean that the meal periods of "shift employees" are paid, and the employees may take their meal breaks anywhere *unless* they are directed by their supervisors to remain in the plant. This would only occur if the nature of the work prevented an employee from leaving.

work 12 hour shifts – simply underscores the need to interpret terms of the collective bargaining agreement in this case.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

### b.    The Parties Dispute Whether the CBA Contains an On-Duty Meal Period Agreement.

Section 16.5 must also be interpreted because Mirant contends the CBA contains an *on-duty meal period agreement* that complies with California law.  California meal period law provides an exemption for workers who are unable to take off-duty lunch breaks due to the nature of their work.  IWC Wage Order 1, Section 11(C), authorizes a written agreement for an on-the-job meal period if the nature of the work prevents an employee from being relieved of all duty and the written agreement states that the employee may, in writing, revoke the agreement at any time.  Here, in the Power Plants, the nature of the work of the few control room operators may prevent them from being relieved of all duties because the electrical generators may not be turned off at any time when the Power Plants are producing electricity.  (Battles Decl., ¶ 3, 12.)

A state law claim is clearly preempted by Section 301 if a collective bargaining agreement must be interpreted to determine whether an exemption in a state law applies. *Firestone v. Southern California Gas Co.*, 219 F.3d 1063, 1065-66 (9th Cir. 2000), petition for rehearing *en banc* denied, 281 F.3d 801, 802 (9th Cir. 2002);[4] *see also Levy v. Verizon Information Services, Inc.*, 498 F. Supp. 2d 586, 597-98 (E.D.N.Y. 2007) (state law claim for unlawful wage deductions preempted by Section 301 where CBA interpretation necessary to determine whether the deductions were agreed).

There is no question that the Union, as the exclusive representative of the employees in the bargaining unit, may act on behalf of its members in entering an on-duty meal period agreement. *See, e.g., Porter v. Quillin*, 123 Cal. App. 3d 869, 177 Cal. Rptr. 45 (1981) (holding that a labor organization may collectively consent to providing meals to employees as part of their minimum wage where such a practice is prohibited under California law absent "specific and voluntary employee consent"); *DLSE v. Williams*, 121 Cal. App. 3d 302, 175 Cal. Rptr. 347 (1981) (holding

---

[4] The request for a petition for rehearing *en banc* in *Firestone* was based on the Court's 2001 decision in *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001), another case upon which Plaintiffs rely.  The Ninth Circuit chose to publish its denial of the request for a rehearing *en banc* to reinforce the "principle that a state law claim is preempted if it necessarily requires the court to interpret an existing provision of a collective bargaining agreement ("CBA") that 'can reasonably be said to be relevant to the resolution of the dispute.'" *Firestone v. S. Cal. Gas Co.*, 281 F.3d 801, 802 (9th Cir. 2002).  The court emphasized that where the parties in a case disagree about a CBA term, interpretation of the agreement is required and the claim is preempted by Section 301. *Id.*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF.'S OPP.TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH

1    that arbitrator's finding that a CBA contained an agreement to credit meals towards the minimum

2    wage constituted a finding of voluntary written agreement by the employees); DLSE, *Enforcement*

3    *Policies and Interpretations Manual*, § 45.2.4.2 ("California law has always allowed a union, as the

4    collective bargaining representative, to act on behalf of its members where such waiver is

5    allowed.").    The National Labor Relations Act, 29 U.S.C. § 159(a), provides that a labor

6    organization selected by majority of unit "shall be the exclusive representative[] of all the employees

7    in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of

8    employment, or other conditions of employment," and, as such, Mirant had the right to rely upon the

9    Union's negotiation of an on-duty meal period agreement.

10    While Plaintiffs claim the CBA does not constitute a valid on-duty meal period agreement

11    because "no written statement of a right to revoke exists in the CBA or elsewhere" (Motion to

12    Remand, p. 13), Mirant disagrees.  Mirant interprets the CBA as allowing the Union to revoke the

13    on-duty meal period agreement in Section 16.5 at any time, by virtue of CBA Section 24.1.  That

14    provision states: "The Company and the Union may mutually agree to amend or add to any provision

15    of this Agreement during its term, provided that any such amendment or modification must be in

16    writing . . . ."  Mirant submits this language  allows the Union to revoke the on-duty meal period

17    agreement, as reflected by the fact that the Union has requested changes to the CBA language in the

18    past, and the requested modification occurred.  (Battles Decl., ¶ 13.)

