1    MARGARET HART EDWARDS, Bar No. 65699
     PHILIP L. ROSS, Bar No. 90042
2    KIMBERLY L. OWENS, Bar No. 233185
     LITTLER MENDELSON
3    A Professional Corporation
     650 California Street
4    20th Floor
     San Francisco, CA  94108.2693
5    Telephone:   415.433.1940
     Facsimile:   415.399.8490
6    E-Mail:      mhedwards@littler.com;
                  plross@littler.com;
7                 kowens@littler.com

8    Attorneys for Defendant
     MIRANT CALIFORNIA, LLC

9

10                   UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13

| | |
|---|---|
| 14    JERRY MITCHELL, EDDIE WILLIAMS, JR., EDWARD S. MEDINA, and DAVID WALTERS, individually and on behalf of all others similarly situated, | Case No. C 07-05847 PJH [ECF] |

JERRY MITCHELL, EDDIE WILLIAMS, JR., EDWARD S. MEDINA, and DAVID WALTERS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MIRANT CALIFORNIA, LLC, a Delaware Corp., and Does 1 to 50,

Defendants.

Case No. C 07-05847 PJH [ECF]

**DEFENDANT MIRANT CALIFORNIA, LLC'S OPPOSITION TO COUNTER-DEFENDANT IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM FOR LACK OF JURISDICTION AND FAILURE TO JOIN NECESSARY OR PROPER PARTY**

Date:    February 20, 2008
Time:    9:00 a.m.
Place:   Courtroom 3
Judge:   Hon. Phyllis J. Hamilton

Complaint Filed:  October 17, 2007
Trial Date:       None

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM    CASE NO. C 07-05847 PJH

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ................................................................................................ 1

II. RELEVANT FACTS ......................................................................................... 2

    A.  Defendant Mirant California, LLC ........................................................... 2

    B.  The Collective Bargaining Agreement Between Mirant and IBEW Local 1245 ........ 2

        1.  The Applicable Bargaining Unit ................................................. 3

        2.  Normal Plant Operations and Periodic Shift Work......................... 3

    C.  All Power Plant Technicians Receive Duty Free Meal And Rest Periods In Compliance With California Law ................................................... 3

    D.  The CBA To Which The Union And Mirant Are Parties Contains Extensive Language Regarding Meal Periods And Rest Breaks That Is Disputed ...... 4

        1.  The CBA Provides That Power Plant Technicians With Eight (8) Hour Shifts Receive Unpaid Meal Periods ................................... 4

        2.  "Time Worked" In CBA Section 16.5 ........................................ 4

        3.  CBA Section 16.5 Does Not Require Employees to Remain in Any Particular Location During Their Meal Periods................................ 5

        4.  On-Duty Meal Period Agreement ............................................... 5

        5.  Paid Rest Breaks ................................................................... 6

        6.  The Provisions of the CBA that Govern Overtime Meal Breaks............ 6

        7.  An Agreement Also Exists Between The Union And Mirant That Waives The Second Meal Break For 12 Hour Shift Employees Working More Than Ten Hours, But Not More Than Twelve Hours............. 6

    E.  The Union Instigated This Lawsuit When Mirant Refused A Settlement Demand ........................................................................................ 7

III. LEGAL ARGUMENT.......................................................................................... 8

    A.  The Court Has Supplemental Jurisdiction Over This Compulsory Counterclaim........................................................................................ 8

        1.  The Underlying Complaint Is Preempted By, And Arises Under, Section 301 Of The LMRA Because Of The Numerous Disputes As To The Proper Interpretation Of The Collective Bargaining Agreement........................................................................................ 9

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

## TABLE OF CONTENTS
### (CONTINUED)

PAGE

2. The Court Has Jurisdiction Of The Complaint Under Section 301 Because Plaintiffs' Meal Period Claims (First, Fourth & Fifth Causes of Action) Will Require Interpretation Of Numerous Provisions Of The CBA .................................................................................................. 10

    a. The Parties Dispute The Meaning Of The Phrase "Time Worked" In CBA Section 16.5 ........................................................... 11

    b. The Parties Dispute Whether Section 16.5 Constitutes an On-Duty Meal Period Agreement ....................................................... 11

    c. The Court Must Determine The Existence, Scope And Validity Of The Agreements Between The Employer And The Union Regarding The Second Meal Period ................................................... 12

3. Plaintiffs' Rest Period Claims (Second, Fourth and Fifth Causes of Action) Will Also Require Interpretation Of Disputed Terms Of The CBA .................................................................................................. 12

4. Plaintiffs' Claim For Waiting Time Penalties Under California Labor Code Section 203 (Third Cause Of Action) Is Dependent On The Meaning Of All Of The Disputed Terms Of The CBA ................................. 13

5. There Is No Reason to Decline Supplemental Jurisdiction ........................... 13

    a. Efficiency Is Best Promoted By Resolving All Disputes Involving These Contract Provisions In A Single Lawsuit ............... 13

B. The Court Also Has Original Jurisdiction Over The Counterclaim Under Section Of The LMRA ........................................................................................ 16

C. The Counterclaim Is Proper ........................................................................... 17

    1. The Union Is A Necessary Party ..................................................... 18

    2. In The Alternative And, At A Minimum, The Union Is A Proper Party ....... 20

IV. CONCLUSION .......................................................................................................... 20

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Allied Oil Workers Union v. Ethyl Corp.*,
301 F.2d 104 (5th Cir. 1962) .......................................................................... 18

*Allied Oil Workers Union v. Ethyl Corp.*,
341 F.2d 47 (5th Cir. 1965) ............................................................................ 18

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985)................................................................................... 1, 10

*Assoc. Gen. Contractors v. Ill. Conference of Teamsters*,
486 F.2d 972 (7th Cir. 1973) .......................................................................... 18

*Atchley v. Heritage Cable Vision Assoc.*,
101 F.3d 495 (7th Cir. 1996) .......................................................................... 14

*Clinton v. Babbitt*,
180 F.3d 1081 (9th Cir. 1999) ........................................................................ 20

*Colaprico v. Sun Microsystem, Inc.*,
758 F.Supp. 1335 (N.D. Cal. 1991) ................................................................. 8

*Cook v. Winfrey*,
141 F.3d 322 (7th Cir. 1998) ............................................................................ 8

*Daily v. Fed. Ins. Co.*,
2005 WL 14734 (N.D. Cal. 2005) ................................................................... 16

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) ........................................................................ 20

*Disabled Rights Action Committee v. Las Vegas Events*,
375 F.3d 861 (9th Cir. 2004) .......................................................................... 20

*Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.*,
126 F.2d 172 (6th Cir. 1942) .......................................................................... 16

*Eureka Fed. Sav. & Loan Assoc. v. American Cas. Co.*,
873 F.2d 229 (9th Cir. 1989) .......................................................................... 17

*Executive Software No. Am., Inc. v. U.S. Dist. Ct. (Page)*,
24 F.3d 1545 (9th Cir. 1994) .......................................................................... 15

*Firestone v. Southern California Gas Co.*,
219 F.3d 1063 (9th Cir. 2000) ........................................................................ 12

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
463 U.S. 1 (1983) ........................................................................................... 18

*Gould Electronics, Inc. v. United States*,
220 F.3d 169 (3d Cir. 2000)............................................................................. 8

