MARGARET HART EDWARDS, Bar No. 65699
PHILIP L. ROSS, Bar No. 90042
KIMBERLY L. OWENS, Bar No. 233185
LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
Telephone: 415.433.1940
Facsimile: 415.399.8490
E-Mail: mhedwards@littler.com;
plross@littler.com;
kowens@littler.com

Attorneys for Defendant
MIRANT CALIFORNIA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JERRY MITCHELL, EDDIE WILLIAMS, JR., EDWARD S. MEDINA, and DAVID WALTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIRANT CALIFORNIA, LLC, a Delaware Corp., and Does 1 to 50,<br><br>Defendants. | Case No. C 07-05847 PJH [ECF]<br><br>**DECLARATION OF LISA D. BATTLES IN SUPPORT OF DEFENDANT MIRANT CALIFORNIA, LLC'S OPPOSITIONS TO PLAINTIFFS' MOTION TO REMAND, REQUEST FOR FEES, AND MOTION TO DISMISS COUNTERCLAIM & DEFENDANT IBEW 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM FOR LACK OF JURISDICTION AND FAILURE TO JOIN NECESSARY OR PROPER PARTY**<br><br>Date: February 20, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom 3<br>Judge: Hon. Phyllis J. Hamilton<br><br>Complaint Filed: October 17, 2007<br>Trial Date: None |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

BATTLES DECLARATION                                CASE NO. C 07-05847 PJH

I, Lisa D. Battles, hereby declare and state:

1.  I have personal knowledge of the facts stated below. If called as a witness, I could and would testify as follows:

2.  Since 1999, Mirant California, LLC ("Mirant") has owned and operated power plants in San Francisco, California (the "Potrero Power Plant"); Antioch, California (the "Contra Costa Power Plant") and Pittsburg, California (the "Pittsburg Power Plant") (collectively the "Power Plants"). I have been the Human Resources Manager for the Power Plants since 1992. Before 1999, the Power Plants were owned and operated by PG&E, and I was employed by PG&E. I have been the Human Resources Manager for Mirant since it purchased the Power Plants from PG&E in 1999.

3.  Mirant produces and sells electricity when necessary to meet electricity demand. The Contra Costa and Pittsburg Power Plants produce electricity for only about thirty to sixty days per year. The remainder of the year, these Power Plants are fully staffed, but do not produce electricity. When the Power Plants are producing electricity, the machines cannot be shut down and must be continuously operated.

4.  IBEW Local 1245 (the "Union") is the exclusive bargaining representative of a unit of Mirant employees that consists of all individuals employed as Power Plant Technicians at the Contra Costa, Pittsburg and Potrero Power Plants.

5.  As the Human Resources Manager, my duties include negotiating with the Union for a collective bargaining agreement ("CBA") and interpreting and administering the CBA between Mirant and the Union.

6.  The current CBA between Mirant and the Union has been effective since November 1, 2005. A true and correct copy is attached as Exhibit 1.

7.  Mirant and the Union were also parties to an earlier CBA that became effective in 2000. The practices that the parties intended to be set forth in the CBA have been the practices since before Mirant purchased the Power Plants.

8.  Not all individuals who hold the job classification of Power Plant Technician are "shift employees" as defined by the CBA. Section 16.5 of the CBA defines the term "shift

1.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

BATTLES DECLARATION                                    CASE NO. C 07-05847 PJH

employee" as any employee who "works a job that is staffed with a rotating twenty-four (24) hour per day shift, on a seven (7) day a week basis, including holidays." Mirant does not consider all Power Plant Technicians to meet the definition of a "shift employee." As set forth in Section 16.2, many Power Plant Technicians have a regular work schedule that is only eight hours per day, Monday through Friday. The "shift employees" are those employees who regularly work twelve hour shifts. The term "shift employee" does not include Power Plant Technicians whose regular work schedule is only eight hours per day, regardless of whether those individuals work overtime or how much overtime they work.

9. All Power Plant Technicians, including "shift employees," are expected to take, and do take, meal breaks every day that are at least thirty minutes long. Employees are free to leave the premises during their meal breaks, except for occasions when the Power Plants are in start up or shut down of a unit that produces electricity, and the nature of the work prevents a few employees who work as operators in the control room from leaving. "Shift employees" receive <u>paid</u> meal breaks even though they are relieved of all duties and are free to leave the premises. Under Section 16.3 of the CBA, other employees in the bargaining unit receive <u>unpaid</u> meal breaks. All Power Plant Technicians also receive at least two fifteen minute rest breaks. In addition, they are free to take additional shorter breaks throughout the day, as needed. These practices existed before the first CBA was entered into between Mirant and the Union and are the practices that Mirant intended to set forth in the CBA.

