1   PHILIP C. MONRAD (State Bar No. 151073)
    pmonrad@leonardcarder.com
2   JENNIFER  L. MARSTON (State Bar No. 250018)
    jmarston@leonardcarder.com
3   LEONARD CARDER, LLP
    1330 Broadway, Suite 1450
4   Oakland, CA  94612
    Telephone:     (510) 272-0169
5   Facsimile:     (510) 272-0174
6
7   Attorneys for Counter-Defendant IBEW 1245
8
9
                    UNITED STATES DISTRICT COURT
10                 NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION
11
12
    JERRY MITCHELL, EDDIE WILLIAMS,      )   Case No. C 07-05847 PJH
13  JR., EDWARD S. MEDINA, and DAVID     )
    WALTERS, individually and on behalf of )   COUNTER-DEFENDANT IBEW LOCAL
14  all others similarly situated,          )   1245's REPLY TO DEFENDANT
                   Plaintiffs,           )   MIRANT'S OPPOSITION TO LOCAL
15  v.                                   )   1245's MOTION TO DISMISS OR STRIKE
                                         )   COUNTERCLAIM FOR LACK OF
16                                       )   JURISDICTION AND FAILURE TO JOIN
    MIRANT CALIFORNIA, LLC, a            )   NECESSARY OR PROPER PARTY
17  Delaware Corp., and Does 1 to 50,    )
           Defendants.                   )   (Fed. Rules Civ. Proc. 12(b)(1), 19 & 20)
18  _____  )
19                                       )
    MIRANT CALIFORNIA, LLC, a            )
20  Delaware Limited Liability Company,  )
           Counter-Claimant,            )   Date: February 20, 2008
21  v.                                   )   Time: 9:00 am
                                         )   Courtroom: 3
22                                       )   Judge: Honorable Phyllis Hamilton
    JERRY MITCHELL, EDDIE WILLIAMS,      )
23  JR., EDWARD S. MEDINA, DAVID         )
    WALTERS and THE INTERNATIONAL        )
24  BROTHERHOOD OF ELECTRICAL            )
    WORKERS LOCAL 1245,                  )
25         Counter-Defendants.           )
    _____  )
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I. Mirant fails to establish Supplemental Jurisdiction because its attempt to generate disputed CBA terms focuses only on its Affirmative Defenses, and even those alleged disputes fail to "reach a reasonable level of credibility." .................................... 2

        A. Section 301 preemption applies only when the CBA must be interpreted to resolve Plaintiffs' claim – not where, as here, Mirant alleges the CBA must be interpreted only to resolve Mirant's Affirmative Defenses. ............... 2

        B. Mirant has identified no disputed CBA language which requires interpretation. ....................................................................................... 3

            1. There is no dispute about the term "shift employee" in Section 16.5 .... 3

            2. There is no credible dispute about the terms "hours worked" or "work station" in Section 16.5. ........................................................... 4

                a. "Hours worked." ................................................................... 4

                b. "Work station." .................................................................... 4

            3. There is no need to interpret the CBA to determine if it constitutes an on-duty meal period agreement that complies with California law. . 5

            4. There is no need to interpret the CBA to determine if the Union waived a second meal period. ........................................................... 7

            5. There is no need to interpret the CBA regarding its rest break provisions. .......................................................................................... 7

    II. Mirant's claim for original federal jurisdiction over its Counterclaim entirely ignores the precedent cited by Local 1245 demonstrating that there is no original jurisdiction. ...... 8

III. Even if supplemental jurisdiction were present, it should be declined. .............................. 9

        A. This is not a compulsory counterclaim. .................................................. 9

        B. This is not "the only possible forum for this claim." ..................................... 10

        C. Judicial economy would not be promoted by exercising supplemental jurisdiction. ........................................................................................ 10

        D. Declining supplemental jurisdiction would not risk inconsistent judgments. 11

        E. Mirant ignores the cases cited by Local 1245, holding that Unions are not necessary and proper parties to a lawsuit claiming that their CBAs were implicated in violations of independent state or local wage and hour laws. .. 11

        F. Mirant's allegation that Local 1245 "instigated" this lawsuit is irrelevant. ... 12

CONCLUSION .................................................................................................................. 13

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Acree v. Tyson Bearing Co.*
4     2002 WL 463262 (2002, W.D. Ky) ............................................................... 11

5

*Allied oil Workers Union v. Ethyl Corp*
6     341 F.2d 47 (5th Cir. 1965) ............................................................................... 9

7

*Associ. Gen. Contractors v. Ill. Conf. Teamsters*
8     486 F.2d 972 (5th Cir. 1962) ............................................................................. 9

9

*Burnside v. Kiewitt Pacific Corp.*
10    491 F.3d 1053 (9th Cir. 2007) ....................................................................... 4, 5

11

*Cramer v. Consolidated Freightways, Inc.*
12    255 F.3d 683 (9th Cir. 2001) .................................................................... passim

13

*Daily v. Federal Insurance Co.*
      2005 WL 14734 (N.D. Cal. 2005) .................................................................. 12