19    Resolving the question of whether Sections 16.5 and 24.1 together constitute a valid on-duty

20    meal period agreement is unquestionably necessary to resolve Plaintiffs' meal period claims.[5]

21    Plainly that will require interpretation of disputed CBA terms.  Therefore, Plaintiffs' meal period

22    claims are preempted by Section 301 for this further independent reason as well.

23    ───────────────

[5] Contrary to Plaintiffs' claim, whether Section 16.5 constitutes an on-duty meal period agreement is
24    not a defense, but an essential element to demonstrate that Defendant failed to provide meal periods
    in accordance with the applicable IWC Wage Order.  Moreover, Section 301 has "complete
25    preemptive" force; and, as such, the well-pleaded complaint rule argued by Plaintiffs (see Motion to
    Remand, p. 12.) does *not* apply to Section 301. As the Ninth Circuit stated in *Cramer v.*
26    *Consolidated Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001), the question that should be asked
    in every preemption case is "whether the resolution of the employee's state law . . . challenge
27    necessarily required interpretation of relevant provisions of the CBA."  To resolve Plaintiffs' claims,
    it is necessary to determine whether the CBA provisions at issue here constitute an on-duty meal
28    period agreement.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

11.

1
2

      **c.**      **The Court Must Determine the Existence, Scope and Validity of the Agreements Between the Employer and the Union Regarding the Second Meal Period.**

3       Next, it will also be essential to Plaintiffs' claims to determine whether an agreement exists

4  between Mirant and the Union that waives the second meal period for employees with 12 hour shifts

5  when they work more than 10, but not more than 12, hours. California Labor Code section 512 and

6  IWC Wage Order 1-2001 specifically allow the second meal period to be waived by mutual consent.

7  In their motion to remand, Plaintiffs completely ignore this central issue, which is set forth in

8  Mirant's Counterclaim (paragraph 17).

9       As discussed above, the parties' past practice, as well as extrinsic evidence, must be

10  considered in construing a CBA. The employer and union in this case had a long pattern and

11  practice of waiving the second meal period. In addition, several explicit statements were made by

12  the Union acknowledging this waiver. (Battles Decl., ¶¶ 15-17.) The existence and scope of this

13  agreement will require interpretation of an agreement between an employer and a union. Plaintiffs'

14  failure to even address this issue in their motion to remand is telling.

15
16

      **2.**      **Plaintiffs' Rest Period Claims (Second, Fourth and Fifth Causes of Action) Will Also Require Interpretation of Disputed Terms of the CBA.**

17       Central to Plaintiffs' rest break claim is their incorrect and disputed interpretation of Section

18  16.7 of the CBA, which states that "[e]ach employee shall be allowed a ten-minute paid break to be

19  taken at his or her workstation in each half of a workday that equals four or more hours." As noted,

20  Plaintiffs claim that this provision "demonstrates that it has been the policy and practice of MIRANT

21  that the only rest periods to be taken by the Class are unlawful 'on duty' breaks" (Motion to

22  Remand, p. 4; Compl., ¶ 48.), while Mirant has always interpreted this language as providing for rest

23  breaks during which employees *are* relieved of all duties and do not perform any work, and which

24  can be taken *anywhere* in the plant. (Battles Decl., ¶ 18.) Because the parties dispute the meaning

25  of the CBA term that Plaintiffs allege evinces the unlawful pattern and practice, the Plaintiffs' rest

26  period claims are also preempted by Section 301.