*Hayes v. Schenley Affil. Brand Corp.*,
1980 U.S. Dist. LEXIS 12672 (N.D. Ill. 1980) ............................................... 20

*Hodgson v. School Board, New Kensington-Arnold School District*,
56 F.R.D. 393 (W.D. Pa. 1972) ...................................................................... 20

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

## TABLE OF AUTHORITIES
### (CONTINUED)

**PAGE**

*In re 2TheMart.com. Inc. Sec Lit.,*
    114 F Supp.2d 955 (C.D. Cal. 2000) .................................................. 8, 16

*Int'l Harvester Co. v. Deere & Co.,*
    623 F.2d 1207 (7th Cir. 1980) .......................................................... 18

*Int'l Woodworkers v. McCloud Lumber Co.,*
    119 F. Supp. 475 (N.D. Cal. 1953) ................................................... 17

*John S. Griffith Constr. Co. v. United Brotherhood of Carpenters & Joiners,*
    785 F.2d 706 (9th Cir. 1986) ............................................................ 18

*Lingle v. Norge Div. of Magic Chef, Inc.,*
    480 U.S. 399 (1988) ......................................................................... 9

*Lomyaktewa v. Hathaway,*
    520 F.2d 1324 (9th Cir. 1975) .......................................................... 20

*Martin v. Wilks,*
    490 U.S. 755 (1989) ......................................................................... 19

*McCooe v. Manchester,*
    101 F.R.D. 339 (D. Conn. 1984) ....................................................... 19

*McDowell v. Safeway Stores, Inc.,*
    1981 U.S. Dist LEXIS 17938, *1-2 (E.D. Ark. 1981) ........................... 19

*Porter v. Quillin,*
    123 Cal. App. 3d 869 (1981) ............................................................ 12

*RDF Media Ltd. V. Fox Broadcasting Co.,*
    372 F. Supp. 2d 556 (C.D. Cal. 2005) ............................................... 8

*Smith v. U. Bhd. of Carpenters,*
    685 F.2d 164 (6th Cir. 1982) ............................................................ 19

*Stanbury Law Firm v. I.R.S.,*
    221 F.3d 1059 (8th Cir. 2000) .......................................................... 8

*Syufy Enterprises v. N. Cal. State Assoc. of IATSE Locals,*
    631 F.2d 124, 126 (9th Cir. 1980) .................................................... 11

*Teamsters Local Union No. 171 v. Keal Driveaway Co.,*
    173 F.3d 915 (4th Cir. 1999) ............................................................ 19

*Textile Workers Union v. Lincoln Mills,*
    353 U.S. 448 (1957) ......................................................................... 9

*United Steelworkers of Amer. v. Rawson,*
    495 U.S. 362 (1990) ......................................................................... 9

*United Wats, Inc. v. Cincinnati Ins. Co.,*
    971 F. Supp. 1375 (D. Kansas 1997) ................................................ 16

*Valdez v. United States,*
    837 F. Supp. 1065, *affirmed,* 56 F.3d 1177 (9th Cir. 1995) ............... 8

*Valentin v. Hospital Bella Vista,*
    254 F.3d 358 (1st Cir. 2001) ............................................................ 8

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

## **TABLE OF AUTHORITIES**
### (CONTINUED)

PAGE

*Window Glass Cutters League v. Am. St. Gobain Corp.*,
    428 F.2d 353 (3d Cir. 1970)................................................................ 19

### **STATUTES**

28 U.S.C. § 1367(a) ............................................................................ 8, 9, 14

28 U.S.C. § 1367(c) .............................................................................. 14, 15

28 U.S.C. § 2201 ........................................................................................ 18

Fed.R.Civ.Proc. 13(a) ........................................................................... 9, 14

Lab. Code § 226.7 ...................................................................................... 14

### **OTHER AUTHORITIES**

3-12 *Moore's Federal Practice-Civil* § 13.41 ......................................... 17

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

# I.    INTRODUCTION

Counter-Defendant IBEW Local 1245's Motion to Dismiss or Strike the Counterclaim is dependent on its mischaracterizations of the facts of this case. IBEW Local 1245 (the "Union) recognizes that to show that Section 301 preemption does not apply, the Union must prove that no disputes exist regarding the proper interpretation of the collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). The Union attempts to do so by mischaracterizing the nature of the dispute and the allegations in Defendant's Answer, Notice of Removal and Counterclaim. The Union fails to mention that it has claimed to Defendant that the contract provisions the parties negotiated are allegedly invalid. The Union also fails to mention that it too has demanded money from Mirant based on the disputed contract provisions. The Union simply ignores that Mirant has always interpreted Sections 16.5 and 16.7 of the CBA differently than the interpretation that Plaintiffs claim in this lawsuit and differently from the interpretation that the Union put forward in demanding a settlement. The parties also dispute whether Mirant and the Union have entered agreements allowing on-duty meal periods for "shift employees" and waiving the second meal period when employees do not work more than 12 hours. In its Answer denying the allegations in Plaintiffs' Complaint, and in the averments set forth in the Notice of Removal and in the Counterclaim, Mirant has shown that *numerous* disputes exist as to the proper interpretation of the collective bargaining agreement. These disputes compel the conclusion that the underlying Complaint is preempted by, and arises under, Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Therefore, this Court has original jurisdiction over the Complaint and supplemental jurisdiction over the compulsory Counterclaim. In light of the collective bargaining agreement interpretation disputes at issue, the Court also has original jurisdiction over the Counterclaim, but that further jurisdiction is unnecessary in light of the obvious existence of supplemental jurisdiction.

Mirant's Counterclaim is absolutely necessary to efficiently resolve all disputes regarding the collective bargaining agreement in one lawsuit. Mirant asserts that: (1) the Union negotiated a collective bargaining agreement that the Union now incorrectly contends is unlawful; (2) Plaintiffs also contend the collective bargaining agreement is invalid; (3) the proper interpretation of the

1.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1  provisions at issue, the interpretation that Mirant has followed for almost a decade, fully complies

2  with California law; (4) the Union demanded a settlement from Mirant and instigated this lawsuit

3  when that settlement was not forthcoming; (5) a failure to address the issues in Mirant's

4  Counterclaim will leave uncertainty for Mirant in complying with the collective bargaining

5  agreement that it is required by federal law to follow, and in addressing the demands from Plaintiffs

6  and from the Union; (6) a failure to address the Counterclaim will create a risk of inconsistent

7  obligations; and (7) the Union has an interest in the interpretation and enforcement of the collective

8  bargaining agreement, as well as the contract modifications that would be required if the Court were

9  to grant Plaintiffs' the injunctive relief they request.  All of these facts demonstrate both that the

10  Counterclaim is proper, and the Union is a necessary party to this lawsuit.  The Union's motion

11  should therefore be denied.