10. Section 16.5 of the CBA states: "Time to consume meals for shift employees shall be considered as time worked." Mirant has never interpreted this language to mean that shift employees must or do perform any work while consuming meals. To the contrary, Mirant interprets the phrase "time worked" to mean that the parties have agreed that the duty free meal breaks of "shift employees" are <u>paid</u> rather than unpaid. Not only do "shift employees" receive duty free meal breaks, but they are also paid for the time that they are on break.

11. As stated above, all Power Plant Technicians are permitted to leave the premises during their meal breaks. Section 16.5 states that "[m]eals will be taken at the work station, or as directed by the Supervisor." Mirant has always interpreted this language to mean that

2.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

BATTLES DECLARATION                                          CASE NO. C 07-05847 PJH

such employees may take their meal breaks anywhere <u>unless</u> they are directed by their supervisors to remain in the plant. This would only occur if the nature of the work prevented an employee from leaving.

12. When the Power Plants are producing electricity, there are occasions that the nature of the work may prevent the very few Power Plant Technicians working as control room operators from being relieved of all duties during their thirty minute meal periods. Mirant intended and interprets Section 16.5 to constitute an on-duty meal period agreement should it be necessary for a control room operator to continue monitoring equipment during a meal break. However, even when the Power Plants are producing electricity, control room operators are required to take a duty free meal period as they are expected to ask other employees to relieve them. This has always been the practice at the Power Plants.

13. The Union may revoke the on-duty meal period agreement in Section 16.5 at any time. Section 24.1 of the CBA states: "The Company and the Union may mutually agree to amend or add to any provision of this Agreement during its term, provided that any such amendment or modification must be in writing . . . ." Mirant interprets this language to allow the Union to revoke the on-duty meal period agreement. The Union has requested changes to the language of the CBA in the past under this provision, and the requested modification was allowed.

14. The CBA also contains agreements regarding a second meal break. Pursuant to Section 17.8, Power Plant Technicians who are eight hour employees receive a second thirty minute meal break ("overtime meal break") when they work one-half or one hour of overtime. Power Plant Technicians who regularly work twelve hour shifts receive an overtime meal break when they work even fifteen minutes more than twelve hours. An employee who does not receive an overtime meal break receives a $13.00 allowance plus one-half hour of pay at one and one-half times the employee's regular hourly rate. This amount is greater than one hour of pay at all Power Plant Technicians' regular hourly rate.

15. It is Mirant's understanding that the Union waived a second thirty minute meal break after ten hours of work for Power Plant Technicians who regularly work twelve hour shifts. The Union agreed in the CBA that these employees qualify for an overtime meal only when

3.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

BATTLES DECLARATION                                             CASE NO. C 07-05847 PJH

they work more than twelve hours. The pattern and practice for these Power Plants has been this way for many years.

16. In addition, a Union Business Representative, Hunter Stern, told me, "it's always been our understanding that we waived the second meal." He was referring to the twelve hour shift workers. He told me this before this lawsuit was filed.

17. Mr. Stern also told me in an email dated October 29, 2007 that the parties could continue to "waive the second meal of a 12 hour shift, as is done currently." In an email dated October 30, 2007, Mr. Stern again acknowledged that the parties had an "ongoing practice of waiving the second meal due employees working 12 hour shifts under CA law." I have attached copies of these emails as Exhibit 2.

18. As stated above, all Power Plant Technicians do receive rest breaks throughout the day when they are relieved of all duties. The CBA does not set forth a pattern or practice of requiring Power Plant Technicians to perform duties during their rest breaks. Section 16.7 of the CBA states that "[e]ach employee shall be allowed a ten-minute paid break to be taken at his or her workstation . . . ." This language does not mean that employees must remain at their work stations to monitor and respond to alarms. Employees are relieved of all duties and are not required to perform any work during rest breaks. Mirant has always interpreted Section 16.7 to simply mean that employees may not leave the plant during rest breaks. There are several break areas at each of the Power Plants, including a kitchen, restrooms and an outdoor patio, where employees may go during breaks without leaving the plant.

19. I strongly believe that the Union is responsible for this class action being brought to challenge the interpretation and legality of the CBA. Before this lawsuit was filed, the Union came to me and alleged that the practices that have been followed for many years under the CBA violated California law. The Union asked Mirant for a proposed settlement, which the Company refused to provide because it has always provided employees with meal and rest breaks.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

4.

BATTLES DECLARATION                                   CASE NO. C 07-05847 PJH

1 | The Union then told me it would be talking with a lawyer. This lawsuit was filed shortly after these
2 | discussions.
3 |     I declare under penalty of perjury under the laws of the State of California and the
4 | United States of America that the foregoing is true and correct. Executed this 30th day of January,
5 | 2008 at Landover, Maryland.

*[signature: Lisa Battles]*

LISA D. BATTLES

---

BATTLES DECLARATION     5.     CASE NO. C 07-05847 PJH