14

*Dunlop v. Beloit College*
15    411 F.Supp. 398 (W.D. Wis. 1976) ........................................................... 12, 13

16

*Forsberg v. Pacific N.W. Bell Telephone Co.*
17    622 F.Supp. 1147 (D.Ore., 1985) ................................................................... 13

18

*Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*
19    533 U.S. 826 (2002) ......................................................................................... 9

20

*John S. Griffith Constr. Co. v. United Brotherhood of Carpenters & Joiners,*
21    785 F.2d 705, 708-09 (9th Cir. 1986)……………………………………………………9

22

*Murphy v. Kenneth Cole Productions*
      40 Cal.4th 1094 (2007)……………………………………………………….....12

23

*Scott v. City of New York*
24    340 F.Supp. 2d 371 (S.D. N.Y, 2004).......................................................... 13, 14

25

*Textron Lycoming Reciprocating Engine Dis., AVCO Corp. v. UAW*
26     523 U.S. 653 (1998)......................................................................................... 10

27

*Valles v. Ivy Hill Corp.*
28     410 F.3d 1071 (9th Cir. 2005) ........................................................................... 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Visa U.S.A., Inc. v. First Data Corp.*
  2006 WL 516662 (N.D. Cal. 2006) ..................................................................... 3, 4

*Zavala v. Scott Brothers Dairy*
  143 Cal.App.4[th] 585 (2006) ............................................................................ 12


**Statutes and Rules**


Fed Rule Civ. Proc., 13(a) ................................................................................. 9

1

2

**INTRODUCTION**

3        Mirant's opposition to Local 1245's motion to dismiss fails utterly to satisfy its burden of

4   showing that jurisdiction exists over Mirant's Counterclaim.  Mirant devotes most of its

5   Opposition to a futile effort to generate disputes about the provisions in Local 1245's CBA with

6   Mirant, in hopes of bootstrapping this entirely state law litigation into a federal case by virtue of

7   LMRA Section 301 preemption.  Mirant fails in this effort by proposing interpretations of CBA

8   terms to mean exactly the opposite of what they clearly say.  Ninth Circuit precedent prohibits

9   such creativity, instead requiring that asserted CBA disputes offered to justify Section 301

10  preemption "must reach a reasonable level of credibility."  *Cramer v. Consolidated Freightways,*

11  *Inc.,* 255 F.3d 683, 692 (9th Cir. 2001).  Mirant's asserted disputes fall far below this level.

12  Accordingly, Mirant's attempt to fabricate federal jurisdiction – either original or supplemental –

13  fails, and the Counterclaim should be dismissed.

14        Mirant is equally unable to demonstrate why – if supplemental jurisdiction were found –

15  this Court should exercise its discretion and accept supplemental jurisdiction over Mirant's

16  Counterclaim.  The Counterclaim is entirely redundant of Mirant's affirmative defenses, and

17  adds nothing to the litigation other than to add a superfluous party – Local 1245 – and a

18  proliferation of pleadings.  Neither the interests of judicial economy nor fairness justify such a

19  result.  Indeed, Mirant entirely ignores case law discussed extensively in Local 1245's opening

20  brief where numerous courts in similar circumstances have refused to drag labor unions into

21  litigation filed by union members alleging violations of independent state or federal employment

22  statutes.

23  //

24  //

25  //

26  //

1

**ARGUMENT**

2

I.  Mirant fails to establish Supplemental Jurisdiction because its attempt to generate

3

disputed CBA terms focuses only on its Affirmative Defenses, and even those alleged

4

disputes fail to "reach a reasonable level of credibility."

5

6

        Mirant's Opposition recognizes that the only conceivable claim for this Court's

7

jurisdiction over its Counterclaim is supplemental jurisdiction, based on LMRA Section 301

8

preemption of the underlying action.  But Mirant's claim for supplemental jurisdiction fails for

9

two fundamental reasons.

10

11

**A.  Section 301 preemption applies only when the CBA must be interpreted to resolve
Plaintiffs' claim – not where, as here, Mirant alleges the CBA must be interpreted only to
resolve Mirant's Affirmative Defenses.**

12

13

        Local 1245 will demonstrate below that Mirant's claims of disputed CBA terms requiring

14

interpretation are meritless, at best.  But as a threshold matter, it is important to note that

15

Mirant's Opposition identifies only two reasons why supposedly disputed CBA provisions must

16

be interpreted, both of which relate exclusively to Mirant's affirmative defenses.

17

            (1) the requirements of an exemption provided by state law (on-duty meal period
            agreement) are met by the CBA, and (2) Mirant and the Union agreed in the CBA to
            waive the second meal period for certain employees.

18

19

20

Mirant Opposition to Local 1245 Motion ("Opp.") at 10:20-22.

21

        Those are Affirmative Defenses, pure and simple.  *See* Mirant Answer, 8th & 9th

22

Affirmative Defenses.  Neither of those issues is an element of any of Plaintiffs' claims.

23

        But it is well settled that "in order for complete preemption [under LMRA Section 301]

24

to apply, *the need to interpret the CBA must inhere in the nature of the Plaintiffs' claim*."