27
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEF.'S OPP. TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS**    **CASE NO. C 07-05847 PJH**

1          **3.**     **Plaintiffs' Claim for Waiting Time Penalties Under California Labor**

2                           **Code Section 203 (Third Cause of Action) Is Dependent on the Meaning of All of the Disputed Terms of the CBA.**

3           Plaintiffs also assert a claim for waiting time penalties based on premium pay they allege was

4  owed at termination for failure to provide meal and rest periods in accordance with the applicable

5  IWC Wage Order. Cal. Labor Code § 226.7. This claim is dependent on all of the disputed CBA

6  terms because Plaintiffs must demonstrate that putative class members were denied meal and/or rest

7  periods in violation of the California Labor Code and IWC Wage Orders. Where it is necessary to

8  interpret a collective bargaining agreement to determine whether waiting time penalties are due,

9  Section 301 preemption applies. *Atchley v. Heritage Cable Vision Assoc.*, 101 F.3d 495, 500-01 (7th

10  Cir. 1996) (where the date from which the penalties began to run was not ascertainable without

11  interpretation a CBA, a claim for violation of a state statute regarding the timing of wage payments

12  was preempted). The case relied upon by Plaintiffs, *Balcorta v. Twentieth Century-Fox Film Corp.*,

13  208 F.3d 1102 (9th Cir. 2000) is inapplicable because there was no need to even refer to the CBA in

14  that case to determine when the wages were due. *Id.* at 1110-11. In this case, if Mirant's

15  interpretations of the CBA prevail, then no wages were owed. The necessity of interpreting all the

16  CBA provisions discussed above mandates preemption under Section 301.

17          **B.**     **As With Any Other Claim, "Nonnegotiable" State Right Claims Are Preempted**

18                         **By Section 301 If Resolution of the Claims Requires Interpreting a Collective Bargaining Agreement.**

19           The bottom line in this case is that resolution of all of Plaintiffs' meal and rest period claims

20  **will** require interpretation of the CBA between Mirant and IBEW Local 1245. Although Plaintiffs

21  are plainly relying upon terms of the CBA that require an interpretation to argue there has been an

22  alleged violation of state law (Motion to Remand, pages 2, 3, 4 and 8, and Complaint, paragraphs 20,

23  24, 37, 48), they argue that their meal and rest break claims cannot be preempted simply because the

24  claims involve "nonnegotiable" state rights. However, the U.S. Supreme Court has made clear that,

25  as with any state law claim, a claim based on nonnegotiable state right *will be preempted* if it

26  requires interpretation of a collective bargaining agreement. *Lingle v. Norge Division of Magic*

27  *Chef, Inc.*, 486 U.S. 399, 407 n. 7 (1988) ("It is conceivable that a State could create a remedy that,

28  although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

13.

1   agreement for its application. *Such a remedy would be pre-empted by § 301.*  Similarly, if a law

2   applied to all state workers but required, at least in certain instances, collective-bargaining

3   agreement interpretation, the application of the law in those instances would be pre-empted."

4   [emphasis added.]); *accord Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1081-82 (9th Cir. 2005) (quoting

5   above language from *Lingle*, 386 U.S. at 407 n.7).[6]

6        Federal law is clear that *any* state law claim requiring CBA interpretation is preempted by

7   Section 301, regardless of whether it involves a "nonnegotiable" state law right. As demonstrated

8   above, there are at multiple disputed CBA terms at issue in this case that must be interpreted to

9   determine if any of the alleged violations of state law has occurred.  Therefore, Plaintiffs' claims are

10  completely preempted by, and arise under, Section 301, and removal was proper.

11       **C.    Plaintiffs Are Not Entitled to Attorneys' Fees.**

12       The facts and arguments discussed above demonstrate this is a case that primarily, if not

13  entirely, involves interpreting disputed CBA provisions.   Mirant strongly asserts that the Court

14  should deny remand to uphold Section 301's goal of uniform interpretation of CBAs under the

15  federal common law.   However, assuming *arguendo* that this Court should for any reason grant

16  Plaintiffs' motion to remand, an attorneys' fee award would not be proper because the disputes over

17  the interpretation of the very provisions of the CBA that Plaintiffs rely upon in their Complaint

18  provided at least an objectively reasonable basis for Defendant to remove.