12  **II.    RELEVANT FACTS**

13      **A.    Defendant Mirant California, LLC.**

14      Defendant Mirant California, LLC ("Mirant") owns and operates Power Plants in San

15  Francisco (the "Potrero Power Plant"), Antioch (the "Contra Costa Power Plant") and Pittsburg,

16  California (the "Pittsburg Power Plant") (collectively the "Power Plants").  Mirant purchased the

17  Power Plants from PG&E in 1999. (Declaration of Lisa Battles ("Battles Decl."), ¶ 2.)

18      **B.    The Collective Bargaining Agreement Between Mirant and IBEW Local 1245.**

19      The Power Plant Technicians employed by Mirant are members of a bargaining unit

20  represented by IBEW Local 1245 (the "Union").  Since 2000, Mirant and the Union have been

21  parties to a series of Collective Bargaining Agreements.  The current Collective Bargaining

22  Agreement ("CBA") has been in effect since November 1, 2005.  The practices that the parties

23  intended to be set forth in the CBA have been the practices since before Mirant purchased the Power

24  Plants. (Battles Decl., ¶¶ 6, 7.)

25      The Plaintiffs in the underlying lawsuit are employed by Mirant as Power Plant Technicians,

26  and the terms and conditions of their employment are governed by the CBA. (Compl., ¶¶ 5-8, 20.)

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM**    **CASE NO. C 07-05847 PJH**

### 1.  The Applicable Bargaining Unit.

The CBA bargaining unit consists of "Power Plant Technicians employed at the Company's Contra Costa, Pittsburg and Potrero Power Plants." (Battles Decl., ¶ 4 & Exh. 1, CBA § 4.1.)

### 2.  Normal Plant Operations and Periodic Shift Work.

The usual work schedule for employees in the bargaining unit is "eight (8) hours per day, Monday through Friday." (Battles Decl., Exh. 1, CBA § 16.2.)  However, the CBA also provides different terms for employees who are "shift employees." "Shift employees" are individuals who work "a job that is staffed with a rotating twenty-four (24) hour per day shift, on a seven (7) day a week basis, including holidays." (Battles Decl., Exh. 1, CBA § 16.5.)

Mirant produces and sells electricity only when necessary meet electricity demands.  The Contra Costa and Pittsburg Plants produce electricity for about 30 to 60 days per year.  During this time period, these Power Plants operate 24 hours per day.  The remainder of the year, these Power Plants are fully staffed, but are not operational. (Battles Decl., ¶ 3.)

Mirant's interpretation of the term "shift employees" is that it includes only those employees who regularly work twelve hour shifts.  The term "shift employee" does not include Power Plant Technicians whose regular work schedule is only 8 hours per day, regardless of whether those individuals work overtime or how much overtime they work. (Battles Decl., ¶ 8.)

### C.  All Power Plant Technicians Receive Duty Free Meal and Rest Periods In Compliance with California Law.

All Power Plant Technicians employed by Mirant receive meal breaks lasting at least 30 minutes every day.  The employees are relieved of all duties during the meal breaks and are free to leave the premises. (Battles Decl., ¶ 9.)

A few Power Plant Technicians are responsible for manning the control room ("control room operators").  When the Power Plants are producing electricity, the control room operators cannot leave the control room unattended, but are expected to try to find another employee to relieve them during their break times. (Battles Decl., ¶ 12.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

3.

1    Employees also receive at least two fifteen minute breaks per day. Employees can take these

2    breaks anywhere in the Plant. During their breaks, they are relieved of all duties. Employees are

3    also permitted to take additional shorter breaks at any time. (Battles Decl., ¶ 9, 18.)

**D.    The CBA to Which the Union and Mirant Are Parties Contains Extensive Language Regarding Meal Periods and Rest Breaks That Is Disputed.**

6    The Union does not and cannot deny Mirant's allegation that the Union now asserts that

7    provisions of the CBA are unlawful and encouraged Plaintiffs to initiate this lawsuit. (Counterclaim,

8    ¶ 16.) Indeed, the Union approached Mirant claiming the CBA that the Union negotiated was not

9    valid and requesting a settlement. (Battles Decl., ¶ 19.) Thus, the same CBA disputes that are

10   relevant to the underlying Complaint exist with regard to the Union.

**1.    The CBA Provides That Power Plant Technicians with Eight (8) Hour Shifts Receive Unpaid Meal Periods.**

12   Power Plant Technicians with 8 hour shifts have regular working hours of "40 hours per

13   week, eight (8) hours per day, not including a meal period of one-half (1/2) hour." (Battles Decl.,

14   Exh. 1, CBA § 16.2.) Unless employed as a "Shift Employee," meal periods are not included in

15   "work time." (Battles Decl., Exh. 1, CBA §16.3.) Mirant interprets this provision to mean that the

16   30 minute duty free meal periods of these employees are unpaid. (Battles Decl., ¶ 9.)

**2.    "Time Worked" in CBA Section 16.5.**

18   CBA Section 16.5 sets forth the terms of the parties' agreement with respect to meal periods

19   for "shift employees." It provides: "Time to consume meals for shift employee shall be considered

20   as *time worked*." (Battles Decl., Exh. 1.) Plaintiffs interpret this provision as constituting "evidence

21   of the fact that Mirant denied Plaintiffs the mandatory off-duty meal and rest periods . . . ." (Motion

22   to Remand, p. 4.) Plaintiffs assert that the fact that the CBA "states unequivocally that the meal

23   periods of 'shift employees' are 'considered as time worked'" is "consistent with Plaintiff's claims

24   that the Class Members are not getting required 'off duty' meal periods." (Motion to Remand, p. 7.)

25   In contrast, Mirant has never interpreted this language to mean that "shift employees" must

26   perform any work while consuming meals. Mirant interprets this language to mean that the parties

27   have agreed that the duty free meal periods of "shift employees" are *paid* rather than *unpaid* break

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

4.

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM    CASE NO. C 07-05847 PJH**

1    periods. Not only do "shift employees" receive duty free meal breaks, but they are also paid their

2    regular hourly rate for the time that they are on break. (Battles Decl., ¶ 10.)

3          **3.      CBA Section 16.5 Does Not Require Employees to Remain in Any
                  Particular Location During Their Meal Periods.**
4
5          Section 16.5 of the CBA also states that "[m]eals will be taken at the work station or as

6    directed by the Supervisor." (Battles Decl., Exh. 1.) Plaintiffs claim that this provision is "evidence"

7    that Mirant requires employees to "remain at their work stations to monitor and respond to alarms

8    while they eat quickly." (Motion to Remand, p. 1.) In contrast, Mirant does not interpret this

     provision as requiring employees to work during lunch. The Power Plants are extremely large and
9
     spread out facilities, and employees do not generally have assigned work stations and can be
10
     working anywhere in the plant at any point in time. Mirant interprets the term "work stations" to
11
     mean the entire Plant, which includes kitchen, outdoor patios and other spaces that are appropriate
12
     for breaks. Moreover, Mirant has always interpreted this language to mean that such employees may
13
     take their meal breaks anywhere they want and find convenient. *unless* they are directed by their
14
     supervisors to remain in the Plant. That would only occur if the nature of the work prevented them
15
     from leaving. (Battles Decl., ¶ 11.)
16
           **4.      On-Duty Meal Period Agreement.**
17
           The vast majority of Power Plant Technicians may leave the premises and are never required
18
     to perform any work during meal breaks. The only people who may rarely be unable to leave the
19
     Plant are the very few Power Plant Technicians who work as control room operators. When the
20
     Power Plants are producing electricity, there may be a few occasions when the nature of the work
21
     prevents control room operators from being relieved of all duties during their meal periods. Mirant
22
     intended and interprets Section 16.5 to constitute an on-duty meal period agreement should it be
23
     necessary for a control room operator to continue monitoring equipment. However, even during the
24
     time that the Power Plants are operational, control room operators are required to take a duty free
25
     meal period as they are expected to ask other employees to relieve them. (Battles Decl., ¶ 12.)
26
           CBA Section 24.1 states: "The Company and the Union may mutually agree to amend or add
27
     to any provision of this Agreement during its term, provided that any such amendment or
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

5.