25

*Valles v. Ivy Hill Corp.,* 410 F.3d 1071, 1076 (9th Cir. 2005), emphasis added.

26

        Thus, Mirant's attempt to generate disputed CBA terms relevant only to Mirant's

27

affirmative defenses is fundamentally misplaced.  Even if Mirant's asserted CBA disputes were

28

credible – which they are not – LMRA Section 301 preemption would not attach to the

---

1    underlying *Plaintiffs'* claims and there would be no "hook of original jurisdiction on which to

2    hang [supplemental jurisdiction.]"  *Visa U.S.A., Inc. v. First Data Corp.,* 2006 WL 516662, *7

3    (N.D. Cal. 2006).

4

5    **B.  Mirant has identified no disputed CBA language which requires interpretation.**

6            Mirant's claim for supplemental jurisdiction rests entirely on its claim that  "The

7    CBA . . . Contains Extensive Language Regarding Meal Periods and Rest Breaks That Is

8    Disputed."  Opp. at 4:4.

9            The standard for evaluating these allegedly "numerous disputes" is well settled:

10           [A]lleging a hypothetical connection between the claim and the terms of the CBA is not
            enough to preempt the claim. . . .  A creative linkage between the subject matter of the
11           claim and the wording of a CBA provision is insufficient; rather *the proffered
            interpretation argument must reach a reasonable level of credibility*.

12
     *Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683, 691-92 (9th Cir. 2001), emphasis
13   added.

14           Mirant's asserted "numerous disputes" fall far below a "reasonable level of credibility."

15

16           **1.  There is no dispute about the term "shift employee" in Section 16.5**

17           Mirant persists in claiming that the term "shift employee" must be interpreted to

18   adjudicate Plaintiffs' claims.  Specifically, Mirant asserts that "Plaintiffs claim[ ] it includes all

19   Power Plant Technicians (Compl., ¶¶ 12, 21), while Mirant submits that it means only those few

20   Power Plant Technicians who regularly work 12 hour shifts."  Mirant Opposition to Plaintiffs'

21   Motion to Dismiss/Remand ("Remand Opp.") at 9, fn.3.

22           But nothing in the Complaint states or even suggests that Plaintiffs claim *all* Power Plant

23   Technicians are "shift employees."  To the contrary, the Complaint only claims relief for those

24   Power Plant Technicians who "worked 12 hour shifts."  Compl., ¶¶ 19, 48.  And in their

25   Remand Motion, Plaintiffs confirm that "only employees working 12 hours shifts are the Class

26   Members . . .   only the Class Members work the 12 hour shifts."  Plaintiffs' Motion to

27   Dismiss/Remand ("Remand Motion") at 8:5.

28

1        Thus, the parties *agree* on the meaning of the term "shift employee."  The only dispute on

2   that score is whether there are "few" shift employees, as Mirant contends, or whether there are

3   many.  That is manifestly not a contract interpretation question, but a question of *fact* which can

4   be proven or disproven simply by reviewing Mirant's employment records, without any

5   evaluation of the CBA's terms.

6

7        **2. There is no credible dispute about the terms "hours worked" or "work station" in Section 16.5.**

8

9        Mirant's attempt to identify other disputed contract terms in Section 16.5 is even less

10  helpful to Mirant in meeting its burden of showing that Plaintiffs' claims are ***substantially dependent on analysis of a [CBA]*.***"  *Burnside v. Kiewitt Pacific Corp.*  491 F.3d 1053, 1059

11  (9th Cir. 2007), emphasis added.

12

13                                 **a.  "Hours worked."**

14       Mirant refers to section 16.5 of the CBA, which provides in part: "Time to consume

15  meals for shift employees shall be considered as *time worked."*  Opp. at 4:19, emphasis added by

16  Mirant.  Mirant notes that Plaintiffs cite this as evidence that shift employees are denied off-duty

17  meal periods.  *Id*. at 4:21.

18       Mirant, by contrast, proposes an alternative interpretation that "the duty free meal periods

19  of 'shift employees' are *paid* rather than *unpaid*.  Not only do 'shift employees' receive duty free

20  meal breaks, but they are also paid their regular hourly rate for the time they are on break."  *Id.*

21  at 4:26 – 5:2, emphasis added by Mirant.  In short, Mirant proposes that "time worked" does not

22  mean "time *worked*" at all.  Rather, "time *worked*" means "time *not worked."*

23       This novel claim of employer largesse is, indeed, a "creative linkage between the subject

24  matter of the claim and the wording of a CBA provision."  *Cramer*, 255 F.3d at 692.  And it

25  manifestly does not "reach a reasonable level of credibility."

26

27                               **b.  "Work station."**

28       Mirant's claim that the term "work station" requires interpretation is equally specious.

    Specifically, Section 16.5 provides that "[m]eals *will be taken at the work station* or as directed

---

1    by the Supervisor." Opp. at 5:5, emphasis added. Plaintiffs cite this as evidence that shift

2    employees are "required to remain at their work stations to monitor and respond to alarms."