19       The Supreme Court has held that a fee award under 28 U.S.C. section 1447(c) is only

20  appropriate under limited circumstances:  "The appropriate test for awarding fees under § 1447(c)

21  should recognize the desire to deter removals sought for the purpose of prolonging litigation and

---

22  [6] The Ninth Circuit in *Valles* acknowledged that the applicable California wage order regulating meal
    periods (IWC Wage Order 1-2001, 8 California Code of Regulations § 11010) "created several
23  exemptions . . . for [*inter alia*] employees who are unable to take lunch breaks due to the nature of
    their work . . . ." *Id.* at 1078. This exemption was not at issue in *Valles* because the printing press
24  employer conceded it was feasible to turn off the printing machines, making non-working lunches
    possible." *Id.* at 1078 n.6. Ultimately, the meal period claim in *Valles* was not preempted by Section
25  301 because the defendant "point[ed] to no disputed contractual provisions that [the court] need[ed]
    to interpret or construe in order to resolve the employees' claim. Thus, the construction of the
26  collective bargaining agreement [was] simply not involved." *Id.* at 1082.   Unlike in *Valles*,
    Plaintiffs' claims here are preempted by Section 301 because the CBA must be interpreted to
27  determine whether a state provided exemption, such as the on-duty meal period agreement or second
    meal period waiver, applies.   Whereas in *Valles* there were *no* disputed contract terms, there are also
28  numerous other disputed CBA terms at issue in this case.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF.'S OPP.TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH

1    imposing costs on the opposing party, while not undermining Congress' basic decision to afford

2    defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin v.*

3    *Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). Thus, "absent unusual circumstances, courts may

4    award attorney's fees under § 1447(c) only where the removing party lacked an objectively

5    reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees

6    should be denied." *Id.* at 141. In this case, fees would not be appropriate; Plaintiffs do not allege

7    that Defendant removed the case for the purpose of prolonging litigation and imposing costs on the

8    opposing party. Any such claim would be false and unsupported.

9          An objectively reasonable basis for removing this case certainly exists. Mirant removed the

10    case to federal court because it believes the case must be decided under the federal common law that

11    governs the interpretation of collective bargaining agreements. Many of the cases that Mirant relies

12    on held that federal jurisdiction existed under Section 301 because of a *single* disputed term of a

13    collective bargaining agreement. Here, there are at least six disputed terms of the CBA upon which

14    any liability under state law would turn. At a very minimum, an objectively reasonable basis for

15    removal existed. Therefore, a fee award would be improper.[7]

16        **D.**    **Plaintiffs' Motion to Strike or Dismiss the Counterclaim Must Also Be Denied.**

17          Federal Rule of Civil Procedure 13 provides that "a pleading *must* state as a counterclaim any

18    claim that – at the time of its service – the pleader has against an opposing party if the claim: (A)

---

[7] Should the Court somehow determine that attorneys' fees are recoverable in this case, Mirant also strongly objects that the amount of fees sought by Plaintiffs is unreasonable. A court may not simply award actual costs allegedly incurred as a result of the removal; the court must expressly determine that the amount is *reasonable. Huffman v. Saul Holdings, Ltd. Partnership*, 262 F.3d 1128, 1131, 1135 (10th Cir. 2001) (holding that district court erred in granting a request for $7,099 in fees without determining that the amount sought was reasonable). "[U]nreasonably high fees are not 'incurred' as a result of removal; rather, excessive fee requests flow from, and accumulate by means of, improper billing practices, and will not be recoverable under § 1447(c)." *Id.* Plaintiffs' claim that the two law firms representing them collectively spent more than 95.1 hours on the moving papers alone is outrageous. Much of the work they performed was unnecessary or duplicative. Moreover, it was unreasonable for an attorney with an hourly rate of $495.00 per hour to perform 80.5 hours of work, while an attorney with a lesser hourly rate of $385.00 allegedly spent 14.6 hours of work. If fees are to be granted, the Court should drastically reduce both the number of hours and the requested hourly rates. Alternatively, Defendant requests the right to fully brief the "reasonableness" of the claimed fees. Defendant believes that such an analysis should be unnecessary, however, as removal was proper and fees should be denied on that basis.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