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM       CASE NO. C 07-05847 PJH**

1  modification must be in writing . . . ." Mirant interprets this language as giving the Union an ability

2  to revoke the on-duty meal period agreement in Section 16.5 at any time. (Battles Decl., ¶ 13.) In

3  contrast, Plaintiffs claim "no written statement of a right to revoke exists in the CBA or elsewhere."

4  (Motion to Remand, p. 13.)

5           **5.       Paid Rest Breaks.**

6           CBA Section 16.7 states that "[e]ach employee shall be allowed a ten-minute paid break to

7  be taken at his or her workstation . . . ." (Battles Decl., Exh. 1.) Plaintiffs claim this "demonstrates

8  that it has been the policy and practice of MIRANT that the only rest periods to be taken by the

9  Class are unlawful 'on duty' breaks." (Motion to Remand, p. 4.) However, Mirant does not interpret

10  this language to mean that employees must stay at their workstations to monitor and respond to

11  alarms. Section 16.7 provides for rest breaks during which employees are relieved of all duties and

12  do not perform any work. Mirant's interpretation of Section 16.7 is that it only means that

13  employees may not leave the plant during breaks. There are several break areas, including a kitchen,

14  restrooms and outdoor patios, where employees may go during breaks without leaving the plant.

15  (Battles Decl., ¶ 18.)

16           **6.       The Provisions of the CBA that Govern Overtime Meal Breaks.**

17           The CBA also contains agreements regarding a second meal period. Under Section 17.8,

18  Power Plant Technicians who have 8 hour shifts receive a second 30 minute meal period ("overtime

19  meal break") when they work overtime. Power Plant Technicians who regularly work 12 hour shifts

20  receive an overtime meal break when they work more than 12 hours. An employee who does not

21  receive any overtime meal break receives a $13.00 meal allowance plus one-half hour of pay at one

22  and one-half times the employee's regular hourly rate, which is more than the one hour premium pay

23  provided by California Labor Code section 226.7. (Battles Decl., ¶ 14 & Exh. 1, CBA § 17.8.)

24           **7.       An Agreement Also Exists Between the Union and Mirant That Waives
                       the Second Meal Break for 12 Hour Shift Employees Working More
25                     Than Ten Hours, But Not More Than Twelve Hours.**

26           The Union has waived a second 30 minute meal break after 10 hours of work for Power Plant

27  Technicians who regularly work 12 hour shifts. The Union agreed in the CBA that these employees

28  qualify for an overtime meal only when they work more than 12 hours. The pattern and practice for

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM**          **CASE NO. C 07-05847 PJH**

1    these Power Plants has been this way for many years.  The Union has also told Mirant that it has

2    always been the Union's understanding that it waived a second meal period for 12 hour shift workers

3    and has expressly acknowledged that the parties have an "ongoing practice of waiving the second

4    meal due employees working 12 hour shifts under CA law." (Battles Decl., ¶¶ 15-17.)[1]

5    **E.    The Union Instigated This Lawsuit When Mirant Refused A Settlement Demand.**

6         The Union has claimed to Mirant that the practices negotiated in the CBA regarding meal

7    and rest breaks violate California law.  When Mirant refused the Union's demand for a settlement,

8    the Union stated that it would be consulting with its attorneys. (Battles Decl., ¶ 19.)  Thereafter,

9    Plaintiffs filed this meal and rest period lawsuit in which they seek to represent a class of Union

10   Power Plant Technicians (Complaint, ¶¶ 12, 21).  The lawsuit claims that (1) CBA Section 16.5

11   "demonstrates that the policy and practice of MIRANT has been to require Plaintiffs and the Class to

12   work 'on duty' meal periods"; and (2) CBA Section 16.7 "demonstrates that it has been the policy

13   and practice of MIRANT that the only rest periods to be taken by the Class are unlawful 'on duty'

14   breaks." (Complaint, ¶¶ 20, 24.)  These claims are virtually identical to those made by Local 1245.

15        In addition to damages, Plaintiffs' lawsuit seeks declaratory and injunctive relief.  Plaintiffs

16   seek declaratory relief regarding their claims that: (1) Mirant failed to provide Plaintiffs and the

17   putative class with off duty meal periods; (2) Mirant failed to provide Plaintiffs and the putative

18   class with rest periods in which they were relieved of all duty; and (3) Plaintiff and the putative class

19   are entitled to wages and penalties. (Compl., ¶ 71.)  Plaintiffs also seek an "order preliminarily and

20   permanent enjoining MIRANT from engaging in the practices" set forth in the collective bargaining

21   agreement. (Compl., Prayer for Relief, § 4.)

22        Along with its Answer, Mirant filed a Counterclaim against Plaintiffs and the Union

23   requesting "declaratory relief stating that Sections 16.5 and 16.7 of the CBA and the agreement

24   regarding the waiver of second meal periods were and are enforceable and not inconsistent with or in

25   violation of any California statute or administrative regulation." (Counterclaim, ¶ 24.)   Mirant

26

27   [1] Neither Plaintiffs nor the Union dispute that the Union had the right to waive this second meal
     period, or that Mirant was required as a matter of federal law to comply with the waiver negotiated
28   by the Union as the employees' exclusive collective bargaining representative, unless and until the
     Union acted to revoke that waiver.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

7.

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM          CASE NO. C 07-05847 PJH**

1    asserts that this relief is necessary because Plaintiffs and the Union dispute the validity of the CBA,

2    which Mirant is charged with enforcing. (Counterclaim, ¶ 21.)

3    **III.    LEGAL ARGUMENT**

4    　　　The Union's Motion to Strike or Dismiss the Counterclaim should not be granted because the

5    Counterclaim is essential to resolve all disputes regarding the enforceability of the CBA in one

6    action, and subject matter jurisdiction clearly exists under Section 301 of the LMRA.  In evaluating a

7    motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court must look at the

8    counterclaim as a whole and must consider the allegations of the counterclaim to be true.  *Cook v.*

9    *Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998); *Gould Electronics, Inc. v. United States*, 220 F.3d 169,

10   176 (3d Cir. 2000); *Valdez v. United States*, 837 F. Supp. 1065, 1067, *affirmed*, 56 F.3d 1177 (9th

11   Cir. 1995).  Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim

12   and does not require particularized allegations.  A court must "draw all reasonable inferences" from

13   the factual allegations in ruling on a jurisdictional challenge.  *Valentin v. Hospital Bella Vista*, 254

14   F.3d 358, 361 (1st Cir. 2001).  In this case, Mirant has also put forward evidence demonstrating the

15   this Court's jurisdiction, while the Union has put forward no counter evidence and relies instead on

16   unsupported allegations.  As shown below, Section 301 jurisdiction exists and the Union's motion to

17   dismiss must be denied.

18   　　　Motions to strike under Federal Rule of Civil Procedure 12(b)(6) are disfavored and "should

19   not be granted unless it is clear that the matter to be stricken could have no possible bearing on the

20   subject matter of the litigation." *Colaprico v. Sun Microsystem, Inc.,* 758 F.Supp. 1335, 1339 (N.D.