3    Remand Motion at 1.

4        Mirant, by contrast, "claims that it interprets the term 'work stations' to mean *the entire*

5    *plant* . . . Mirant has always interpreted this language to mean that such employees may take

6    their meal breaks *anywhere they want* and find convenient. . . ." Opp. at 5:12, emphasis added.

7    In short, Mirant claims the phrase "[m]eals will be taken at the work station" means precisely the

8    opposite – meals may be taken anywhere the employee wants." This proposed interpretation is

9    too "creative" to warrant response, other than to note that it too fails to "reach a reasonable level

10   of credibility." *Cramer*, 255 F.3d at 692.

11

12       **3. There is no need to interpret the CBA to determine if it constitutes an on-duty meal period agreement that complies with California law.**

13

14       Mirant goes on to claim that "Section 16.5 must also be interpreted because Mirant

15   contends the CBA contains an *on duty meal period agreement* that complies with California

16   law." Opp. at 11:20, emphasis in original. Again, this claim does not identify a disputed

17   contract term which "reach[es] a reasonable level of credibility."

18       The "California law" to which Mirant refers is Section 11(c) of the applicable IWC Wage

19   Order which allows a *lawful* on-duty meal period pursuant to a written agreement, if – in

20   Mirant's own words –the following requirements are met: "[1] the *nature of the work* prevents an

21   employee from being relieved of all duty and the [2] written agreement states that *the employee*

22   *may, in writing, revoke the agreement at any time*." Opp. at 10:5, citing IWC Wage Order 1, §

23   11(c), emphasis added.

24       The issue for Section 301 preemption and this motion is not whether the CBA satisfies

25   these two requirements, but whether the CBA must be *interpreted* -- or merely *consulted* -- to

26   determine if it satisfies these requirements. *Burnside,* 491 F.3d at 1059. There is no dispute that

27   the CBA need not be *interpreted* to determine whether either of these requirements are met.

28        First, whether "the *nature of the work* prevents an employee from being relieved of all

     duty" is manifestly a question of *fact*, not contract interpretation. The "nature of the work" is

1    determined by evidence of what happens on the shop floor, not what the parties say about it in a

2    CBA.  Indeed, Mirant does not even attempt to identify any CBA term which must be interpreted

3    to establish "the nature of the work" requirement, but rather offers only factual testimony from

4    Ms. Battle on this point.  *See* Remand Opp. at 10:10.  Her testimony would be appropriate for a

5    summary judgment motion, but here it only underscores that this is a factual question of CBA

6    interpretation.

7            The second requirement – that a written agreement must state that *the employee may, in*

8    *writing, revoke the agreement at any time*" – requires *reference to*, but certainly does not require

9    *interpretation of* the CBA.  Mirant's position on this requirement is as follows:

10           Mirant interprets the CBA as allowing the Union to revoke the on-duty meal
             period . . . at any time, by virtue of CBA Section 24.1 . . . .  That provision states:
11           "The *Company and the Union may mutually agree* to amend or add to any
             provision of this Agreement . . . "  Mirant submits this language allows the Union
12           to revoke the on-duty meal period Agreement.

13           Resolving the question of whether Sections 16.5 and 24.1 together constitute a
14           valid on-duty meal period agreement is unquestionably necessary . . .

15    Remand Opp. at 11:12-18, emphasis added.

16           It is true enough that this question must be "*resolved,*" but for purposes of this motion,

17    Mirant must go further and show that resolving this question requires *interpretation* of the CBA.

18    It does not.  The unequivocal language of Section 24.1 needs no interpretation.  It allows "[t]he

19    *Company and the Union [to] mutually agree*" to amend any provision in the CBA.  Whether

20    Section 24.1 satisfies the requirement that *the employee may revoke the agreement at any time*"

21    is a pure question of law, requiring no interpretation of the CBA.  The answer to that question is

22    obvious, but it doesn't matter for purposes of the present motion.  What matters is that Mirant

23    has again failed to identify a contract interpretation dispute that "reach[es] a reasonable level of

24    credibility."  *Cramer*, 255 F.3d at 692.

25    //

26    //

27    //

28

1

**4. There is no need to interpret the CBA to determine if the Union waived a**

2

**second meal period.**

3

Mirant claims in entirely conclusory terms that "it will be essential to Plaintiffs' claims to

4

determine whether an agreement exists between Mirant and the Union that waives the second

5

meal period for employees with 12 hour shifts when they work more than 10, but not more than

6

12, hours." Opp. at 12:16. But Mirant identifies no CBA language on this issue which is

7

disputed, ambiguous or otherwise in need of interpretation. Instead, Mirant refers – in equally

8

conclusory terms – to "a long pattern and practice of waiving the second meal period." Opp. at

9

12:20. But the parties' "pattern and practice," by itself, is hardly a question of contract

10

interpretation; It is a question of *fact*. The parties' "pattern and practice" would only be relevant

11

to aid the Court in interpreting ambiguous contract terms, but Mirant has identified no such

12

terms. Indeed, Mirant's reference to the parties' "pattern and practice" only serves to underscore

13

that resolving these issues will require discovery and testimony of *facts*, with *reference to*, but

14

certainly not *interpretation of* the terms of this CBA.[1]

15

**5. There is no need to interpret the CBA regarding its rest break provisions.**

16

Mirant's attempt to generate a dispute over Section 16.7 of the CBA, dealing with rest

17

breaks, is also unavailing. Section 16.7 states: "[e]ach employee shall be allowed a ten-minute

18

paid break *to be taken at his or her work station* . . . " Emphasis added. Mirant notes that

19

Plaintiffs offer this as evidence that they are not allowed to take off-duty rest breaks. Opp. at

20

13:1. By contrast, Miant claims it "has always interpreted this language as providing for rest

21

breaks . . . which can be taken *anywhere* in the plant." Opp. at 13:3, emphasis in original.