**DEF.'S OPP.TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH**

arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed.R.Civ.Proc. 13(a) (defining a compulsory counterclaim). In this action, Plaintiffs have placed the validity of the CBA at issue, relying on provisions of the CBA to allege class-wide violations of California meal and rest period laws. In addition to having this lawsuit brought against it by Plaintiffs, Defendant was also approached by the Union, which alleged the CBA violated California law and requested a settlement that Defendant refused. (Battles Decl., ¶ 19.) Therefore, the interpretation and validity of the CBA provisions are at issue, and Defendant has the right to obtain declaratory relief.

### 1. The Counterclaim Is Not Redundant to Plaintiffs' Request for Declaratory Relief.

In the Counterclaim, Mirant requests "declaratory relief stating that Sections 16.5 and 16.7 of the CBA and the agreement [between Defendant and the Union] regarding waiver of second meal periods were and are enforceable and not inconsistent with or in violation of any California statute or administrative regulation." (Counterclaim, ¶ 24.) In contrast, Plaintiffs seek declaratory relief only with respect to their contentions that (1) Defendant has failed to provide Plaintiffs and the Class with meal periods in which they were relieved of all duty for 30 minutes, in violation of California law; (2) Defendant has failed to provide Plaintiffs and the Class with rest periods in which they were relieved of all duty for 10 minutes, in violation of California law; and (3) the members of the Class are entitled to recover earned wages and penalties. (Compl., ¶¶ 71, 72.)

The relief sought by Defendant is necessary to determine Defendant's rights and obligations with respect to this lawsuit as well as the additional settlement demands made by the Union. The declaratory relief Defendant seeks is not redundant because it requests relief regarding the enforceability and validity of specific contract provisions and requests relief that will be binding on all parties who have questioned the provisions' validity, both Plaintiffs and the Union, to avoid duplicative suits or settlement demands. Although the CBA sections are squarely placed at issue by Plaintiffs' claims, Plaintiffs are seeking a declaration that the law has been violated while Defendant is instead seeking a declaration that specific provisions of the CBA are valid and enforceable.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

16.

DEF.'S OPP.TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH

1    Moreover, many courts hold that counterclaims are proper even when they are the *mirror-*

2    *image* of claims in the Complaint, which is clearly not the case here. *See, e.g., Dominion Elec. Mfg.*

3    *Co. v. Edwin L. Wiegand Co.*, 126 F.2d 172, 175 (6th Cir. 1942); *United Wats, Inc. v. Cincinnati Ins.*

4    *Co.*, 971 F. Supp. 1375, 1381 (D. Kansas 1997); *Iron Mountain Security Storage Corp. v. Am.*

5    *Specialty Foods, Inc.*, 457 F. Supp. 1158, 1162 n.3 (E.D. Pa. 1978); *Jungersen v. Miller*, 125 F.

6    Supp. 846 (N.D. Ohio 1954); *Int'l Woodworkers v. McCloud Lumber Co.*, 119 F. Supp. 475, 488

7    (N.D. Cal. 1953).   In *McCloud Lumber*, for example, the court upheld a counterclaim seeking

8    declaratory relief as to the parties' rights and obligations under a collective bargaining agreement,

9    although the counterclaim "rais[ed] the same issues as those brought up by the plaintiff's first cause

10    of action."   119 F. Supp. at 488.   One noted commentator has opined that the cases that find

11    declaratory judgment counterclaims redundant "appear unjustified under the text of Rule 13."  3-12

12    *Moore's Federal Practice-Civil* § 13.41.