21   Cal. 1991); *accord Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000); *RDF Media*

22   *Ltd. V. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005). When a court considers a

23   motion to strike, it "must view the pleading in a light most favorable to the pleading party." *In re*

24   *2TheMart.com. Inc. Sec Lit.,* 114 F Supp.2d 955, 965 (C.D. Cal. 2000). A court must deny the

25   motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the

26   action. *Id.*  In this case, the Union's motion to strike must also be denied because the declaratory

27   relief sought is necessary to resolve the disputes over enforcement and interpretation that have been

28   asserted by the Union as well as by Plaintiffs.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

8.

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM**    CASE NO. C 07-05847 PJH

A.    **The Court Has Supplemental Jurisdiction Over This Compulsory Counterclaim.**

In its motion, the Union incorrectly claims that the Court must find separate jurisdiction over the Complaint and the Counterclaim. (Union's Motion, p. 5.) Compulsory counterclaims asserted by a defendant against the plaintiff fall within the Court's supplemental jurisdiction; no other basis for jurisdiction need be established. 28 U.S.C. § 1367(a). Section 1367 provides, in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). A counterclaim is compulsory if it "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed.R.Civ.Proc. 13(a). Both the Complaint and the Counterclaim relate to Mirant's compliance with the meal and rest period provisions of the CBA. As such, there is no question that the Counterclaim is compulsory. The Court need not conduct the torturous analysis set forth in the Union's motion and should simply find that supplemental jurisdiction exists.

1.    **The Underlying Complaint Is Preempted By, and Arises Under, Section 301 of the LMRA Because of the Numerous Disputes as to the Proper Interpretation of the Collective Bargaining Agreement.**

The Union admits that the Court has jurisdiction over the Complaint and the Counterclaim if disputes exist as to the proper interpretation of the CBA. (Union's Motion, p. 6.) Section 301 authorizes federal courts to fashion a uniform body of federal common law for interpreting and enforcing collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 480 U.S. 399, 403 (1988). By virtue of the Supremacy Clause, the body of federal common law developed under Section 301 for interpreting and enforcing labor-contracts necessarily *displaces* any state law concerning such matters. "State law is thus 'preempted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective bargaining agreements." *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 368 (1990). The Supreme Court has made clear that Section 301 *preempts* state law claims if "resolution of a state-

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM**    **CASE NO. C 07-05847 PJH**

1   law claim is substantially dependent upon analysis of the terms of an agreement made between the

2   parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

3          In an attempt to avoid jurisdiction, the Union incorrectly argues that no dispute exists

4   regarding the proper interpretation of any terms of the CBA (Union's Motion, p. 8.)  The Union

5   ignores, however, that Defendant specifically *denied* the incorrect interpretations of the CBA

6   asserted by Plaintiffs in their Complaint.  In the Answer, Mirant *denied* the Plaintiffs' allegations

7   that supposedly Section 16.5 of "[t]he CBA demonstrates that the policy and practice of MIRANT

8   has been to require Plaintiffs and the Class to work 'on duty' meal periods"; and that Section 16.7 of

9   the CBA also supposedly demonstrates that "it has been the policy and practice of MIRANT that the

10  only rest periods to be taken by the Class are unlawful 'on duty' breaks." (Complaint & Answer, ¶¶

11  20, 24, 37, 48.)  Mirant also directly asserts in its Counterclaim that (1) the Union and Plaintiffs

12  dispute that the proper interpretation of Sections 16.5 and 16.7 of the CBA is lawful; (2) the Union

13  and Plaintiffs dispute that the CBA contains an enforceable on-duty meal period agreement; and (3)

14  the Union now denies that it has waived the second meal period for certain employees.

15  (Counterclaim, ¶¶ 13, 15-18, 21-22.)  *Numerous* disputes regarding the proper interpretation of

16  essential provisions of the CBA exist in this action, which mandates Section 301 preemption.

17          **2.      The Court Has Jurisdiction of the Complaint under Section 301 Because
                      Plaintiffs' Meal Period Claims (First, Fourth & Fifth Causes of Action)**
18                    **Will Require Interpretation of Numerous Provisions of the CBA.**

19         Several CBA provisions *must be interpreted* to resolve both Plaintiffs' meal period claim and

20  the related issues raised in the Counterclaim, in that Mirant asserts that (1) the requirements of an

21  exemption provided by state law (on-duty meal period agreement) are met by the CBA, and (2)

22  Mirant and the Union agreed in the CBA to waive the second meal period for certain employees as

23  permitted by California law.  Thus, an interpretation of the CBA is necessary to determine whether

24  or not there has been any violation of the California meal period law.

25         Mirant addresses in detail and at length in its opposition to Plaintiffs' motion to remand

26  (which is set for hearing at the same time as the Union's current motion), the numerous

27  interpretations of the CBA required to resolve the state law claims raised in this action.  Rather than

28  burden the Court with repeating those arguments verbatim, here, Mirant will simply provide a

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

1    summary of the more in depth analysis contained in its Opposition to the motion to remand, along

2    with a citation to where that more extensive analysis can be found.

3             **a.**      **The Parties Dispute the Interpretation of CBA Section 16.5.**

4           The Union ignores the many disputes over the interpretation of Section 16.5 in arguing

5    against jurisdiction.  Plaintiffs claim that they and other similarly situated employees were denied

6    duty free meal periods because CBA Section 16.5 states:

7          A Shift employee works a job that is staffed with a rotating twenty-four (24) hour per
      day shift, on a seven (7) day a week basis, including holidays.  Time to consume
8          meals for shift employees shall be considered as time worked.  Meals will be taken at
      the work station or as directed by the Supervisor.

9

10   Plaintiffs would have the Court interpret this language to require them to take only on duty meal

11   breaks in violation of California law.  The Union has also asserted that the language it negotiated

12   violates California law.  However, as shown above, this language actually means only that

13   employees are *paid* for their lunch breaks, which may be taken whenever employees want and

14   wherever within the plant under most circumstances.  Interpreting Section 16.5 will require not only

15   an examination of the language, but also of the past practices of Mirant and the Union.  *See, e.g.,*

16   *Syufy Enterprises v. N. Cal. State Assoc. of IATSE Locals*, 631 F.2d 124, 126 (9th Cir. 1980).  (See

17   pages 8 to 9 of Mirant's Opposition to Plaintiffs' Motion to Remand for a more in depth discussion

18   of this point.)

19            **b.**      **The Parties Dispute Whether Section 16.5 Constitutes an On-Duty
                Meal Period Agreement.**

20          Section 16.5 must also be interpreted because Mirant contends the CBA contains an *on-duty*

21   *meal period agreement* that complies with California law.  California meal period law provides an

22   exemption for workers who are unable to take off-duty lunch breaks due to the nature of their work.

23   IWC Wage Order 1, Section 11(C).  Here, in the Power Plants, the nature of the work of the few

24   control room operators may prevent them on occasion from being relieved of all duties because the

25   electrical generators may not be turned off when the Power Plants are producing electricity.  A state

26   law claim is clearly preempted by Section 301 if a collective bargaining agreement must be

27   interpreted to determine whether an exemption in a state law applies, *Firestone v. Southern*

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 84108.2693
415.433.1940

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM**    **CASE NO. C 07-05847 PJH**

1  *California Gas Co.*, 219 F.3d 1063, 1065-66 (9th Cir. 2000), and there is no question that the Union,

2  as the exclusive representative of the bargaining unit employees, may act on behalf of its members in

3  entering an on-duty meal period agreement. *Porter v. Quillin*, 123 Cal. App. 3d 869 (1981).