22

23

[1]   Mirant offers two hearsay email messages from a Local 1245 business representative,
which according to Mirant, support its claim that "The Union has also told Mirant that it has

24

always been the Union's understanding that it waived a second meal period for 12 hour shift
workers . . ." Opp. at 7:1. But Mirant provides no other evidence of any such waiver. More

25

important, Mirant points to no contract term which must be *interpreted*, to determine whether the
Union effectively waived a second meal period for 12 hour shift workers.

26

LMRA Section 301 preemption arises when *contract terms* must be *interpreted* – not
when email statements of union business agents need to be interpreted. Moreover, this

27

particular email message (noting an "ongoing practice of waiving the second meal period," (*id*) is
unambiguous and requires no interpretation at all. Whether it is true and accurate may require

28

*factual* discovery, but such inquiry hardly triggers Section 301 preemption.

1   Like Mirant's claim about the term "work station" in Section 16.5, this proposed interpretation
2   also turns the plain language of this contract provision on its head, by claiming it means exactly
3   the opposite of what it says.  This alleged contract dispute does not "reach[ ] a reasonable level
4   of credibility" required to trigger LMRA Section 301 preemption.  *Cramer*, 255 F.3d at 692.

5
6   **II.  Mirant's claim for original federal jurisdiction over its Counterclaim entirely ignores
    the precedent cited by Local 1245 demonstrating that there is no original jurisdiction.**

7
8           In three paragraphs commencing at page 17 of its brief, Mirant takes a half-hearted stab
9   at asserting that "The Court also has original jurisdiction over the Counterclaim under Section
10  [301] of the LMRA."  Opp. at 16:19.  This assertion is clearly false, for two reasons that were
11  expressly made in Local 1245's motion, which have nothing to do with LMRA Section 301
12  jurisdiction.  Mirant blithely ignores both of these reasons in its opposition.

13          First (as Local 1245 explained at page 5 of its motion) a Counterclaim, even one raising a
14  clear question of federal law, does not itself "arise under" federal law.  *Holmes Group, Inc. v.
15  Vornado Air Circulation Systems, Inc.*, 533 U.S. 826, 831 (2002).  Thus, "[i]f the complaint fails
16  to state a claim 'arising under' federal law, the fact that the counterclaim asserts such a claim
17  does not give the court subject matter jurisdiction over the action."  *Wm. Schwarzer*, *et al*,
18  Federal Civil Procedure Before Trial, ¶ 8.297, citing *Holmes*.  Mirant makes no response at all to
19  this settled rule, which flatly refutes Mirant's assertion, quoted above, for original jurisdiction
20  over the Counterclaim.

21          Second (as Local 1245 explained at pages 10-11 of its motion), a claim seeking only
22  declaratory relief about the scope or validity of a collective bargaining agreement, without a
23  claim of *breach* of that agreement does not trigger jurisdiction under LMRA Section 301.
24  *Textron Lycoming Reciprocating Engine Dis., AVCO Corp. v. UAW*, 523, U.S. 653 (1998).
25  Mirant's only asserted basis for original jurisdiction over the Counterclaim is Section 301, but its
26  request for declaratory relief is *not* accompanied by any claim that the CBA was breached.

27          Nevertheless, Mirant states: "Numerous decisions hold that Section 301 confers federal
28  courts with jurisdiction to issue a declaratory judgment as to the construction or effect of a
    collective bargaining agreement."  Opp. at 17:10.  Mirant ignores Local 1245's citation to the

---

1    Supreme Court's 1998 decision in *Textron,* and the two decisions following *Textron* cited in

2    Local 1245's motion.  Instead,  Mirant cites three decisions issued in 1986, 1973 and 1965 (Opp.

3    at 17) all well *before Textron*.  Thus, if these decisions conflicted with *Textron*, they would be

4    overturned by it.  But in fact, all three of them dealt with requests for declaratory relief regarding

5    a CBA*, in conjunction with claims of breach of the CBA*.[2]  None of them dealt with the situation

6    present here and in *Textron* – a request for declaratory relief about the scope and validity of a

7    CBA *without any claim for breach of that CBA*.

8        In sum, Mirant's Opposition completely ignored two well settled rules noted by Local

9    1245, each of which definitively establish that there is no original federal jurisdiction over

10    Mirant's counterclaim.

11    **III. Even if supplemental jurisdiction were present, it should be declined.**

12

13        Mirant does not dispute that supplementary jurisdiction is discretionary.  Instead, Mirant

14    advances a series of meritless arguments why this Court should exercise its discretion and assert

15    supplemental jurisdiction over this purely state law claim.