13    Regardless, declaratory relief is appropriate when such a judgment will (1) serve a useful

14    purpose in clarifying and settling the legal relations at issue, and (2) terminate and afford relief from

15    the uncertainty, insecurity and controversy giving rise to the proceeding.  *Eureka Fed. Sav. & Loan*

16    *Assoc. v. American Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989).  Obtaining an early resolution of the

17    CBA interpretation issues in this case will serve a useful purpose in clarifying whether the CBA

18    provisions preclude or cause liability to Plaintiffs.  In addition, declaratory relief will afford Mirant

19    relief from the uncertainty of having claims adjudicated against it by Plaintiffs and from the claims

20    made by the Union regarding the CBA.  Defendant's request for declaratory relief is not redundant

21    and is properly a part of this action.

22    **2.      This Court Has Supplemental of Defendant's Counterclaim.**

23    Conceding that the Court has jurisdiction over the Counterclaim if it has jurisdiction over the

24    Complaint, Plaintiffs allege that the jurisdictional requirements are not met because Mirant did not

25    allege anywhere in the counterclaim that this Court has jurisdiction over Plaintiffs' complaint.  That

26    claim is preposterous.  First, as a threshold matter, a counterclaim is technically a part of the answer.

27    *See* Fed.R.Civ.Proc. 7, 13(a).  Defendant specifically alleged in the Answer it filed at the same time

28    as the Counterclaim that this Court has jurisdiction over the Complaint because "Plaintiffs' claims

17.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

**DEF.'S OPP. TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH**

1    require interpretation of a collective bargaining agreement and thus arise under federal law.

2    Jurisdiction is proper in the United States District Court, Northern District of California, because

3    Plaintiffs' claims arise under and are preempted by Section 301(a) of the Labor-Management

4    Relations Act, 29 U.S.C. § 185(a)." (Answer, ¶ 2.)  Second, the Counterclaim does state that the

5    Counterclaim arises out of the same transaction or occurrence that is the subject matter of the

6    Complaint, and thus this Court has supplemental jurisdiction.   (Counterclaim, ¶ 1.)   The

7    Counterclaim also expressly states that this "matter is within the Court's jurisdiction under 28 U.S.C.

8    Section 1367(a) and 29 U.S.C. Section 185(a)." (Counterclaim, ¶ 23.)  Under the liberal notice

9    pleading requirements of Federal Rule of Civil Procedure 8, these statements are more than

10   sufficient.  *See also* 12-57 *Moore's Federal Practice-Civil* § 57.06 ("Typically, the request for

11   declaratory relief arises in connection with an issue over which the court already has jurisdiction.

12   Therefore, unless the request for declaratory relief is founded on new and additional facts, it is

13   ordinarily unnecessary to reiterate the jurisdictional grounds on which the claim is based.")

14       There is no question that the Court has, at a minimum, supplemental jurisdiction over the

15   counterclaim.  Compulsory counterclaims asserted by a defendant against the plaintiff fall within the

16   Court's supplemental jurisdiction; no other basis for jurisdiction need be established.  28 U.S.C. §

17   1367(a).  Therefore, Plaintiffs' motion to strike or dismiss the counterclaim should be denied.

18           **3.    This Court Also Has Original Jurisdiction of Defendant's Counterclaim
                     Under Section 301.**
19

20       As stated in the Counterclaim's jurisdictional statement, this Court also has original

21   jurisdiction of the Counterclaim under LMRA Section 301.  In declaratory relief actions, whether a

22   claim arises under federal law is determined by the nature of the claim that the declaratory judgment

23   defendant may assert against the declaratory judgment plaintiff.  *Franchise Tax Bd. of Cal. v.*

24   *Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 19 (1983).  Here, Plaintiffs' claims

25   involving the interpretation of the CBA arise under Section 301.  Any claim by the Union regarding

26   the interpretation of the CBA would also arise under Section 301.  It is well settled that claims

27   requiring interpretation of a collective bargaining agreement arise under federal law – Section 301.

28   *See, e.g., Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

18.

**DEF.'S OPP.TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS     CASE NO. C 07-05847 PJH**

1    In addition, numerous decisions hold that Section 301 confers federal courts with jurisdiction

2    to issue a declaratory judgment as to the construction or effect of a collective bargaining agreement.