4      Mirant has alleged that the Union now disputes the existence of a valid on-duty meal period

5  agreement. (Counterclaim, ¶¶ 15, 21.)  Plaintiffs also claim the CBA does not constitute a valid on-

6  duty meal period agreement because "no written statement of a right to revoke exists in the CBA or

7  elsewhere." (Motion to Remand, p. 13).  Mirant disagrees.  Mirant interprets the CBA as allowing

8  the Union to revoke the on-duty meal period agreement in Section 16.5 at any time, by virtue of

9  CBA Section 24.1. (Battles Decl., ¶ 13.)  Resolution of the question whether Sections 16.5 and 24.1

10  together constitute a valid on-duty meal period agreement is unquestionably necessary to resolve the

11  state law meal period claims.  (See pages 9 to 11 of Mirant's Opposition to Plaintiffs' Motion to

12  Remand for a more in depth discussion of this point.)

      **c.    The Court Must Determine the Existence, Scope and Validity of**
             **the Agreements Between the Employer and the Union Regarding**
             **the Second Meal Period.**

15      Next, it will also be essential to Plaintiffs' claims to determine whether an agreement exists

16  between Mirant and the Union that waives the second meal period for employees with 12 hour shifts

17  when they work more than 10, but not more than 12, hours.  California Labor Code section 512 and

18  IWC Wage Order 1-2001 specifically allow the second meal period to be waived by mutual consent.

19      As discussed above, the parties' past practice, as well as extrinsic evidence, must be

20  considered in construing a CBA.  The employer and union in this case had a long pattern and

21  practice of waiving the second meal period.  In addition, several explicit statements were made by

22  the Union acknowledging this waiver. (Battles Decl., ¶¶ 15-17.)  The existence and scope of this

23  agreement will require interpretation of an agreement between an employer and a union.

      **3.    Plaintiffs' Rest Period Claims (Second, Fourth and Fifth Causes of**
             **Action) Will Also Require Interpretation of Disputed Terms of the CBA.**

      Central to Plaintiffs' rest break claim is their incorrect and disputed interpretation of Section

26  16.7 of the CBA, which states that "[e]ach employee shall be allowed a ten-minute paid break to be

27  taken at his or her workstation in each half of a workday that equals four or more hours." As noted,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

12.

1    Plaintiffs claim that this provision "demonstrates that it has been the policy and practice of MIRANT

2    that the only rest periods to be taken by the Class are unlawful 'on duty' breaks" (Motion to

3    Remand, p. 4; Compl., ¶ 48.), while Mirant has always interpreted this language as providing for rest

4    breaks during which employees *are* relieved of all duties and do not perform any work, and which

5    can be taken *anywhere* in the plant. (Battles Decl., ¶ 18.) Because the parties dispute the meaning

6    of the CBA term that Plaintiffs allege evinces the unlawful pattern and practice, the Plaintiffs' rest

7    period claims are also preempted by Section 301 and this Court has jurisdiction..

8              **4.    Plaintiffs' Claim for Waiting Time Penalties under California Labor
                       Code Section 203 (Third Cause of Action) Is Dependent on the Meaning
9                      of All of the Disputed Terms of the CBA.**

10           Plaintiffs also assert a claim for waiting time penalties based on premium pay they allege was

11   owed at termination for failure to provide meal and rest periods in accordance with the applicable

12   IWC Wage Order. Cal. Labor Code § 226.7. This claim is dependent on all of the disputed CBA

13   terms because Plaintiffs must demonstrate that putative class members were denied meal and/or rest

14   periods. (See pages 12 to 13 of Mirant's Opposition to Plaintiffs' Motion to Remand for a more in

15   depth discussion of this point.)

16             **5.    There Is No Reason to Decline Supplemental Jurisdiction.**

17             **a.    Efficiency Is Best Promoted By Resolving All Disputes Involving
                       These Contract Provisions in a Single Lawsuit.**

18           The Union ignores all of the above disputes regarding the interpretation of the CBA, which

19   compel jurisdiction under Section 301. Because the Court has jurisdiction over the Complaint, the

20   Court has supplemental jurisdiction over the compulsory Counterclaim, which necessarily arises out

21   of the same transactions or occurrences as the Complaint. 28 U.S.C. § 1367(a); Fed.R.Civ.Proc.

22   13(a). The Union does not dispute that the Counterclaim is compulsory.

23           No reason exists for the Court to decline supplemental jurisdiction of the compulsory

24   Counterclaim. A district court may only decline supplemental jurisdiction if:

25           (1) the claim raises a novel or complex issue of State law, (2) the claim substantially
             predominates over the claim or claims over which the district court has original
26           jurisdiction, (3) the district court has dismissed all claims over which it has original
             jurisdiction, or (4) in *exceptional circumstances*, there are other compelling reasons
27           for declining jurisdiction.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

13.

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM        CASE NO. C 07-05847 PJH**

1    28 U.S.C. § 1367(c) (emphasis added).  The Ninth Circuit has held that federal courts *must* exercise

2    supplemental jurisdiction in the absence of one of the enumerated factors.  *Executive Software No.*

3    *Am., Inc. v. U.S. Dist. Ct. (Page)*, 24 F.3d 1545, 1556 (9th Cir. 1994) ("By selecting this statutory

4    structure, it is clear that Congress intended section 1367(c) to provide the exclusive means by which

5    supplemental jurisdiction can be declined by a court.")   In addition, contrary to the Union's

6    argument, the Ninth Circuit has cautioned that Section 1367(c)(4) may be used as a basis for

7    declining jurisdiction "only if the circumstances are quite unusual."  *Id.* at 1558.  Indeed, in the

8    *Executive Software* case relied upon by the Union, the Ninth Circuit held that the district court erred

9    for declining jurisdiction based on factors that were "unauthorized by statute."  *Id.* at 1561.

10           The Union admits that the first three bases enumerated in Section 1367(c) are inapplicable to

11    this Counterclaim and relies only upon the fourth provision, which is reserved for "exceptional

12    circumstances" that do not exist here.  Supplemental jurisdiction should not be declined in this case.

13    First, the interest of fairness would not be promoted by declining jurisdiction because this is the only

14    possible forum for this claim.  If Defendant were to file this claim against the Union in state court,

15    the claim would be preempted by Section 301 because it requires interpretation of Sections 16.5 and

16    16.7 of the CBA, as well as the second meal period waiver agreement that exists between Mirant and

17    the Union.  The Union has already involved itself in this dispute by claiming to Defendant that the

18    CBA provisions the parties negotiated are invalid, by demanding a settlement from Mirant and by

19    instigating Plaintiffs' lawsuit.  Judicial economy is also best promoted by addressing the similar

20    disputes made by Plaintiffs and the Union regarding the proper interpretation of the CBA in a single

21    lawsuit.[2]  Moreover, Plaintiffs seek declaratory and injunctive relief in this case that if granted could

22    require the CBA to be rewritten.  Absent joinder of the Counterclaim, the Union would not be bound

23    by the judgment and there is a risk of inconsistent obligations.  It is far more efficient to resolve all

24    the claims that have been made regarding the validity of the CBA in a single lawsuit.