16        **A.  This is not a compulsory counterclaim.**

17        Mirant first argues that "both the Complaint and the Counterclaim relate to Mirant's

18    compliance with the meal and rest period provisions of the CBA.  As such, there is no question

19    that the Counterclaim is compulsory."  Opp. at 9:13.  This assertion is meritless because it fails

20    the first requirement of Rule 13(a), as quoted by Mirant in its Opposition: "A counterclaim is

21    compulsory if it '(A) arises out of the transaction or occurrence that is the subject matter of the

22    opposing party's claim . . . "  Opp. at 9:10, quoting Fed Rule Civ. Proc., 13(a).

23        Plaintiffs and Local 12454 are the "opposing parties" to Mirant's Counterclaim, and that

24    Counterclaim manifestly does *not* "arise out of the transaction or occurrence that is the subject

25    matter of their claim." *Id*.  For starters, Local 1245 has no claim in this litigation at all.  Local

26

27    _____

28        [2]  *See John S. Griffith Constr. Co. v. United Brotherhood of Carpenters & Joiners*, 785
    F.2d 705, 708-09 (9th Cir. 1986); *Assoc. Gen. Contractors v. Ill. Conf. Teamsters*, 486 F.2d 972,
    974 (5th Cir. 1962); *Allied Oil Workers Union v. Ethyl Corp.,* 341 F.2d 47, 48 (5th Cir. 1965).

1    1245's interest is in implementing its CBA to the extent the terms of that CBA do not conflict

2    with state or federal law.

3        Nor does the Counterclaim – which focuses solely on the CBA – "arise out of the

4    transaction or occurrence that is the subject of *Plaintiffs'* claims.  Those claims are based entirely

5    on independent state law, irrespective of the CBA, and they are either proven or disproven

6    without regard to provisions in the CBA.  In short, Mirant's Counterclaim fails the first and most

7    fundamental test of a compulsory counterclaim.

8        **B.  This is not "the only possible forum for this claim."**

9

10        Mirant asserts that "the interest of fairness would not be promoted by declining

11    jurisdiction because this is the only possible forum for this claim.  If Defendant were to file this

12    claim against the Union in state court, the claim would be preempted by Section 301 because it

13    requires interpretation of [the CBA]."  Opp. at 14: 13.   This is manifestly false, as demonstrated

14    thoroughly above.

15        **C.  Judicial economy would not be promoted by exercising supplemental**
     **jurisdiction.**

16

17        Mirant asserts that "Judicial economy is also best promoted by addressing the similar

18    disputes made by Plaintiffs and the Union regarding the proper interpretation of the CBA in a

19    single lawsuit."  Opp. at 14:19.  But that "single lawsuit" is already fully before the Court in the

20    form of Plaintiffs' Complaint and Mirant's defenses.   Mirant asserts the Local 1245 CBA as an

21    affirmative defense to independent state law claims.  Mirant's Counterclaim requests declaratory

22    relief seeking exactly what Mirants seeks in its Affirmative Defenses.  As this Court found in

23    *Daily v. Federal Insurance Co.,* 2005 WL 14734, *6 (N.D. Cal. 2005), the Counterclaim is

24    "redundant and a decision on the merits of Plaintiff's claim will render the request for

25    declaratory judgment moot."  In sum, exercising supplemental jurisdiction over Mirant's

26

27

28

1    redundant request for declaratory relief would hardly promote judicial economy.  All it would

2    do is proliferate the pleadings and add a superfluous party—Local 1245– to this litigation.[3]

3

4        **D.  Declining supplemental jurisdiction would not risk inconsistent judgments.**

5        Mirant asserts that "absent joinder of the Counterclaim, the Union would not be bound by

6    the judgment and there is a risk of inconsistent obligations."  Opp. at 14:23.  This is paranoia, at

7    best.  As Local 1245 has repeatedly affirmed, its only interest in this matter is in implementing

8    its CBA consistently with state and federal law.   Local 1245 is clearly not going to pursue a

9    judgment in some other forum inconsistent with the judgment that will be rendered in this case.

10   Local 1245 discussed, at page twenty of its Memorandum, the ruling in *Dunlop v. Beloit College*,

11   411 F.Supp. 398, (W.D. Wis. 1976), in its opening papers, but Mirant makes no mention of

12   *Dunlop* in its Opposition. Accordingly, it is undisputed that the following ruling in *Dunlop*

13

14   applies here as well:

15

16        Were the Union to bring suit against defendant to challenge the payment of higher wages
          . . . after a judicial determination that defendant was obligated to equalize its wage rates,
17        such a suit would have to be characterized as frivolous.  The risk of being a party to a
          frivolous lawsuit is not the "substantial risk [of inconsistent judgments]" contemplated by
18        Rule 19.