3    *See, e.g., John S. Griffith Constr. Co. v. United Brotherhood of Carpenters & Joiners*, 785 F.2d 706

4    (9th Cir. 1986); *Assoc. Gen. Contractors v. Ill. Conference of Teamsters*, 486 F.2d 972 (7th Cir.

5    1973); *Allied Oil Workers Union v. Ethyl Corp.*, 301 F.2d 104 (5th Cir. 1962); *Allied Oil Workers*

6    *Union v. Ethyl Corp.*, 341 F.2d 47 (5th Cir. 1965); *Black-Clawson Co. Paper Machine Div. v. Int'l*

7    *Assoc. of Machinists*, 313 F.2d 179 (2d Cir. 1962); *Council of Western Electric Technical Employees*

8    *v. Western Electric Co.*, 238 F.2d 892 (2d Cir. 1956).    Mirant's Counterclaim principally involves

9    the interpretation of a collective bargaining agreement – a matter exclusively reserved for the federal

10   courts.  If Mirant were to bring this claim in state court, it would be preempted by Section 301.  This

11   Court has both supplemental and original subject matter jurisdiction over the Counterclaim.

12
   **4.    Defendant Has Alleged an Actual Controversy, and Thus the
          Counterclaim Properly States a Cause of Action Under the Declaratory
13        Judgment Act.**

14   In arguing that the Counterclaim fails to state a claim, Plaintiffs fail to mention the

15   Declaratory Judgment Act.  The Declaratory Judgment Act was enacted to authorize any federal

16   court to "declare the rights and other legal relations of any interested party seeking such declaration .

17   . . ." 28 U.S.C. § 2201.  The only requirements to state a claim under the Declaratory Judgment Act

18   are (1) facts showing existence of an actual controversy, (2) regarding a matter or claim that is

19   otherwise within federal court subject matter jurisdiction. *Id.*; *accord Int'l Harvester Co. v. Deere &*

20   *Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980).

21   The actual controversy in this case is demonstrated by the fact that Plaintiffs seek damages in

22   this lawsuit based on the disputed CBA terms.  In addition, the Union has disputed the validity of the

23   CBA terms and sought a settlement from Defendant that was declined.  These allegations are more

24   than sufficient to meet the requirements of the Declaratory Judgment Act. *See, e.g., Topps Chewing*

25   *Gum, Inc. v. Fleer Corp.*, 799 F.2d 851, 856 (2d Cir. 1986) (alleging that contract terms are in

26   dispute is sufficient); *Cooper Dev. Co. v. Employers Ins. of Wasau*, 765 F.Supp. 1429, 1432 (N.D.

27   Cal. 1991) (in action seeking coverage under liability policy for environmental damage, insurer's

28   counterclaim seeking declaration that it was not obligated to defend or indemnify additional counter-

19.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

**DEF.'S OPP.TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH**

1    defendants against claims for environmental contamination was "actual controversy" as required by

2    Declaratory Judgment Act). Plaintiffs' claims for damages and injunctive relief, as well as the

3    threats made by the Union, allege an actual controversy. Plaintiffs' motion to dismiss the

4    counterclaim must be denied.

5

## I. CONCLUSION

6      For the foregoing reasons, Defendant respectfully requests the Court to deny Plaintiffs'

7    motion to remand. As liability under Plaintiffs' state law claims turns on many disputed terms of the

8    CBA that require interpretation, Section 301 "complete preemption" applies. The Court should also

9    deny Plaintiffs' motion to strike or dismiss the Counterclaim because the relief sought will be useful

10    to this lawsuit and will enable Defendant to obtain relief necessary to respond to the Union's

11    demands.

12      Respectfully submitted,

13    Dated: January 30, 2008

14

15

16                         /s/

                          MARGARET HART EDWARDS

17                           LITTLER MENDELSON
                          A Professional Corporation

18                           Attorneys for Defendant
                          MIRANT CALIFORNIA, LLC

19

20

21    Firmwide:84184020.2 825000.1433

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF.'S OPP. TO MOTION TO REMAND, REQUEST FOR FEES & MOTION TO DISMISS    CASE NO. C 07-05847 PJH