25

26

27    [2] The Union ignores the fact that it too has claimed the CBA provisions at issue are invalid and has
      demanded a settlement from Mirant.  If supplemental jurisdiction were declined, it would create the
28    risk of inconsistent obligations because the Union could separately file a grievance or claim against
      Mirant on this issue and because Mirant would still be obligated to enforce the CBA.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM**          **CASE NO. C 07-05847 PJH**

1    Here, the Counterclaim is not redundant and complete relief cannot be afforded without the

2    presence of the Counterclaim.  In the Counterclaim, Mirant requests "declaratory relief stating that

3    Sections 16.5 and 16.7 of the CBA and the agreement [between Defendant and the Union] regarding

4    waiver of second meal periods were and are enforceable and not inconsistent with or in violation of

5    any California statute or administrative regulation." (Counterclaim, ¶ 24.)  In contrast, Plaintiffs seek

6    declaratory relief only with respect to their contentions that (1) Defendant has failed to provide

7    Plaintiffs and the Class with meal periods in which they were relieved of all duty for 30 minutes, in

8    violation of California law; (2) Defendant has failed to provide Plaintiffs and the Class with rest

9    periods in which they were relieved of all duty for 10 minutes, in violation of California law; and (3)

10    the members of the Class are entitled to recover earned wages and penalties.  (Compl., ¶¶ 71, 72.)

11    The relief sought by Defendant is necessary to determine Defendant's rights and obligations with

12    respect to this lawsuit as well as the additional settlement demands made by the Union.  The

13    declaratory relief Defendant seeks is not redundant because it requests relief regarding the

14    enforceability and validity of specific contract provisions and requests relief that will be binding on

15    all parties who have questioned the provisions' validity, both Plaintiffs and the Union, to avoid

16    duplicative suits or settlement demands.  Although the CBA sections are squarely placed at issue by

17    Plaintiffs' claims, Plaintiffs are seeking a declaration that the law has been violated while Defendant

18    is instead seeking a declaration that the relevant provisions of the CBA are valid and enforceable.

19    The case cited by the Union, *Daily v. Fed. Ins. Co.*, 2005 WL 14734 (N.D. Cal. 2005),

20    addressed a completely different situation and is inapplicable to this case.  In *Daily*, the counterclaim

21    raised an identical issue to the complaint.  In contrast here, the declaratory relief sought by

22    Defendant is different from the relief sought by Plaintiffs and is necessary to resolve questions

23    regarding the *enforcement of the CBA going forward*, as well as to defend against Plaintiffs' claims

24    and the settlement demands made by the Union.  A court must deny a motion to strike if there is *any*

25    doubt whether the allegations might be relevant in the action.  *In re 2The Mart.com*, 114 F. Supp. 2d

26    at 965.

27    Further, many courts hold that counterclaims are proper even when they are the *mirror-image*

28    of claims in the Complaint (which is not the case here).  *See, e.g., Dominion Elec. Mfg. Co. v. Edwin*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

15.

DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM          CASE NO. C 07-05847 PJH

1   *L. Wiegand Co.*, 126 F.2d 172, 175 (6th Cir. 1942); *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F.

2   Supp. 1375, 1381 (D. Kansas 1997); *Int'l Woodworkers v. McCloud Lumber Co.*, 119 F. Supp. 475,

3   488 (N.D. Cal. 1953). In *McCloud Lumber*, for example, the court upheld a counterclaim seeking

4   declaratory relief as to the parties' rights and obligations under a collective bargaining agreement,

5   although the counterclaim "rais[ed] the same issues as those brought up by the plaintiff's first cause

6   of action." 119 F. Supp. at 488. One noted commentator has opined that the cases that find

7   declaratory judgment counterclaims redundant "appear unjustified under the text of Rule 13." 3-12

8   *Moore's Federal Practice-Civil* § 13.41.

9        Regardless, declaratory relief is appropriate when such a judgment will (1) serve a useful

10  purpose in clarifying and settling the legal relations at issue, and (2) terminate and afford relief from

11  the uncertainty, insecurity and controversy giving rise to the proceeding. *Eureka Fed. Sav. & Loan*

12  *Assoc. v. American Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989). Obtaining an early resolution of the

13  CBA interpretation issues in this case will serve a useful purpose in clarifying whether the CBA

14  provisions preclude or cause liability to Plaintiffs. In addition, declaratory relief will afford Mirant

15  relief from the uncertainty of having claims adjudicated against it by Plaintiffs and from the claims

16  made by the Union regarding the CBA. Defendant's request for declaratory relief is not redundant

17  and is properly a part of this action. No basis under Section 1367(c) exists for declining

18  supplemental jurisdiction.

19      **B.    The Court Also Has Original Jurisdiction Over the Counterclaim Under Section of the LMRA.**

20

21      There is no need to conduct further analysis because the Court unquestionably has

22  supplemental jurisdiction. However, even if the Court did not have supplemental jurisdiction, the

23  Counterclaim would still be properly brought in federal court because the relief sought requires

24  interpretation of the CBA. The Union admits as much, acknowledging that the Counterclaim arises

25  under federal law if the claims "fall within the line of 'Section 301 preemption' cases based on *Allis*

26  *Chalmers Corp. v. Lueck*, 471 U.S. 202, 208-13." (Union Motion, p. 6.) The Union contests

27  jurisdiction by alleging that no CBA interpretation is required. However, as demonstrated above,

28  CBA Sections 16.5 and 16.7 must be interpreted to provide the declaratory relief sought in the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1  Counterclaim. Plaintiffs and the Union dispute the existence of a valid on-duty meal period

2  agreement and dispute the second meal period waiver agreement. As demonstrated above, this need

3  for CBA interpretation compels Section 301 preemption, and the Counterclaim thus "arises under"

4  federal law.

5       Moreover, in declaratory relief actions, whether a claim arises under federal law is

6  determined by the nature of the claim that the declaratory judgment defendant may assert against the

7  declaratory judgment plaintiff. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S.*

8  *Cal.*, 463 U.S. 1, 19 (1983). Here, any claim by the Union or Plaintiffs regarding the interpretation

9  of the CBA would also arise under Section 301.

10      Numerous decisions hold that Section 301 confers federal courts with jurisdiction to issue a

11  declaratory judgment as to the construction or effect of a collective bargaining agreement. *See, e.g.,*

12  *John S. Griffith Constr. Co. v. United Brotherhood of Carpenters & Joiners*, 785 F.2d 706 (9th Cir.

13  1986); *Assoc. Gen. Contractors v. Ill. Conference of Teamsters*, 486 F.2d 972 (7th Cir. 1973); *Allied*

14  *Oil Workers Union v. Ethyl Corp.*, 301 F.2d 104 (5th Cir. 1962); *Allied Oil Workers Union v. Ethyl*

15  *Corp.*, 341 F.2d 47 (5th Cir. 1965). Mirant's Counterclaim principally involves the interpretation of

16  a collective bargaining agreement – a matter exclusively reserved for the federal courts. If Mirant

17  were to bring this claim in state court, it would be preempted by Section 301. This Court has both

18  supplemental and original subject matter jurisdiction over the Counterclaim.