19   *Id*., 411 F.Supp. at 401; *accord*, *Acree v. Tyson Bearing Co.,* 2002 WL 463262, *5 (W.D. Ky
20   2002); *Forsberg v. Pacific N.W. Bell Telephone Co.*, 622 F.Supp. 1147 F.Supp. 1147, 1150 (D.
     Ore.  1985).
21

22       **E.  Mirant ignores the cases cited by Local 1245, holding that Unions are not
     necessary and proper parties to a lawsuit claiming that their CBAs were implicated in
23   violations of independent state or local wage and hour laws.**

24       Mirant also ignores the other cases cited by Local 1245 holding that a labor union is not a

25   necessary party to a lawsuit by union members challenging an employer's wage payments (or

26

27   lack thereof) made pursuant to a CBA.  *See* Local 1245 Mem. In Support of Motion to Dismiss

28        [3]  If information held by Local 1245 becomes relevant to Plaintiffs' claims or Mirant's
     defenses, that information can be gained through third party discovery.

at 19-21.  For example, Mirant does not even attempt to distinguish the decision in *Scott v. City*

*of New York*, 340 F.Supp.2d 371 (S.D. N.Y. 2004), wherein Plaintiffs claimed that their wage

payments, paid pursuant to a CBA, violated the FLSA.  The court declined to join as a party the

labor unions which negotiated and signed the CBA, ruling: "defendants have failed to establish

that the Unions are "necessary" under Rule 19(a)(1) . . . because Plaintiffs seek only one form

of relief – monetary damages.  This relief can be afforded absent joinder by the labor unions."

*Id*., 340 F.Supp.2d at 401.  The same analysis applies in this case, and Mirant's failure to even

address this decision indicates there is no basis for ruling otherwise here.

### F.  Mirant's allegation that Local 1245 "instigated" this lawsuit is irrelevant.

Mirant repeatedly claims that supplementary jurisdiction should be exercised over its

Counterclaim because – Mirant claims – Local 1245 "instigated this lawsuit."  In making this

assertion, Mirant seems to suggest Local 1245 did something inappropriate and should be

brought into this litigation as punishment for its conduct, which is not a permissible reason

under any reading of Rule 19.  Opp. at 7:5, 14:19.  Mirant's allegations are factually distorted,

but Local 1245 has not responded to this allegation and will not do so here, because it is entirely

irrelevant. A labor union is, of course, free to address with a signatory employer claims that

their CBA does not comport with independent state wage and hour requirements—particularly

when judicial developments in state law clarify such requirements.[4] A labor union is also, of

course, free to refer its members to counsel to explore filing a lawsuit outside the collective

bargaining process – especially when, as here, the issue concerns compliance with independent,

---

[4] *See, e.g., Murphy v. Kenneth Cole Productions,* 40 Cal.4th 1094 (2007)(extra hour of pay for missed meal periods, pursuant to Cal. Labor Code § 226.7 is a "wage," not a "penalty" and hence subject to 3-year statute of limitations); *Zavala v. Scott Brothers Dairy*, 143 Cal.App.4th 585 (2006) (state rest break requirements not waivable in CBA, or subject to mandatory CBA arbitration).

1   nonwaivable statutory rights that protect individual workers, whether working under a CBA or

2   not.

3
4           Nothing in such entirely appropriate activities provides any justification for adding a

5   labor union to litigation which union members choose to pursue on their own behalf, outside of

6   the collective bargaining process.  Dragging the union into such litigation would serve only to

7   add a superfluous party and unnecessarily complicate the litigation.

8           In sum, there is no good reason why this Court should exercise its discretion to assert

9
10  supplemental jurisdiction over Mirant's Counterclaim, and there are compelling reasons why it

11  should not do so.

12                                    **CONCLUSION**

13          Mirant's Opposition to Local 1245's motion to dismiss fails to refute the numerous

14  compelling reasons why Mirant's Counterclaim against Local 1245 should be dismissed – both

15  for lack of original or supplementary jurisdiction, and in the alternative because supplementary

16  jurisdiction should not be exercised.  Local 1245 therefore respectfully requests that its motion to

17  dismiss be granted, and that the Counterclaim be dismissed, with prejudice.

18

19                                  Respectfully Submitted,

20  Dated:  February 6, 2008        LEONARD CARDER, LLP

21

22                                  By:   /s/ Philip C. Monard____
                                    PHILIP C. MONRAD
23                                  Counsel for Counterclaim-Defendant
24                                  IBEW Local 1245

25

26

27

28

1

# TABLE OF CONTENTS

2

3   INTRODUCTION .................................................................................................... 1

4   ARGUMENT ......................................................................................................... 2

5      I. Mirant fails to establish Supplemental Jurisdiction because its attempt to generate
          disputed CBA terms focuses only on its Affirmative Defenses, and even those alleged
6         disputes fail to "reach a reasonable level of credibility." ...................................... 2

7         A. Section 301 preemption applies only when the CBA must be interpreted
             to resolve Plaintiffs' claim – not where, as here, Mirant alleges the CBA
8            must be interpreted only to resolve Mirant's Affirmative Defenses. ............... 2

9         B. Mirant has identified no disputed CBA language which requires
             interpretation. ...................................................................................... 3