19      **C.    The Counterclaim Is Proper.**

20      In arguing that the Counterclaim is improper, the Union also fails to mention the Declaratory

21  Judgment Act. The Declaratory Judgment Act was enacted to authorize any federal court to "declare

22  the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C.

23  § 2201. The only requirements to state a claim under the Declaratory Judgment Act are (1) facts

24  showing existence of an actual controversy, (2) regarding a matter or claim that is otherwise within

25  federal court subject matter jurisdiction. *Id.*; *accord Int'l Harvester Co. v. Deere & Co.*, 623 F.2d

26  1207, 1210 (7th Cir. 1980). These requirements are more than met in this case. As demonstrated in

27  the Opposition to Plaintiffs' Motion, the Counterclaim properly states a claim against Plaintiffs. The

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

17.

DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM    CASE NO. C 07-05847 PJH

1    Counterclaim is within the Court's jurisdiction and necessary to resolve all disputes regarding the

2    interpretation of the CBA meal and rest period provisions in one action.

3                   **1.    The Union Is a Necessary Party.**

4          The Union's argument that it is not a necessary party to this action fails to account for the

5    allegations in the Counterclaim, which must be accepted as  true, that the Union has also disputed

6    the validity of the relevant CBA terms and has demanded a settlement.  (Counterclaim, ¶¶ 15, 21;

7    Battles Decl., ¶ 19.)  The Union also ignores that it would not be bound by any judgment absent

8    joinder.

9          Federal Rule of Civil Procedure 19(a) requires joinder of all persons who are needed for just

10    adjudication.   The primary purpose of Rule 19 is to assure any judgment rendered will provide

11    complete relief and prevent repeated lawsuits on the same subject.  *Smith v. U. Bhd. of Carpenters*,

12    685 F.2d 164 (6th Cir. 1982).  Nonparties are not bound by a judgment unless joined as a party.

13    *Martin v. Wilks*, 490 U.S. 755, 765 (1989).  A nonparty must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.Proc. 19(a)(1).

      Numerous cases have found that a union is a necessary party for a claim that concerns the

interpretation or lawfulness of a CBA provision, or a claim seeking relief that would alter provisions

of the CBA.  *See, e.g., Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918

(4th Cir. 1999) (holding that a union was a necessary party to an action concerning the interpretation

of a collective bargaining agreement); *Window Glass Cutters League v. Am. St. Gobain Corp.*, 428

F.2d 353, 354-55 (3d Cir. 1970) (holding that it was correct to join a union under Rule 19 to an

action where union could file separate grievance on the issues of the case); *McCooe v. Manchester*,

101 F.R.D. 339, 341 (D. Conn. 1984) (holding that union was a necessary party to an action that

alleged the retirement provisions of a CBA were unlawful); *McDowell v. Safeway Stores, Inc.*, 1981

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM**    CASE NO. C 07-05847 PJH

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

U.S. Dist LEXIS 17938, *1-2 (E.D. Ark. 1981) (holding that union was indispensable party in case where the "court could be called upon to interpret this agreement, and court orders in [the] case may conflict with the terms of [the] agreement"); *Hayes v. Schenley Affil. Brand Corp.*, 1980 U.S. Dist. LEXIS 12672 (N.D. Ill. 1980) (holding that union was a necessary party for an action seeking declaratory and injunctive relief that practices required by the collective bargaining agreement); *Hodgson v. School Board, New Kensington-Arnold School District*, 56 F.R.D. 393 (W.D. Pa. 1972) (holding that union was necessary party in Equal Pay Act lawsuit that had the potential to alter the compensation provisions of a collective bargaining agreement).

As the Union acknowledges, this case involves Plaintiffs' claim "that implementing this CBA violates state law . . ." (Union Motion, p. 21.) In the Counterclaim, Mirant seeks a judgment that the lawful interpretation of the CBA that has been applied for years is the proper interpretation. This case thus involves both challenges to the lawfulness of the CBA and interpretation of the CBA. Both issues make the Union a necessary party. Moreover, because the Union is a signatory to the CBA, it is absolutely essential that the declaratory judgment sought by Defendant be binding on the Union, so that Defendant is no subject to inconsistent obligations. The Union is a necessary party.

The case cited by the Union to argue it is not a necessary party, *Disabled Rights Action Committee v. Las Vegas Events*, 375 F.3d 861 (9th Cir. 2004) in fact *supports* a finding that the union is a necessary party. In that case, a "signatory" to a contract was not necessary because the licensing agreement was no longer in effect at the time of the litigation and there was no allegation that any provision of the contract was unlawful. *Id.* at 879-82. The Ninth Circuit, however, upheld its previous decisions emphasizing the "fundamental principle [that] a party to a contract is necessary" to an action seeking to set aside a contract. *Id.* (citing *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1154-55 (9th Cir. 2002); *Lomyaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975)); *see also* Clinton v. Babbitt, 180 F.3d 1081, 1088 (9th Cir. 1999) ("[A] district court cannot adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to that agreement."). The Ninth Circuit has thus affirmed that a party to a contract is a necessary party to any action regarding the legality of a contract.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM    CASE NO. C 07-05847 PJH

1   Not only does this case concern the lawfulness and interpretation of a contract provision to

2   which the Union is a party, but the relief sought also has the potential of altering or rescinding

3   provisions of the CBA.   Defendant seeks a declaration regarding the meaning of two contract

4   provisions, and it is essential that the Union be bound to that judgment.   Plaintiffs also seek

5   declaratory and injunctive relief that could result in provisions of the CBA being declared invalid

6   and becoming unenforceable.   To afford complete relief and to avoid the risk of multiple and

7   inconsistent obligations, the Union is a necessary party to this action.

8          **2.      In the Alternative and, at a Minimum, the Union Is a Proper Party.**

9          Should the Court find for any reason that the Union is not a necessary party, the joinder of

10  the union would still be proper. Under Federal Rule of Civil Procedure 20(a), any party may be

11  joined if a right to relief is asserted against that party that arises out of the same transaction,

12  occurrence or series of transactions or occurrences and there is at least one common question of law

13  or fact.  This low standard is easily met here.  Both Plaintiffs and the Union have challenged the

14  validity of the CBA terms at issue in this lawsuit, and Defendant seeks a judgment that binds both

15  Plaintiffs and the Union.  This is not simply a dispute between Plaintiffs and Defendant; the Union

16  demanded a settlement from Defendant and instigated Plaintiffs' lawsuit, facts which the Union does

17  not deny.  If for any reason, the Court does not find the Union to be a necessary party, then the

18  joinder must still be upheld under Federal Rule of Civil Procedure 20(a).

19  **IV.    CONCLUSION**

20         For the foregoing reasons, Defendant respectfully requests the Court to deny the Union's

21  motion to strike or dismiss the counterclaim.  The counterclaim is necessary to an efficient and full

22  resolution of the CBA interpretation issues in this case, and the Union is a necessary party.

23  Dated: January 30, 2008

24

25                                              /s/
                                         MARGARET HART EDWARDS
26                                       LITTLER MENDELSON
                                         A Professional Corporation
27                                       Attorneys for Defendant
                                         MIRANT CALIFORNIA, LLC

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
850 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

20.

**DEF.'S OPP. TO IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM**          **CASE NO. C 07-05847 PJH**