10           1. There is no dispute about the term "shift employee" in Section 16.5 .... 3
             2. There is no credible dispute about the terms "hours worked" or
11              "work station" in Section 16.5. ............................................................ 4
12              a. "Hours worked." ...................................................................... 4
                b. "Work station." ....................................................................... 4
13           3. There is no need to interpret the CBA to determine if it constitutes
                an on-duty meal period agreement that complies with California law. . 5
14           4. There is no need to interpret the CBA to determine if the Union
15              waived a second meal period. ............................................................... 7
             5. There is no need to interpret the CBA regarding its rest break
16              provisions. ........................................................................................ 7

17    II. Mirant's claim for original federal jurisdiction over its Counterclaim entirely ignores
          the precedent cited by Local 1245 demonstrating that there is no original jurisdiction. ...... 8

18  III. Even if supplemental jurisdiction were present, it should be declined. .............................. 9

19        A. This is not a compulsory counterclaim. ..................................................... 9

20        B. This is not "the only possible forum for this claim." ..................................... 10

21        C. Judicial economy would not be promoted by exercising supplemental
             jurisdiction. .......................................................................................... 10

22        D. Declining supplemental jurisdiction would not risk inconsistent judgments. 11

23        E. Mirant ignores the cases cited by Local 1245, holding that Unions are
             not necessary and proper parties to a lawsuit claiming that their CBAs were
24           implicated in violations of independent state or local wage and hour laws. .. 11

25        F. Mirant's allegation that Local 1245 "instigated" this lawsuit is irrelevant. ... 12

26  CONCLUSION ....................................................................................................... 13

27

28

---

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Acree v. Tyson Bearing Co.*
4   2002 WL 463262 (2002, W.D. Ky) ................................................................ 11

5

*Allied oil Workers Union v. Ethyl Corp*
6   341 F.2d 47 (5th Cir. 1965) ......................................................................... 9

7

*Associ. Gen. Contractors v. Ill. Conf. Teamsters*
8   486 F.2d 972 (5th Cir. 1962) ...................................................................... 9

9

*Burnside v. Kiewitt Pacific Corp.*
10   491 F.3d 1053 (9th Cir. 2007) ................................................................. 4, 5

11

*Cramer v. Consolidated Freightways, Inc.*
    255 F.3d 683 (9th Cir. 2001) ............................................................ passim
12

13  *Daily v. Federal Insurance Co.*
    2005 WL 14734 (N.D. Cal. 2005) ............................................................ 12
14

15  *Dunlop v. Beloit College*
    411 F.Supp. 398 (W.D. Wis. 1976) ...................................................... 12, 13
16

17  *Forsberg v. Pacific N.W. Bell Telephone Co.*
    622 F.Supp. 1147 (D.Ore., 1985) .............................................................. 13
18

19  *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*
    533 U.S. 826 (2002) .................................................................................... 9
20

21  *John S. Griffith Constr. Co. v. United Brotherhood of Carpenters & Joiners,*
    785 F.2d 705, 708-09 (9th Cir. 1986)………………………………………………….9
22

    *Murphy v. Kenneth Cole Productions*
23   40 Cal.4[th] 1094 (2007)………………………………………………………….....12

24  *Scott v. City of New York*
    340 F.Supp. 2d 371 (S.D. N.Y, 2004)…………………………………… 13, 14
25

26  *Textron Lycoming Reciprocating Engine Dis., AVCO Corp. v. UAW*
    523 U.S. 653 (1998)……………………………………………………………………… 10
27

28  *Valles v. Ivy Hill Corp.*
    410 F.3d 1071 (9th Cir. 2005) ................................................................ 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Visa U.S.A., Inc. v. First Data Corp.*
   2006 WL 516662 (N.D. Cal. 2006) ..................................................................... 3, 4

*Zavala v. Scott Brothers Dairy*
   143 Cal.App.4th 585 (2006) ................................................................................ 12


**Statutes and Rules**


Fed Rule Civ. Proc., 13(a) ....................................................................................... 9

**PROOF OF SERVICE**

I am employed in Alameda County, California.  I am over the age of eighteen (18) years and not a party to the within action.  My business address is 1330 Broadway, Suite 1450, Oakland, California 94612.  On February 6, 2008, I served the following document:

**COUNTER-DEFENDANT IBEW LOCAL 1245'S REPLY TO DEFENDANT MIRANT'S OPPOSITION TO LOCAL 1245'S MOTION TO DISMISS OR STRIKE COUNTERCLAIM FOR LACK OF JURISDICTION AND FAILURE TO JOIN NECESSARY OR PROPER PARTY**

I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which sent notification of such filings to the following:

| | |
|---|---|
| **Jonathan E. Gertler** | **jon@chavezgertler.com** |
| **Dan L. Gildor** | **dgildor@chavezgertler.com** |
| **Daniel B. Siegel** | **siegeldb@pacbell.net** |
| **Margaret Hart Edwards** | **mhedwards@littler.com** |
| **Philip L. Ross** | **plross@littler.com** |
| **Kimberly L. Owens** | **kowens@littler.com** |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Oakland, California on February 6, 2008.

/s/ Khae Saechao
Khae Saechao
Legal Secretary

PROOF OF SERVICE                                Case No. C 07-05847 PJH